M. DENISE MORETZ (State Bar No. 010557)
WOOLF MCCLANE BRIGHT, ALLEN & CARPENTER, PLLC
900 S. Gay Street, Suite 900,
Knoxville, TN 37902
Telephone: (865) 215-1000
Facsimile: (865) 215-1015

D. WILLIAM TOONE, ADMITTED *PRO HAC VICE*
DORSEY & WHITNEY LLP
U.S. Bank Center Building
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101
Telephone: (206) 903-8800

Attorneys for Defendant
PERMA-CHINK SYSTEMS, INC.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| NISUS CORPORATION, a Tennessee Corporation,<br><br>Plaintiff,<br><br>v.<br><br>PERMA-CHINK SYSTEMS, INC., a Washington Corporation,<br><br>Defendant. | Civil No. 3:03-CV-120<br>Varlan/Shirley<br><br>**DEFENDANT PERMA-CHINK'S MOTION FOR SANCTIONS FOR NISUS' LATE PRODUCTION OF 1989 DOCUMENTS** |

# Table of Contents

I. NATURE OF MOTION ................................................................................................. 1

II. BACKGROUND ......................................................................................................... 1

III. ARGUMENT ............................................................................................................. 2

    A. The Belatedly Produced Documents Are Highly Relevant To The Issue Of Assignor Estoppel ................................................................................................. 2

    B. Perma-Chink Has Been Prejudiced By Nisus' Belated Production ................. 5

    C. Nisus Has Previously Been Sanctioned By This Court For Intentionally Depriving Perma-Chink Of Pertinent Discovery ............................................... 7

    D. Nisus Should Be Sanctioned ............................................................................ 8

IV. CONCLUSION .......................................................................................................... 9

## I.     NATURE OF MOTION

Perma-Chink Systems, Inc. ("Perma-Chink") respectfully moves this Court for sanctions under Fed. R. Civ. P. 37(c) associated with Nisus Corp.'s ("Nisus") belated production of highly relevant documents bearing Bates Nos. NII-0001110-1394. The documents, which are responsive to prior discovery requests from both the Nisus I and Nisus II suits, are dated beginning in January 1989. Nisus, however, did not produce the documents until August 2, 2004.[1] Accordingly, Perma-Chink has been severely prejudiced in its efforts to defend against Nisus' charges of infringement in both the Nisus I suit and here.

By this motion, Perma-Chink moves this Court to:

- Compel Nisus to provide information requested by Perma-Chink relevant to these newly produced documents;
- Sanction Nisus for its belated production by paying Perma-Chink's costs and expenses in re-deposing the three inventors and taking other discovery relating to the new documents; and
- Sanction Nisus by dismissing its pending motion for summary judgment as to assignor estoppel.

Perma-Chink reserves the right to make other motions for other sanctions, including possibly vacatur of this Court's Orders in Nisus I, as discovery reveals further relevant facts.

## II.     BACKGROUND

On August 2, 2004, Nisus produced 284 new documents which it claims to have only recently found. Those documents bear directly on legal and factual issues central to both cases.[2] Immediately after Nisus's production of these documents, Perma-Chink sent Nisus a letter requesting a supplementation to discovery detailing when, where, how, and by whom the

---

[1] On August 19, 2004, Perma-Chink filed a supplemental brief in opposition to Nisus' motion for summary judgment on the issue of assignor estoppel to call the Court's attention to Nisus' belated production of relevant evidence. *Ct. Dkt.* #155.

[2] It is Perma-Chink's position that assignor estoppel does not apply in Nisus II and is thus not central to this lawsuit. However, because of Nisus' repeated invocation of that doctrine in opposition to Perma-Chink's discovery requests as well as Perma-Chink's efforts to amend its answer and counterclaims, Nisus has effectively made the assignor estoppel doctrine a major issue in this lawsuit.

documents were discovered. *07/30/04 letter from W. Toone*, Attachment A hereto. Perma-Chink also requested that Nisus provide Perma-Chink an immediate opportunity to allow inspection of the original notebook from which the pages were copied. *Id.* Perma-Chink again raised this issue in its August 3, 2004 Discovery Conference Agenda. Nisus has completely ignored Perma-Chink's requests and has provided no response whatever to the letter or the August 3rd Discovery Conference, necessitating the filing of this motion.

### III. ARGUMENT

#### A. The Belatedly Produced Documents Are Highly Relevant To The Issue Of Assignor Estoppel

The topic of "assignor estoppel" has been invoked by Nisus in almost every briefing, hearing, and conference before this Court. That issue forms the linchpin of Nisus' contentions that it can preclude Perma-Chink from taking discovery and from asserting affirmative defenses and/or counterclaims in this case. It is now clear that Nisus' strategy to avoid responsibility for the invalidity and unenforceability of the Nisus patents extends to stacking the deck in its favor by withholding relevant documents. Given this recent and belated production, Perma-Chink has no confidence that Nisus has been forthcoming with all documents relevant to this issue; nor should this Court.

The documents produced by Nisus appear to constitute minutes of meetings between the three original named inventors dating from January 1989. These documents evidence events occurring more than nine months prior to September 13, 1990, and support arguments made by Perma-Chink in Nisus I that Mr. Dunstan had no actual knowledge of the conduct which Nisus relied on to support its assignor estoppel theory. The orders from Nisus I applying "assignor estoppel" form the basis of the Nisus' motions in the present case for summary judgment, opposition to Perma-Chink's motion to amend to include counterclaims, and Nisus' unilateral

refusal to provide discovery. This new evidence, belatedly produced by Nisus, demonstrates that the orders upon which Nisus relies so heavily were entered with neither Perma-Chink, nor the Court, fully informed of the underlying facts.

The relationship between the three named inventors (who eventually formed Nisus) and Rich Dunstan during the time all four individuals were employees at Perma-Chink between 1988 and 1990 has been a core subject in numerous motions before this Court, particularly in the Nisus I lawsuit. Those issues have included, and continue to include, whether the three named inventors developed the Bora-Care product embodying the claims in the '838 patent application in a semi-secret environment. That factual issue in particular was critical to Nisus' successful assertion of assignor estoppel to oppose Perma-Chink's motion for summary judgment of patent invalidity in Nisus I.

In response to Nisus' motion for application of the doctrine of assignor estoppel in Nisus I, Defendant had asserted that a "skunk-works" environment existed at Perma-Chink's offices in Knoxville prior to the formation of Nisus, in which some employees, the eventual founders of Nisus, kept secret certain projects and research in anticipation of breaking off from Perma-Chink to form a competing entity—as eventually occurred. Perma-Chink argued that it should not be held to have had actual or constructive knowledge of that conduct. Thus, Perma-Chink's patent invalidity and unenforceability defenses should not have been precluded.

The Court in Nisus I eventually found, in part, that Mr. Dunstan had actual or constructive knowledge of the secret activity prior to September 13, 1990, the date the assets were sold to one of the founders of Nisus and Mr. Dunstan's former partner in Perma-Chink, Mr. Bud Deitrich. Nisus obtained that ruling by asserting that no evidence existed of the "skunk-works." But apparently, Nisus had not produced all the evidence in its possession.

All Bora-Care documents and assets were in Nisus' possession shortly after the September 13, 1990 transaction. Accordingly, at the time these issues were presented to the Court in Nisus I, Perma-Chink had no knowledge or access to these new, recently-produced documents. Thus, Perma-Chink had no opportunity to take discovery on the basis of those documents. Even though Nisus had exclusive control of these documents, they were not produced despite (or even because) they may have supported Perma-Chink's contentions that Mr. Dunstan was excluded from the meetings resulting in the '838 application—a theory rejected by the Court in Nisus I.

It appears Nisus believes that it may selectively produce documents when circumstances appear to favor Nisus, but withhold when it is considered unfavorable. It is fair to inquire why documents evidencing inventor meetings were produced only at the time when inventorship of the '095 propylene glycol formulation has been brought into serious question by Perma-Chink. It is assumed Nisus now believes that production will helps its efforts to rebut some of Perma-Chink's substantive defenses.

In Nisus I, the issues regarding enablement and best mode now facing Nisus were not present and these documents would not have benefited Nisus. But evidence of meetings excluding Dunstan were highly relevant and may well have been significantly adverse to Nisus' position that Dunstan was a full participant in the Bora-Care development. Accordingly, it would have harmed, not helped, Nisus to produce these documents in Nisus I. Now, in Nisus II when Perma-Chink has gathered evidence showing that no lab documents support Nisus' invention of the formulation claimed in the '095 patent prior to 2001, these documents appear as if by magic and right on cue.

Nisus will likely argue that Perma-Chink's contentions are frivolous, because if the documents are harmful to Nisus, why would they be produced now? The answer lies in the presentation of this motion itself, the first step in the uphill battle Perma-Chink now faces. By preventing full disclosure of the facts, Nisus was able to secure the orders entered by the Court in Nisus I. Subsequently, Nisus has used the weight of those orders in response to every effort Perma-Chink has made to mount a defense to infringement. Perma-Chink is faced with the task of convincing this Court, to the extent not readily apparent, that Nisus' discovery abuse is systematic—discovery is given only when, on balance, it can advance Nisus' interests.

Most disturbing is that throughout the years of protracted litigation between the parties, much of it centered on the very issue of assignor estoppel, no one at Nisus informed Perma-Chink of the existence of the now-produced documents, which appear to take the form of a spiral-bound notebook. "[T]he federal discovery rules place a duty on a party to turn over not only proper materials of which he is aware, but also those of which he reasonably <u>ought</u> to have been aware." *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995) (emphasis in original). Given the burdens imposed by the Federal Rules, Nisus' failure to previously produce these documents cannot be excused.

### B. Perma-Chink Has Been Prejudiced By Nisus' Belated Production

There can be no dispute that Perma-Chink has suffered great prejudice by reason of Nisus's belated production of these documents. First, and most importantly, Perma-Chink has not yet had the opportunity to pursue discovery based on those documents. Second, in the interim between when Perma-Chink requested these documents and when they were produced, Perma-Chink has (1) had orders entered against it by this Court on the issue of assignor estoppel

in Nisus 1; (2) had to petition the Federal Circuit for review of those decisions[3]; (3) had to oppose a summary judgment motion in this case predicated on those decisions; and (4) has been precluded from discovery by Nisus' invocation of "assignor estoppel."

But even if Perma-Chink could not point to such specific substantive prejudice, it has been prejudiced nonetheless. In *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 179 F.R.E. 77, 81 (D. Conn. 1998), the defendant argued that it should not be sanctioned for belated document production because the information would have come to light eventually. The court rejected that argument:

> The defendant misses the point. The timing of discovery is as important as its content. The plaintiff in this case had a right to the information in question when he requested it. <u>He was denied that right and disadvantaged by the denial</u>.

*Id.* (citation omitted; emphasis added); *see also Rabello v. Bell Helicopter Textron, Inc.*, 200 F.R.D. 484 (S.D. Fla. 2001) (granting motion for sanctions where defendant failed to produce responsive report, contending that it had been "inadvertently overlooked"; the court characterized the oversight as "neither inadvertent nor innocent" and found that plaintiffs had been "unfairly disadvantaged").

In opposition to this motion, Nisus may choose to argue that the documents it has belatedly produced are not helpful or relevant to Perma-Chink's case. But that argument is likewise meritless. As the *Martinelli* court stated:

> With regard to the [defendant's] argument concerning the ultimate relevance of the information [the plaintiff] sought out, the court is satisfied that the evidence was properly discoverable, and reminds the defendant that a valid discovery request need only "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."

*Id.* (*citing Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Arthur*, 164 F.R.D. at 21 ("The disclosure provisions in the Federal Rules of Civil Procedure do not permit a

---

[3] As set forth in Perma-Chink's supplemental brief in opposition to Nisus' motion for summary judgment on the issue of assignor estoppel filed August 19, 2004, the Federal Circuit has granted that petition. *Ct. Dkt.* #155.

PERMA-CHINK'S MOTION FOR SANCTIONS
RE LATE PRODUCTION OF 1989 DOCUMENTS
3:03-CV-120

party to trim his duty of disclosure to suit his own view of what might be relevant to his adversary."; granting motion for sanctions). While the true impact of the new documents cannot be fully determined until Perma-Chink has had an opportunity to develop discovery based thereon, their very existence calls into questions all of the assignor estoppel arguments made by Nisus over the years.

### C. Nisus Has Previously Been Sanctioned By This Court For Intentionally Depriving Perma-Chink Of Pertinent Discovery

This is not the first time that Nisus has intentionally deprived Perma-Chink of crucial documents. In the Nisus I lawsuit, Nisus engaged in similar patterns of discovery abuse that it has exhibited here in Nisus II. As in this case, Nisus sought to control the information with which Perma-Chink could develop its defenses and counterclaims. One particular instance resulted in this Court (Magistrate Judge Murrian) finding that Nisus "had acted in a way that had needlessly increased the cost of litigation and engaged in conduct that had approached harassment of the defendant." *Attachment B hereto*, Memorandum and Order, pp. 1-2. Magistrate Judge Murrian found that:

> Nisus made a calculated, tactical decision to deprive Perma-Chink of the effective use of the documents at the July 12-16 depositions. This court does not have to countenance such unseemly behavior of the attorneys who practice before it.

*Attachment B*, p. 3.

Perma-Chink submits that Nisus has again made a "calculated, tactical decision" in depriving Perma-Chink of the new documents at the point they were needed by Perma-Chink. That deliberate act by Nisus supports the entirety of the sanctions Perma-Chink seeks herein. But even if the Court were to give Nisus the benefit of the doubt, "mere negligence supports the imposition of sanctions." *Martinelli*, 179 F.R.E. at 81.

### D. Nisus Should Be Sanctioned

In *Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 605 (S.D.N.Y. 1996), a patent infringement suit, the plaintiff moved for sanctions against defendant on the basis of what the court termed "a deliberate and protracted failure by [defendant] to comply with [plaintiff's discovery] demands." One of the facts the court relied on in granting the plaintiff's motion was that the defendant had "belatedly produced documents in the fall of 1995 that were responsive to several document requests dating back to 1990." *Id.* (ordering payment of costs and attorney's fees incurred in filing motion and review of belated document production and other sanctions). That same rationale applies here.

Any effort by Nisus to point to its belated production as "solving the problem" do not allow it to escape the imposition of sanctions. As the court in *Martinelli* explained:

> The defendant cannot now point to the documents' eventual, tardy discovery as somehow comporting with the letter or spirit of the Federal Rules of Civil Procedure, or as a reason for relieving it from the financial consequences of its failure to comply with this court's order.

179 F.R.D. at 82.

Appropriate sanctions should be imposed against the Plaintiff for its failure to produce these highly material documents previously. Those sanctions should include:

- Nisus' pending motion to apply the Nisus I assignor estoppel rulings against Perma-Chink in the present case should be dismissed.

- Perma-Chink should be permitted a full opportunity to conduct discovery on the origins and sudden discovery of these documents, and the cost of that discovery should be assessed against Nisus.

- All of Nisus' assignor estoppel-based responses and objections to Perma-Chink's affirmative defenses and counterclaims should be stayed until this Court in the Nisus I lawsuit has had a full opportunity to consider Perma-Chink's motion to reopen and/or dismiss Nisus' assignor estoppel motion for summary judgment based on the recent production of these new 1989 era documents.

## IV. CONCLUSION

As set out in greater detail in Perma-Chink's supplemental brief in support of its opposition to Nisus' motion for summary judgment of assignor estoppel (*Ct. Dkt.* #155), Nisus has sought, and continues to seek, to control the flow of information in this case in an egregious and self-serving manner. When information can hurt it, Nisus denies Perma-Chink that discovery. When information can help it, Nisus selectively produces that information and then tries to control how and when Perma-Chink utilizes it. For example, precisely at the time that Nisus started to believe that Bora-Care development documents might be advantageous to its rebuttal of Perma-Chink's affirmative defenses, Nisus claims to have just "recently discovered" these new documents. This recent discovery leads Perma-Chink to wonder how many other relevant documents remain undiscovered and unproduced.

Perma-Chink accordingly moves for the above requested relief as well as an award of its attorney's fees and costs associated with this motion and the preceding discovery conference in an amount of not less than $5,000.00. Perma-Chink also expressly reserves its right to move for additional sanctions in the future as facts are developed to support its contentions.

DATED this 20th day of August 2004.

                Respectfully submitted,

                s/D. WILLIAM TOONE_____
                M. DENISE MORETZ (STATE BAR NO. 010557)
                WOOLF, MCCLANE, BRIGHT, ALLEN &
                CARPENTER, PLLC
                900 S. Gay Street, Suite 900,
                Knoxville, TN 37902
                Telephone: (865) 215-1000
                Facsimile: (865) 215-1015

                D. WILLIAM TOONE, Admitted *Pro Hac Vice*
                INGE A. LARISH, Admitted *Pro Hac Vice*
                DOUGLAS F. STEWART, Admitted *Pro Hac Vice*
                DORSEY & WHITNEY LLP
                U.S. Bank Centre
                1420 Fifth Avenue, Suite 3400
                Seattle, WA 98101
                Telephone: (206) 903-8800
                Facsimile: (206) 903-8820

                Attorneys for Defendant
                PERMA-CHINK SYSTEMS, INC.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 20th day of August, 2004 a copy of the foregoing **PERMA-CHINK'S MOTION FOR SANCTIONS REGARDING LATE PRODUCTION OF 1989 DOCUMENTS** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties through their respective counsel of record as indicated on the electronic filing receipt. All other parties, if any, will be served by regular U.S. Mail. Counsel may access this filing through the Court's electronic filing system.

DATED this 20th day of August, 2004.

    s/ D. WILLIAM TOONE
    D. WILLIAM TOONE, Admitted *Pro Hac Vice*
    DORSEY & WHITNEY LLP
    U.S. Bank Centre
    1420 Fifth Avenue, Suite 3400
    Seattle, WA 98101
    Telephone: (206) 903-8800
    Facsimile: (206) 903-8820