IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| NISUS CORPORATION, a Tennessee Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:03-CV-120 Varlan/Shirley |
| PERMA-CHINK SYSTEMS, INC., a Washington Corporation, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF NISUS CORPORATION'S OPPOSITION TO PERMA-CHINK'S MOTION TO COMPEL DOCUMENTS CITED IN NISUS' PRIVILEGE LOGS**

Nisus' privileged materials are properly designated. If the Court has any questions or reservations on this issue, Nisus is happy to provide its privileged materials for an *in camera* review.

With that said, it bears noting that Perma-Chink apparently was a little forgetful when it filed its Motion. Perma-Chink apparently did not remember that it has *never* addressed its issues with Nisus' "Initial Log," contrary to the requirements of Rule 37(a)(2)(A). Perma-Chink also apparently forgot that in addressing the next log, Nisus' "Supplemental Privilege Log," Nisus noted that Perma-Chink's corresponding privilege log contained the same alleged "deficiencies," which then somehow prompted Perma-Chink to drop its complaints—until now. Then, to attempt to resolve Perma-Chink's contentions regarding the third log, the "Second Supplemental Privilege Log," Nisus provided Perma-Chink with both legal authorities undermining Perma-Chink's arguments and a declaration correcting its factual contentions, but Perma-Chink then forgot to cite or mention either of these documents.

Perma-Chink also attempts to cast Nisus in a disparaging light, which seems to arise from some additional memory lapses. For example, Nisus produced its "Supplemental Log" *before* Perma-Chick issued its relevant deposition notices, yet the Motion incorrectly states the log was "only provided to Perma-Chink *after* a subpoena to the lab personnel listed on the supplemental log" was served. Perma-Chink's Motion, at 6 (emphasis added). As another example, Perma-Chink contends that the communications between Nisus' counsel and its litigation consultant, Ms. Kimberlee Davis, are "clearly responsive to earlier Perma-Chink document requests under Fed. R. Civ. P. 34(a)." Perma-Chink's Motion, at 7. Perma-Chink seems to be misremembering its Rule 34 requests, and it even forgot to note or quote which discovery encompasses these privileged communications that were supposedly "clearly" requested earlier.

If Perma-Chink had been willing to discuss these issues with Nisus before filing its Motion as Rule 37 requires and as Judge Shirley had encouraged, then Perma-Chink's memory could have been refreshed—and possibly its concerns alleviated or at least greatly reduced.[1] That, unfortunately, did not happen. Nisus thus is left to address all of Perma-Chink's arguments, including those that are simply wrong.

**Perma-Chink Refused to Discuss its Issues Because of the Deficiencies in Its Own Logs**

Before discussing Perma-Chink's charges, it is worthwhile to consider the initial privilege log that Perma-Chink produced, which is attached hereto as Exhibit 2. Throughout Perma-Chink's log, there is no annotation who prepared the documents, for whom the documents were prepared, and other necessary information. For example, the third entry is described as

---

[1] During the period after the August 3 telephone conference in which the parties were supposed to be attempting to resolve discovery disputes, Perma-Chink's counsel made clear that a telephone discussion was unwelcome.

> It is difficult to understand how yet another discovery conferences [sic] between counsel would be productive under those circumstances. I don't mean for that to sound provocative. It is simply a statement of fact.

*See* Exhibit 1. Nisus disagrees, as many of the issues in this Motion could have been clarified without burdening the Court.

2
Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS   Document 171   Filed 09/02/04   Page 2 of 18   PageID #: 1313

"Notes PFC [*i.e.*, Notes Prepared for Counsel]" that is dated October 14, 1993—five years before this litigation ensued—yet work product privilege is asserted. There is absolutely no disclosure who prepared the "Notes" and for whom they were prepared. This entry is exemplary with the systematic problems in Perma-Chink's log.

The existence of these glaring deficiencies may explain why Perma-Chink opted to avoid the required conferring with Nisus about the vast majority of the privilege log issues before filing this Motion. Perma-Chink, instead, focused its pre-filing attention on one discrete issue involving Nisus' "Second Supplemental Privilege Log."

Perma-Chink is living in the proverbial "glass house" and has no reservations about throwing stones. Perma-Chink, it seems, is trying to avoid defending itself by embarking on an aggressive offense, hoping that its own actions will not be questioned. All would have been better served if Perma-Chink had come to the Court with "clean hands."

### Nisus' "Initial Log" is Proper

Nisus is surprised that Perma-Chink is litigating issues with what it has called the "Initial Log." Had Perma-Chink addressed the issues raised before filing, it seems that many if not all of these issues could have been resolved. As a result, the Court likely would not be reading this section now.

**A.** *Perma-Chink Should Have Abided by the Mandates of Rule 37*

Nisus produced what Perma-Chink has called the "Initial Log" in November 2003. For the next nine months, Perma-Chink never raised a single objection to its content. Then, without warning, Perma-Chink raised the "Initial Log" as the leadoff argument in its present Motion. This tactic runs afoul of Rule 37(a)(2)(A), which reads:

> If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions. The motion must include a

certification that *the movant has in good faith conferred or attempted to confer* with the party not making the disclosure in an effort to secure the disclosure without court action. (Emphasis added.)

In addition, Perma-Chink's actions contravene this Court's Scheduling Order, which requires:

> Parties shall first meet and/or confer in an attempt to resolve disputes between themselves, without judicial intervention

Court File No. 15, at 2, ¶ 4(i)(1).

In fact, in its "Agenda" for the August 3 telephone conference, Perma-Chink's item "4" covers the privilege log issue, and it is limited to the "Second Supplemental Privilege Log." Court File No. 145, at 1-2; *see also id.* at Attachment F (including only the "Second Supplemental Privilege Log" to its Agenda). Moreover, although Perma-Chink represents to the Court it has made "multiple requests" to resolve the issues raised in its Motion, Perma-Chink supports this representation by including a single letter dated July 20 that addresses only the "Second Supplemental Privilege Log." Exacerbating the situation, Perma-Chink opted not to have any verbal communications regarding this Motion between the August 3 conference and filing this Motion, as Judge Shirley had encouraged. *See* Exhibit 1 (deeming discovery conference to be unproductive). This conduct is frustrating and wastes the Court's and Nisus' resources.

**B.** *The Material Designated in the "Initial Log" is Properly Withheld as Privileged*

In describing the "Initial Log," Perma-Chink notes:

Nisus lists twenty-nine documents (entries 1-29) that are directed to patent prosecution. Those documents are withheld on the basis of attorney-client privilege.

Perma-Chink's Motion, at 1.

Perma-Chink does not dispute that materials exchanged between patent counsel and his client are privileged, nor can it under Federal Circuit authority. Nisus addressed this point in its responses to Perma-Chink's discovery requests:

> Nisus further objects to this request to the extent it seeks documents subject to the attorney client and/or work product privileges. *See, e.g., In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed. Cir. 2000) ("Accordingly, since Spalding's invention record was prepared and submitted primarily for the purpose of obtaining legal advice on patentability and legal services in preparing a patent application, we conclude that it is privileged in its entirety."). Nisus will produce a privilege log for documents related to the patent-in-suit and the two predecessor applications, which did not issue as patents. To the extent relevant or discoverable, the privilege logs that Nisus produced in the *Nisus I* litigation address privilege documents that relate to patents and applications earlier in the priority chain and do not need to be reproduced. *See* Toone letter of October 15, 2003.

*See, e.g.,* Nisus' Response to Document Request No. 1, at 5.

Perma-Chink has never disputed Nisus' analysis, and does not appear to do so in its Motion. Thus, the communication between Nisus principals and their patent attorneys is properly designated as privileged.

C. *Nisus is not Improperly Withholding "Attachments"*

If Perma-Chink had only bothered to contact Nisus regarding this matter, the "attachments" issue could have been resolved. Nisus is not attempting to withhold any "attachments" related to the patent prosecution, but used an inartful entry under "Document Type." In fact, every "attachment" was produced on September 2, 2003, over a month and a half before Nisus served its "Initial Log."[2] Nisus believes that this should conclude the matter.

---

[2] The Bates numbers of the produced documents that correspond to the "attachments" start with respective pages Bates numbered NII 00761, NII 00766, NII 00795, NII 00799, and NII 00802. Based on Perma-Chink's reckless propensity to cast aspersions and make allegations as to the veracity and good faith of Nisus' counsel, Nisus suspects that Perma-Chink will charge that Nisus' counsel cannot be trusted in this regard. If the Court desires to confirm this representation, the referenced Bates numbered documents will be provided along with the privileged correspondence to allow verification of Nisus' representations.

### D. *Perma-Chink Errantly Impugns Nisus and its Counsel*

Perma-Chink's next argument offensively contends Nisus' counsel is withholding correspondence related to the prosecution of patent applications that Nisus principals supposedly authored. It is unfortunate that Perma-Chink's arguments repeatedly devolve to making such disparaging allegations—and Perma-Chink does so without any substantiation.

Nisus produced a complete privilege log for all of the correspondence for the patent applications at issue. It is obviously difficult to defend against baseless claims of spoliation. Addressing these allegations is even harder here because Perma-Chink provides no support for its allegation, such as deposition testimony, so Nisus has no specific points to rebut. Nisus is left to note that it appears Perma-Chink is relying on rank speculation.

If the Court desires to conduct its *in camera* review, Nisus will provide a copy of the patent application files as maintained in counsel's office and a declaration from litigation counsel that no correspondence from Nisus principals was removed from the files either before preparing the privilege log or before providing these files to the Court. The three recipients of correspondence still associated with Nisus (Mr. Dietrich, Ms. Dietrich, and Mr. Kirkland) can each execute a declaration attesting that they have no recollection of sending written correspondence during the period at issue to counsel regarding the patent prosecution. Nisus submits, however, that Perma-Chink should be assessed the charges accrued in addressing these baseless, offensive charges.

### E. *Perma-Chink's Last Argument is Illogical*

To conclude its arguments in this section, it is almost as if Perma-Chink simply copied a portion of a brief from a different lawsuit and pasted it into the present Motion. Perma-Chink argues:

> Here, there is no way to know *if Nisus' counsel was simply copied on the correspondence* it received or if that correspondence was directed to counsel for the purpose of securing legal advice.

Perma-Chink's Motion, at 5 (emphasis added).

After impugning the integrity of Nisus because its principals did not use written correspondence to address the patent prosecution, how can Perma-Chink next allege that Nisus is trying to circumvent production by its principals just "copying" counsel on correspondence that was never written? This argument is *non sequitur*. As Perma-Chink pointed out, "[a]mazingly, each of those entries [in the Initial Log] is from Nisus' attorneys to Nisus." It makes no sense for Perma-Chink then to argue "it is unclear if each of the withheld documents that were *allegedly sent to Nisus' counsel* were sent to other parties at the same time."

Again, Nisus would have been happy to address this issue if Perma-Chink had indicated the "Initial Log" was going to be the subject of a Motion. Instead, Nisus is left befuddled by Perma-Chink's contention.

### Perma-Chink Makes Questionable Arguments Regarding Nisus' Supplemental Log

Nisus is likewise quite surprised that Perma-Chink's Motion raises issues regarding the "Supplemental Privilege Log," as Perma-Chink's "Supplemental Privilege Log" suffers from the same alleged deficiencies. Moreover, Perma-Chink seems to have forgotten (1) he sequence of production of Nisus' "Supplemental Privilege Log" and (2) that the parties already have addressed the issues Perma-Chink is arguing before the Court.

**A.** *Perma-Chink Incorrectly Represents the Date of Production Relative to Its Subpoenas*

Perma-Chink makes the very curious (and false) representation that:

> [A]s described above, this privilege log reflecting the withheld documents was only provided to Perma-Chink after a subpoena to the lab personnel listed on the supplemental log [sic, was served].

Perma-Chink's Motion, at 6. It seems that Perma-Chink did not bother to verify this statement.

Nisus produced the "Supplemental Privilege Log" on May 14 by letter. *See* Exhibit 3, ¶ 3 ("Finally, enclosed and served upon you is Plaintiff's Supplemental Privilege Log."). Then, four days *later*, Perma-Chink's counsel sent a letter stating the following:

> *Prior to issuing* four deposition notices, we would like to discuss dates that might be mutually convenient on your calendar. The depositions will be for Nisus' EPA consultant, a 30b6 deposition for Nisus, followed by depositions of Sue Lloyd and Jeff Lloyd.

Exhibit 4, at ¶ 1 (emphasis added).[3] The correspondence unequivocally establishes the error in Perma-Chink's representation that Nisus produced the "Supplemental Privilege Log" after being served with the subpoenas at issue.

Of note, on the same day Perma-Chink filed this Motion, it also filed, *inter alia*, its Motion to Compel for Terms Relating to Cancellation of Lab Depositions, Court File No. 160. In that other pleading, Perma-Chink filed its own letter of May 18 as its Attachment B, which notes the subpoenas had not been issued yet. It is certainly unclear how Perma-Chink could handle this letter establishing Nisus produced its "Supplemental Privilege Log" before Perma-Chink issued the subpoenas and, on the same day it handled that letter, argue in the present Motion that this Log was "only belatedly identified *after* Perma-Chink served subpoenas on third parties." Perma-Chink's Motion, at 2 (emphasis added). There does not seem to be a rational explanation.

Adding to the perplexity, Perma-Chink itself committed the actions it wrongly attributes to Nisus. That is, on March 18, Nisus served a subpoena on Mr. Palmere, a Perma-Chink employee. *See* Exhibit 5. Then, on March 30, Perma-Chink's counsel wrote:

---

[3] Despite the invitation, Perma-Chink's counsel issued the deposition notices the next day before Nisus could even determine availability and respond. *See* Court File Nos. 112-115 (deposition notices filed with the Court on May 19 for these four depositions).

8  Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS Document 171 Filed 09/02/04 Page 8 of 18 PageID #: 1319

> This is to confirm that *we agree to accept service of Mr. Palmere's personal subpoena* on his behalf and that we have requested that all of Mr. Palmere's documents be produced to our offices as soon as possible. We request, however, a one week extension from April 2nd to April 9th in order to give us sufficient time to bates number the documents, review and *prepare an appropriate Privilege Log*.

Exhibit 6 (emphasis added). Perma-Chink's Supplemental Privilege Log that was later produced is attached as Exhibit 7.

Thus, unlike Nisus which produced its Supplemental Log *before* Perma-Chink served the subpoenas at issue, Perma-Chink produced its Supplemental Log directly *in response* to a subpoena. Yet, Perma-Chink makes the charge that:

> Because the third parties were always under Nisus' control, questions arise as to why the documents were only identified at that time and not in response to prior document requests as required by Fed. R. Civ. P. 34(a) ("in possession, custody or control of the party upon whom the request is served").

Perma-Chink's Motion, at 2 (emphasis added). It is very odd for Perma-Chink to raise negative inferences about its own conduct, but that is what has occurred.

### B. *Perma-Chink Ignores the Parties' Prior Discussions Regarding this Log*

Perma-Chink's arguments on this "Supplemental Privilege Log" become even more irrational for two reasons. First, Perma-Chink ignores the previous interchange that the parties have had regarding Nisus' "Supplemental Privilege Log." Second, as those discussions highlighted, Perma-Chink's Supplemental Privilege Log has the same alleged deficiencies as Nisus' corresponding log, undermining Perma-Chink's requested relief.

Perma-Chink starts off its argument stating that "[a]bsent from Nisus' supplemental privilege log is the 'date' column." Perma-Chink's Motion, at 5. What Perma-Chink gains by disregarding the subsequent correspondence between the parties on this matter is unclear because Nisus is obviously going to correct the record, as it is doing here. To complete the story, Nisus addressed Perma-Chink's contention on June 4:

9
Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS   Document 171   Filed 09/02/04   Page 9 of 18   PageID #: 1320

>       Also enclosed is a revised Supplemental Privilege Log, which includes a date column. The date information is the same as Perma-Chink provided in its Supplemental Privilege Log of April 19.

Exhibit 8. A copy of the revised Supplemental Privilege Log, which for some reason Perma-Chink neglected to include or mention, is attached as Exhibit 9. Nisus assumes that this resolves the issue, as Nisus produced a Supplemental Privilege Log with a date column that includes exactly the same information as Perma-Chink's corresponding Log.[4] Nisus assumes that this resolves Perma-Chink's concern issue.[5]

Perma-Chink then makes what seems to be a disingenuous argument that Nisus' descriptions of "experiments" and "photos" do not allow Perma-Chink "to examine the veracity of Nisus' withholding." Perma-Chink's Motion, at 6. The actual entries are "Lab Analysis and Photos" and "Lab Analysis and Experiments." *See* Exhibit 9. Interestingly, Perma-Chink's Supplemental Log uses identical or very similar descriptions such as "Photos of Lab Analysis," "Memo to Counsel re Photos," and "Memo to Counsel re Lab Analysis." *See* Exhibit 7. It is odd that Perma-Chink could use these terms in its privilege log, but not understand them when they appear in Nisus'. Again, Perma-Chink seemingly is in a proverbial "glass house."

---

[4] *Compare* Exhibit 7 (Perma-Chink's Supplemental Privilege Log) *with* Exhibit 9 (Nisus' revised Supplemental Privilege Log), in which both documents indicate "N/A" for the dates. *See also* Perma-Chink's initial log (Exhibit 2) (many dates omitted and designed as "no date").

[5] As a precaution, Nisus addresses Perma-Chink's single argument made in this regard, namely, that "[f]or all Perma-Chink knows, those entries refer to documents sent to Nisus' patent prosecution counsel 8 years ago during the prosecution of Nisus' patents and have nothing to do with Nisus' patent litigation strategy." Motion, at 6. Perma-Chink actually "knows" better than this. The only two authors are Dr. and Ms. Lloyd. Perma-Chink has repeatedly been told that they did not join Nisus until after *Nisus I* discovery closed. *See Nisus I* Court File No. 306, at 8 ("Nisus has explained numerous times to Perma-Chink that it hired Dr. Lloyd in November 2001, which is about six months after discovery closed."). Nisus recently reminded Perma-Chink's counsel of this fact when meeting to resolve discovery disputes in Seattle.

10  Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS   Document 171   Filed 09/02/04   Page 10 of 18   PageID #: 1321

### Nisus' "Second Supplemental Privilege Log" is Proper

Perma-Chink's arguments regarding the "Second Supplemental Privilege Log" take issue with the materials withheld as "attachments" and the timing of production of the log. Both contentions are unpersuasive.

**A.** *Ms. Davis' Communications as a Litigation Consultant are Privileged*

Ms. Davis has been retained as a litigation consultant and confirmed this position by executing a written agreement in January 2004. *See* Exhibit 10. Nisus advised Perma-Chink of this fact, yet Perma-Chink specifically requested the privileged communications:

> All documents and things that relate to communications between Reg West, its employees and agents with attorneys for Nisus, including but not limited to attorneys at Merchant & Gould and attorneys at Lerner, David, Littenberg, Krumbolz & Mentlik, LLP.

*See* Exhibit 11 (Schedule A of Davis subpoena), at 2-3. It seems that Perma-Chink is only seeking to invoke more litigation and motion practice by requesting privileged communications, knowing that they are not discoverable under Rule 26. But, that is the situation Perma-Chink has created.[6]

**B.** *Perma-Chink Has Ignored and Disregarded Nisus' Efforts to Resolve this Issue*

In Perma-Chink's "Agenda" for the August 3 telephone conference, the only issue raised is the materials covered by the "Second Supplemental Privilege Log." *See* Court File No. 145 at 1-2. Nisus wrote a letter to Perma-Chink, dated July 26 (Exhibit 12), which Perma-Chink omitted from its "Attachments" to the present Motion and never mentions. Nisus also provided the Declaration of Ms. Davis (Exhibit 13), which likewise was neither referenced nor included as an "Attachment." Although the parties were supposed to try to resolve discovery disputes before

---

[6] This issue is further exacerbated given that Perma-Chink previously filed a motion to bar Nisus from taking *any* discovery from Perma-Chink's EPA consultant, Mr. Jacoby. *See* Court File No. 35.

11
Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS   Document 171   Filed 09/02/04   Page 11 of 18   PageID #: 1322

Perma-Chink filed this Motion, Nisus' efforts were completely ignored and Perma-Chink has never provided a response to either document.

C. *Perma-Chink's Contentions are Negated by the Materials It Ignores*

The crux of Perma-Chink's argument is that "Nisus' EPA consultant (Kim Davis) testified that EPA documents (non-privileged) *may have been attached* to correspondence with Nisus' counsel. (Davis deposition, pp 20-28)." Perma-Chink's Motion, at 6 (emphasis added). This argument misconstrues Ms. Davis's testimony and her subsequent clarification during the deposition.

To try to conclude Perma-Chink's creative interpretation of Ms. Davis' testimony regarding her communications as a litigation consultant, her Declaration attests:

> I have also reviewed the privilege log that was produced related to my communications with Merchant & Gould and compared the log entries to the corresponding materials withheld from production. I confirm that every document I provided to Merchant & Gould in response to the subpoena involving communications between M&G and me after January 2004 is listed in the privilege log and included in the withheld privileged materials corresponding to the log entries. The only exception of which I am aware is for document having Bates number RW2 004934, which was produced.
>
> I can also confirm that the privilege log has not been used as a vehicle or means to withhold documents from Perma-Chink responsive to the subpoena. That is, if any Nisus borates/glycols products document from my files was an attachment to privileged correspondence, that same attachment had been produced directly from my files in response to the subpoena. As I stated in paragraph 6 above, I believe that I have provided every document from my Nisus files that involve borates/glycols products, and all these materials have been produced independent of my correspondence with Merchant & Gould.

Exhibit 13, at ¶¶ 7-8. Thus, Ms. Davis confirms that *no* responsive documents to her subpoena were withheld, privileged communications not withstanding. This sworn representation squarely rebuts Perma-Chink's contention, yet Perma-Chink ignores this Declaration. Because Perma-Chink refused to discuss this matter before filing the Motion, Nisus has no inkling why the refuted contention is still being litigated.

12
Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS Document 171 Filed 09/02/04 Page 12 of 18 PageID #: 1323

If Perma-Chink responds by attacking Ms. Davis' credibility, Nisus' July 26 letter addresses Perma-Chink's previously raised arguments regarding disclosing the attachments to her correspondence as a litigation consultant. The attachments that Ms. Davis authored and received in her litigation consulting relate to and would disclose litigation strategy. Rule 26(b)(3) protects against such disclosures because it "shelter[s] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Cendant Corp. Securities Litigation*, 343 F.3d 658, 661-62 (3d Cir. 2003). "[A] litigation consultant's advice that is based on information disclosed during private communications between a client, his attorney, and a litigation consultant may be considered 'opinion' work product which requires a showing of exceptional circumstances in order for it to be discoverable." *Id.* at 665.

Moreover, in *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985), the court considered an analogous issue and ruled:

> Because identification of the documents as a group will reveal defense counsel's selection process, and thus his mental impressions, petitioner argues that identification of the documents as a group must be prevented to protect defense counsel's work product. We agree.
>
> \* \* \* \*
>
> Such material is accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases

*Id.* at 315-16.

If Nisus were required to disclose the content of the attachments exchanged between Ms. Davis and its counsel, the content of the attachments would undoubtedly disclose the mental impressions and issues being explored for prosecuting this litigation. Perma-Chink cannot show the "exceptional circumstances" necessary to obtain this protected information, particularly

given Ms. Davis' sworn representations that no documents subject to the subpoena were withheld, the materials listed in the "Second Supplemental Privilege Log" not withstanding.[7]

**D.**     ***Perma-Chink's Argument that Nisus Improperly Delayed Production of this Log is Based on a False Premise***

Perma-Chink contends that:

> Again, as described above, this second supplemental log was only provided to Perma-Chink after a subpoena to EPA consultant, Kim Davis [sic, was served]. . . . But these withheld documents, *clearly responsive to earlier Perma-Chink document requests under Fed. R. Civ. P. 34(a)*, were not identified until Perma-Chink issued a subpoena.

Perma-Chink's Motion, at 6-7 (emphasis added). Contrary to Perma-Chink's representation, the material in the "Second Supplemental Privilege Log" is not clearly responsive to Perma-Chink's Rule 34 document requests.

Notably, Perma-Chink fails to cite any such document request(s) to which this material was supposedly responsive, and Nisus cannot find it. For example, there is no request seeking communications between Ms. Davis and Nisus' counsel related to her litigation consulting, which was requested in her subpoena. Perma-Chink contending these privileged communications are "clearly responsive to earlier Perma-Chink document requests under Fed. R. Civ. P. 34(a)" seems to be very mistaken.

**E.**     ***Perma-Chink's Production of its Corresponding Privilege Log Raises Questions***

Interestingly, Perma-Chink's conduct in the production of a privilege log for its litigation consultant on EPA issues, Mr. Jacoby, runs afoul of Perma-Chink's contentions. That is, Perma-Chink produced a privilege log in response to the Jacoby subpoena. *See* Exhibit 15. This log

---

[7] Although Perma-Chink seeks to vitiate Nisus' privilege here, Perma-Chink curiously takes the view that material *it* submits to and receives from the EPA is privileged. *See* Exhibit 14 (refusing production of EPA documents because they may be privileged); *see also* Exhibit 2 (first and second entries in Perma-Chink's initial log EPA documents withheld based on work product although filed almost three years before litigation ensued). Nisus has not adopted Perma-Chink's questionable position and has produced all of the subpoenaed materials filed with and received from the EPA. In fact, the only materials for which Nisus claimed privilege is Ms. Davis' communications with litigation counsel that occurred after she has been retained as a consulting expert.

14     Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS   Document 171   Filed 09/02/04   Page 14 of 18   PageID #: 1325

was not produced earlier, although Perma-Chink's position is that the withheld material would "clearly" be responsive to Rule 34 discovery requests. More problematic, Mr. Jacoby was deposed on November 21, yet the log was not sent until December 4. This prejudiced Nisus because Nisus was unable to ask Mr. Jacoby about the withheld correspondence.

Perma-Chink's arguments regarding the production of Nisus' "Second Supplemental Privilege Log" seem to taint Perma-Chink's own conduct.

### **Perma-Chink's Request for Attorney's Fees and Costs Lacks Merit**

Perma-Chink moves for "payment of Perma-Chink's attorney's fees and costs associated with this motion following Nisus' refusal to provide the additional privilege log detail after *multiple requests*." Perma-Chink's Motion, at 1 (emphasis added). The "multiple requests" Perma-Chink alleges is one letter that addresses only the "Second Supplemental Privilege Log." A single letter addressing a single issue does not qualify as "multiple requests" as that phrase is reasonably interpreted.

Moreover, Nisus is unaware of Perma-Chink ever raising any issues with its "Initial Log." As to addressing the "Supplemental Privilege Log," Nisus pointed out that the alleged deficiencies also existed in Perma-Chink's corresponding log, and Perma-Chink dropped the issue without a response for two and a half months. Then, Perma-Chink revived its contention for the present Motion without any further discussion or amending its own log.

Perma-Chink, accordingly, does not deserve or warrant sanctions pursuant to Rule 37(a)(4)(A), which bars such a recovery if:

> the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

15
Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS   Document 171   Filed 09/02/04   Page 15 of 18   PageID #: 1326

Perma-Chink's request fails in all three regards. Perma-Chink did not make a "good faith effort to obtain the disclosure or discovery without court action," as it never addressed most of these issues before filing its Motion. Next, Nisus' response to Perma-Chink's charges is fully justified, as Perma-Chink's requests should be denied. Third, although the Court encouraged the parties to try to resolve discovery issues during the August 3 telephone hearing, Perma-Chink decided that it was not worth its time—and this constitutes "circumstances [that] make an award of expenses unjust."

Perma-Chink's request for "an award of its attorney's fees and costs associated with this motion and the preceding discovery conference in an amount of not less than $5,000.00" should be denied.

## **CONCLUSION**

Perma-Chink's arguments fail and it should not be rewarded to disregarding the provisions of Rule 37, this Court's Scheduling Order, and the suggestion of Judge Shirley during the August 3 telephone hearing. Instead of filing this Motion, Perma-Chink would have been better served by "getting its own house in order."

Nisus also reiterates that if the Court has any questions or reservations regarding Nisus' withheld materials, Nisus is more than happy to provide them for an *in camera* review.

Dated this 2d day of September, 2004.

Respectfully submitted,

s/Bradley H. Hodge
Bradley H. Hodge (BPR #13829)
GENTRY, TIPTON & McLEMORE, P.C.
P.O. Box 1990
Knoxville, Tennessee 37901-1990
(865) 525-5300

Douglas Williams
Allan G. Altera
Admitted *pro hac vice*
MERCHANT & GOULD
Suite 4900, 133 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 954-5100
**Attorneys for Plaintiff Nisus Corporation**

17 Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS   Document 171   Filed 09/02/04   Page 17 of 18   PageID #: 1328

## Certificate of Service

The undersigned hereby certifies that on September 2, 2004, a copy of the foregoing **"PLAINTIFF NISUS CORPORATION'S OPPOSITION TO PERMA-CHINK'S MOTION TO COMPEL DOCUMENTS CITED IN NISUS' PRIVILEGE LOGS"** was filed electronically. Notice of this filing will by sent by operation of the Court's electronic filing system to all counsel indicated on the electronic filing receipt. All other counsel, if any, will be served by regular U.S. Mail. Counsel may access this filing through the Court's electronic filing system.

s/Bradley H. Hodge
Bradley H. Hodge (BPR #13829)
GENTRY, TIPTON & McLEMORE, P.C.
P.O. Box 1990
Knoxville, Tennessee 37901-1990
(865) 525-5300

*BHH/dbt: \Nisus Corporation  3784\2003 II Case\P Opposition to Motion to Compel Privileged Documents (9-2-04).doc*