**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

| | | |
|---|---|---|
| NISUS CORPORATION, a Tennessee Corporation, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **No. 3:03-CV-120** |
| | ) | **Varlan/Shirley** |
| PERMA-CHINK SYSTEMS, INC., a Washington Corporation, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF NISUS CORPORATION'S OPPOSITION TO PERMA-CHINK'S MOTION
FOR TERMS RELATING TO CANCELLATION OF DEPOSITIONS**

At its own volition, Perma-Chink canceled the depositions. It now appears that the

depositions need not have been canceled, but supposedly Perma-Chink somehow misunderstood

the scope of Nisus' objections. Perma-Chink, for example, wrongly contends that Nisus sought

to bar all questions involving the issues of inequitable conduct and all associated factual

questions. Nisus has tried to correct that misunderstanding many times, such as in the telephone

conversation on July 29, during the telephone conference before Judge Shirley on August 3, and

in response to Perma-Chink's litany of discovery motions. Nisus, however, has been wholly

unsuccessful to date, and thus must address these issues in still another pleading.

### Background

As the Court well appreciates, the whole dispute here focuses on the issue of assignor

estoppel. Perma-Chink acts as if assignor estoppel has never previously been at issue and Nisus

suddenly raised this defense in July, just before the depositions were to occur. This is not true,

as the pleadings show.

In Nisus' discovery responses served on March 15, Nisus cited assignor estoppel as barring Perma-Chink's patent invalidity based on 35 U.S. C. §§ 102, 103, and 112:

> Subject to these and the general objections, Nisus notes that the doctrine of assignor estoppel bars Perma-Chink from contending that any events occurring before September 13, 1990—the date that Perma-Chink assigned Nisus the rights to the patent-in-suit for valuable consideration—cannot be a basis for invalidity and unenforceability. Such defenses include invalidity based on 35 U.S. C. §§ 102, 103, and 112. The Court has already ruled that the doctrine of assignor estoppel is applicable for the patent rights that Perma-Chink assigned to Nisus, and those patent rights matured into the patent-in-suit. As such, Perma-Chink is barred from accepting consideration for the patent rights and then claiming that those rights are worthless as a defense to its willful infringement.

Exhibit 1, at 23. Perma-Chink, however, raised absolutely no objection to Nisus' reliance on this defense. In fact, Perma-Chink sent a letter addressing what it contended constituted the deficiencies in Nisus' discovery responses, but it made no objection to or mention of assignor estoppel. *See* Exhibit 2.

Four months passed, and there was not a word from Perma-Chink about Nisus' assignor estoppel defense. Nisus then served its supplemental interrogatory responses in mid-July, which relied on assignor estoppel just as before. Nisus, for example, stated:

> As an initial point, Nisus notes that the doctrine of assignor estoppel bars Perma-Chink from contending that any events existing or arising before September 13, 1990—the date that Perma-Chink sold Nisus the rights to the patent-in-suit for valuable consideration—can serve as a basis for alleging invalidity and unenforceability. This Court has already made such a ruling in *Nisus I* and a pending summary judgment requests the same ruling in the present lawsuit.

Exhibit 3, at 6. This is almost identical to the language to that Nisus used four months earlier.

Perma-Chink received Nisus' discovery responses on July 19 at 9:25 am. *See* Exhibit 4. Another week passed and then, for the first time on the afternoon of July 26, Perma-Chink voiced an objection to Nisus' reliance on assignor estoppel. *See* Exhibit 5. At that time, Nisus did not believe a purported crisis was brewing because it only relied on the doctrine of assignor estoppel in addressing patent invalidity theories arising from facts or conditions existing on or

before September 13, 1990. *See* Exhibit 3, at 6-15. In fact, Nisus believed that a resolution could amicably be reached during the depositions in Knoxville the next week. *See* Exhibit 5.

## The Dispute as to What Was Said

The parties had a follow-up telephone conversation three days later, and this is where the versions of events start to differ. When counsel addressed the issue of assignor estoppel, Nisus proposed that if the Court rejects the doctrine in this lawsuit, Nisus would supplement its discovery addressing the patent invalidity theories within fourteen days. Perma-Chink's counsel rejected this outright.

Perma-Chink's counsel further stated that Nisus must provide the information sought in the interrogatories immediately and, additionally, he would circumvent the objections by asking the deponents about these issues the next week. Nisus' counsel responded that he would instruct the witnesses not to answer these questions and would seek a protective order during the deposition.

As Nisus' counsel explained, this impasse left Perma-Chink's counsel with two options. First, Perma-Chink's depositions could have covered factual information and defenses outside the ambit of assignor estoppel, but Perma-Chink ran the risk of not being able to address those legal contentions with lay witnesses until the issue of a protective order was resolved. The second alternative was for Perma-Chink to continue the depositions until Nisus filed a Motion for Protective Order, and Nisus agreed to file it the next afternoon. Perma-Chink elected this latter option and Nisus, as promised, filed for its protective order within a day.

Perma-Chink apparently has a different recollection of what happened. The best Nisus can understand, Perma-Chink contends that Nisus' counsel represented for the first time in that July 29 telephone call he would instruct Perma-Chink not to answer any questions whatsoever

that conceivably could in any way be related to defenses that might fall within the scope of assignor estoppel. Nisus is at a loss appreciate Perma-Chink's "interpretation" of events, and they are illogical.

First, Perma-Chink specifically contends that Nisus' counsel indicated he would not allow the witnesses to address any issues that related to its inequitable conduct claims, even those supposedly occuring in 2001 and 2002. However, Nisus had already addressed Perma-Chink's inequitable conduct allegations in its discovery responses, so it makes no sense that Nisus would nonetheless indicate Perma-Chink could not ask witnesses about these issues. Buttressing this point, when Nisus filed its Motion for Protective Order on July 30, there was no mention of "inequitable conduct" in that brief. And the "misunderstanding" continues, although Nisus again repeated its position in the telephone hearing on August 3, expressly noting it was not trying to bar Perma-Chink's discovery of its pleaded inequitable conduct allegations. Nonetheless, Perma-Chink filed this and its other barrage of motions on August 20 alleging throughout that Nisus is prohibiting all discovery on inequitable conduct issues. There is just no support for these arguments; it all arises from the mistaken "recollection" of Perma-Chink's counsel.

The other category of information that Nisus' counsel supposedly told Perma-Chink that would not be allowed is "any factual question within the scope of the doctrine of assignor estoppel." Perma-Chink's Motion, at 2. This likewise makes no sense. Nisus, in fact, allowed all of Perma-Chink's previous depositions to proceed without any such objections being made or instructions given to the witnesses not to answer.[1]

---

[1] If Perma-Chink disagrees and contends that Nisus has barred factual discovery in previous depositions based on assignor estoppel, then it would be appropriate for Perma-Chink to attach a portion of such a deposition transcript to its Reply Brief.

Nisus' Opposition to Perma-Chink's
Motion for Terms for Deposition Cancellation

Perma-Chink's "recollection" of the July 29 telephone conference is at odds with Nisus' course of conduct throughout this litigation. Nisus should not be sanctioned for Perma-Chink not correctly hearing, understanding, or remembering what Nisus' counsel said.[2]

## Nisus' Timing in Filing its Protective Order Request

Perma-Chink also criticizes Nisus because:

> If Nisus believed that a protective order was warranted and justified, it could and should have sought and obtained it and/or brought motions to quash the subpoenas that had been issued by Perma-Chink weeks before.

Perma-Chink's Motion, at 3. This contention ignores reality in that for months on end, Perma-Chink never mentioned it objected to Nisus seeking to stay discovery for legal theories involving patent invalidity based on assignor estoppel. Perma-Chink was on notice as of March 15, yet waited to voice any concern until July 26.

Since Perma-Chink acquiesced—or at least made no objection whatsoever—to Nisus' discovery responses that rely on assignor estoppel, it was unnecessary for Nisus unilaterally to file a motion for protective order. At the very least a dispute should exist before either of the parties undertake to file additional discovery motions with this Court, which is already inundated with discovery pleadings. The dispute on this issue came to a head on July 29, and Nisus then filed its Motion for Protective Order the very next day.[3]

---

[2] The parties have expended an enormous amount of resources fighting these "he said, she said" disputes about what one counsel really stated to another. Nisus has proposed that all oral conversations between counsel be recorded to end this ongoing problem. Perma-Chink's counsel refuses based solely on his belief that this would be "degrading." Assuming that recording telephone calls was actually "degrading," it is still better than wasting all of this time and money fighting about who said what to whom and when.

[3] Perma-Chink incorrectly represents that "Nisus served Perma-Chink with an extensive Motion for Protective Order, which obviously had been prepared substantially before the preceding afternoon's conversation." Perma-Chink's Motion, at 2. Perma-Chink's reliance on rank speculation as the sole basis for its allegations is, though typical in this case, offensive.

Nisus' Opposition to Perma-Chink's
Motion for Terms for Deposition Cancellation

## The Requested Sanctions are Unreasonable

When Perma-Chink opted to cancel the depositions, its counsel never mentioned non-refundable tickets. Yet, Perma-Chink now contends that Nisus should pay is costs "including out of pocket costs for change of travel in an amount not less than $7,500.00." Perma-Chink's Motion, at 3. It is hard to imagine an airline ticket costing so much money, particularly when Perma-Chink's counsel was able to book the flight one month beforehand. *See* Perma-Chink's Attachment G (letter dated July 2 agreeing to deposition dates starting on August 2). Given this allegedly enormous price, Nisus believes that it is appropriate for Perma-Chink to include a copy of the airline invoice and any refund information as an attachment to its Reply Brief. If Perma-Chink contends that it has incurred additional expenses in this "amount not less than $7,500.00," they should also be itemized and provided as attachments.

## CONCLUSION

Perma-Chink's Motion should be denied.

Dated this 2d day of September, 2004.

Respectfully submitted,

s/Bradley H. Hodge
Bradley H. Hodge (BPR #13829)
GENTRY, TIPTON & McLEMORE, P.C.
P.O. Box 1990
Knoxville, Tennessee 37901-1990
(865) 525-5300

Douglas Williams
Allan G. Altera
Admitted *pro hac vice*
MERCHANT & GOULD
Suite 4900, 133 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 954-5100
**Attorneys for Plaintiff Nisus Corporation**

## Certificate of Service

The undersigned hereby certifies that on September 2, 2004, a copy of the foregoing "**PLAINTIFF NISUS CORPORATION'S OPPOSITION TO PERMA-CHINK'S MOTION FOR TERMS RELATING TO CANCELLATION OF DEPOSITIONS**" was filed electronically. Notice of this filing will by sent by operation of the Court's electronic filing system to all counsel indicated on the electronic filing receipt. All other counsel, if any, will be served by regular U.S. mail. Counsel may access this filing through the Court's electronic filing system.

s/Bradley H. Hodge_____
Bradley H. Hodge (BPR #13829)
GENTRY, TIPTON & McLEMORE, P.C.
P.O. Box 1990
Knoxville, Tennessee 37901-1990
(865) 525-5300

*BHH/dbt: Nisus Corporation  3784\2003 II Case\P Opposition to Motion for Terms re Cancellation of Depos (2) (9-2-04).doc*

7                                   Nisus' Opposition to Perma-Chink's
Motion for Terms for Deposition Cancellation
Case 3:03-cv-00120-TAV-CCS   Document 173   Filed 09/02/04   Page 7 of 7   PageID #: 1382