IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| NISUS CORPORATION, a Tennessee Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:03-CV-120 |
| | ) Varlan/Shirley |
| PERMA-CHINK SYSTEMS, INC., a Washington Corporation, | ) ) ) |
| Defendant. | ) |

**PLAINTIFF NISUS CORPORATION'S OPPOSITION TO PERMA-CHINK'S MOTION
FOR SANCTIONS FOR LATE PRODUCTION OF 1989 DOCUMENTS**

Something's missing from Perma-Chink's Motion seeking sanctions for late production of Mr. Palmere's notebook—a copy of even a single page of the material that has supposedly "severely prejudiced" Perma-Chink, or even a single quotation from one of the "284 new documents." Why was all of this omitted? Because Perma-Chink has nothing to support its prejudice allegations. Yet, this does not hamper Perma-Chink from making charge after charge.

The primary material at issue is a spiral-bound notebook in which Mr. Vince Palmere made annotations and reminders to himself about personal and professional issues. Nothing in this notebook supports Perma-Chink's ongoing conspiracy theory—a contention this Court flatly debunked after conducting a one-day evidentiary hearing. In fact, this Court then upheld that ruling in response to Perma-Chink's two separate reconsideration motions.

Also, if this notebook were so important, then why didn't Mr. Palmere raise its existence sometime during the last six years of litigation? In contemplating this rhetorical question, it is notable that during the approximately first three years of this litigation, Mr. Palmere consulted for Nisus and, for the last three years, he has been a Perma-Chink employee. Surely Mr. Palmere

would have raised the existence of his notebook to one party or the other if it had the importance Perma-Chink alleges in its quest to obtain sanctions.

The bottom line is that Perma-Chink is relying on unsupported arguments. It has failed to cite anything from the newly discovered documents to support its allegation of "severe prejudice." As to its allegations that Nisus engaged in the "deliberate act" of withholding these documents, Perma-Chink has no substantiation to back these strong charges. For example, Perma-Chink's counsel did not have Mr. Palmere file a declaration asserting Nisus knew about his notebook or ought to have known about it, yet purposefully withheld it. Perma-Chink, it appears, is litigating this matter in its unmitigated zeal to file as many discovery motions as possible—the merits not withstanding.[1]

### The Produced Documents Do Not Support Perma-Chink's Contentions

The premise of Perma-Chink's Motion for Sanctions is that:

> The documents produced by Nisus appear to constitute minutes of meetings between the three original named inventors dating from January 1989. These documents evidence events occurring more than nine months prior to September 13, 1990, and support arguments made by Perma-Chink in Nisus I that Mr. Dunstan had no actual knowledge of the conduct which Nisus relied on to support its assignor estoppel theory.

Perma-Chink's Motion, at 2.

Perma-Chink's representation is very bold. The Court should have the opportunity to make its own analysis, so Nisus attaches a copy of some of the documents at issue as Exhibit 1. Nisus would have included the alleged "minutes of meetings between the three original named inventors," but could not find any such materials. It seems that Perma-Chink could not either.

---

[1] The Court encouraged the parties to try to resolve discovery disputes after the August 3 telephone conference, but Perma-Chink never sought to address this issue again with Nisus.

### A. *Nisus Did Not "Deliberately" Withhold Production of Mr. Palmere's Notebook*

Perma-Chink falsely charges that Nisus made a "calculated, tactical decision" in "deliberately" withholding the documents at issue. Perma-Chink's Motion, at 7. This and Perma-Chink's other similarly strong, unqualified statements rely purely on conjecture.

Nisus attaches as Exhibit 2 a Declaration of Mr. Kevin Kirkland, the president of Nisus. He rebuts under oath Perma-Chink's unsupportable allegations that Nisus held these documents until it was advantageous to disclose them. For the hearing that will occur on September 20, Mr. Kirkland will be in attendance and, if desired, he will take the stand and answer under oath any of the Court's questions in this regard.

In his Declaration, Mr. Kirkland attests that Mr. Palmere's notebook and the other documents were discovered in July and produced later that month. *See* Exhibit 2, at ¶¶ 2-3. Mr. Kirkland also confirms that Nisus' counsel, Mr. Williams, accurately represented the events that occurred, namely, the documents were discovered when reorganizing Nisus' offices in a file box while moving an old pallet of boxes holding unrelated materials. *Id.* at ¶¶ 4-5. Mr. Kirkland further notes that neither he nor other Nisus principals knew that these documents were located in the box or knew about the existence Mr. Palmere's notebook. *Id.* at ¶ 6.

Mr. Kirkland also states that he is unaware of Mr. Palmere ever mentioning his notebook, despite Mr. Palmere being associated with Nisus when this litigation began and interfacing closely with Nisus' litigation counsel (*see id.* at ¶¶ 8-11). In fact, Mr. Palmere billed Nisus for his discussions with multiple litigation attorneys, including a single meeting lasting six and a half hours. *See id.* at Attachment 1.

In mid-2001, Mr. Palmere "switched teams" and has been employed with Perma-Chink ever since. Notably, Mr. Palmere was a Perma-Chink employee when he testified at the one-day evidentiary hearing Judge Collier conducted. *See id.* at ¶¶ 13-14.

Through all of these events, Nisus is unaware of Mr. Palmere ever raising the existence of this notebook. *See, e.g., id.* at ¶¶ 12, 15. If, hypothetically, Mr. Palmere had previously indicated he had the notebook and it was not produced, then Perma-Chink would have a basis for the litany of sanctions that it is requesting here—but that is not the case.

Despite its lack of factual support, Perma-Chink nonetheless charges "Nisus believes that it may selectively produce documents when circumstances appear to favor Nisus, but withhold them when it is considered unfavorable." Perma-Chink's Motion, at 4. Mr. Kirkland, under oath, directly contradicts Perma-Chink's allegations in this regard and he also disputes Perma-Chink's associated contentions that Nisus undertook a "deliberate act" to withhold these documents. Exhibit 2, at ¶ 7.

Because Perma-Chink premises its request for sanctions on Nisus supposedly withholding Mr. Palmere's notebook intentionally until it was advantageous to disclose the material, the Motion fails. Sanctions against Nisus are unwarranted that rely purely on Perma-Chink's conjecture and associated untrue, unsupported, and disparaging arguments.[2]

**B.**   *Mr. Palmere's Notebook Does Not Undermine the Applicability of Assignor Estoppel*

Perma-Chink contends that the late production of Mr. Palmere's notebook is "severely prejudicial" because Perma-Chink previously was unable to use these materials that supposedly give credence to its "skunk-works" conspiracy theory. To this end, Perma-Chink argues:

---

[2] As another misrepresentation, Perma-Chink also states that Nisus did not produce the documents until August 2, 2004. *See* Perma-Chink's Motion, at 1. In reality, Nisus sent the materials on July 29 and they were received at Dorsey & Whitney's office in Seattle at 9:19 am on July 30. *See* Exhibit 3 (documenting package addressed to D. William Toone and confirming delivery date and time). Why Perma-Chink alleged Nisus sent the materials three days later is unclear.

4    Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS   Document 174   Filed 09/02/04   Page 4 of 13   PageID #: 1418

Even though Nisus had exclusive control of these documents, they were not produced despite (or even because) they may have supported Perma-Chink's contentions that Mr. Dunstan was excluded from the meetings resulting in the '838 application—a theory rejected by the Court in Nisus I.

Perma-Chink's Motion, at 4.

It is very telling that Perma-Chink failed to cite *any* statement or provide *any* quotation from Mr. Palmere's notebook to support *any* of its arguments. The reason is evident when the notebook pages are reviewed—they do not evidence the alleged "skunk-works" conspiracy against Mr. Dunstan.

In contrast to Perma-Chink's embellishments, the Court will note the contents of Mr. Palmere's notebook are quite mundane. For example, the very first page includes the entries:

> Business cards - order; and
> Can Rollover into 401K?

Exhibit 1, at NII 01111. It is unclear how Mr. Palmere annotating reminders to himself, *inter alia*, to order new business cards can be transformed into the "smoking gun" that corroborates Perma-Chink's long-argued conspiracy theory. Nor does Perma-Chink explain how Mr. Palmere's personal notes can be considered to be "minutes of meetings between the three original named inventors" to memorialize their supposed conspiracy. These unanswered questions are apparently the reason that Perma-Chink opted to omit any specific references to the documents and failed to attach any of the materials to its Motion as an exhibit.

It is also telling that Perma-Chink's Motion ignores the fact that Mr. Palmere is currently a Perma-Chink employee and Perma-Chink's counsel represents him in this litigation. *See* Exhibit 4.[3] Perma-Chink could have had Mr. Palmere submit a declaration attesting that certain

---

[3] *See also* Perma-Chink's Supplemental Privilege Log (Exhibit 5) (Perma-Chink claim attorney client privilege for communications between Mr. Palmere and Mr. Toone).

5     Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS    Document 174    Filed 09/02/04    Page 5 of 13    PageID #: 1419

entries in his notebook confirm the conspiracy to which he was a party, but it did not do so.[4]
Instead, Perma-Chink chose to rely on conjecture that Mr. Palmere's annotations, such as
"Rollover into a 401K," proves the existence of a conspiracy intended to hide the patent
application from Mr. Dunstan.

As noted above, this Court has already considered Mr. Palmere's and the other inventors'
testimony during a daylong evidentiary hearing, in which Perma-Chink strongly argued that the
three co-inventors conspired against Mr. Dunstan. In its findings, the Court expressly addressed
the unbelievability of Perma-Chink's charges asserting Mr. Palmere participated in the alleged
"skunk-works" conspiracy:

> The Court also notes Perma-Chink recently rehired Palmere, one of the supposed
> coconspirators. It strains credulity to assume Defendant would hire someone it believed
> conspired against its principal.

Exhibit 7 (*Nisus I* Court File 127), at 12, n.9 (citation omitted).[5] Given that Mr. Palmere is still a
Perma-Chink employee today, Perma-Chink is faced with the same "credibility" issue in
contending that Mr. Palmere's notebook supports its conspiracy allegation.

Furthermore, in addressing the alleged conspiracy, this Court has repeatedly ruled that the
pertinent issue is not what actual knowledge Mr. Dunstan had regarding the patent application:

> As the Court has indicated before, Dunstan and Perma-Chink are separate parties (Court
> File No. 59, at 4-5). Dunstan's personal knowledge about the details of the patent
> application is simply irrelevant.

*Id.* at 12. Nonetheless, Perma-Chink still continues to improperly equate Mr. Dunstan and
Perma-Chink as being one and the same:

> These documents evidence events occurring more than nine months prior to September
> 13, 1990, and support arguments made by Perma-Chink in Nisus I that *Mr. Dunstan had*

---

[4] Perma-Chink's counsel has previously filed a declaration on Mr. Palmere's behalf. *See* Court File No. 123
(attached as Exhibit 4). Notably the footer on pages 2-4 reads "DECLARATION OF D. WILLIAM TOONE."
[5] On cross-examination, Mr. Dunstan narrowed this alleged conspiracy down to a single person, Mr. Dietrich. "As
the Court noted at the hearing, at least two people must be involved for a conspiracy to exist." *Id.* at 12.

6  Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS   Document 174   Filed 09/02/04   Page 6 of 13   PageID #: 1420

*no actual knowledge* of the conduct which Nisus relied on to support its assignor estoppel theory.

Perma-Chink's Motion, at 3 (emphasis added). Perma-Chink thus ignores the basic tenet of corporate law that the corporation is a separate "person" from its principal in the eyes of the law.

The conclusion is clear: Mr. Palmere's notebook has no bearing on the applicability of assignor estoppel. Perma-Chink has cited to no entry in the notebook that supports its "skunk-works" conspiracy theory, nor has Perma-Chink even argued how the notebook contradicts the sworn testimony of any of the three inventors given before Judge Collier. Perma-Chink also faces the credibility issue that Mr. Palmere's notebook supposedly supports its conspiracy theory, yet Mr. Palmere—a coconspirator—was rehired by Perma-Chink and is still employed there today. And, Perma-Chink is errantly basing its arguments on the wrong premise that the personal knowledge of Mr. Dunstan is controlling because, supposedly, Mr. Dunstan and Perma-Chink are the same entity. Thus, Perma-Chink's alleged "great prejudice" is simply an unsupported accusation.

## Perma-Chink's Sought Sanctions are Unwarranted

Here, Perma-Chink requested three sanctions against Nisus for not discovering Mr. Palmere's notebook sooner: (1) compel discovery about these materials; (2) sanction Nisus with Perma-Chink's costs to file the present Motion and redepose the three inventors; and (3) dismiss Nisus' summary judgment motion of assignor estoppel. None of these sanctions is warranted.

**A.** *Nisus is Not Seeking to Bar Perma-Chink from Discovery Regarding Mr. Palmere's Notebook*

Perma-Chink's pleathora of recent filings demonstrates its quest to try to obtain some sanctions against Nisus. During the period after the August 3 telephone conference, the parties were supposed to try to resolve any discovery disputes to avoid motions, such as this one.

Perma-Chink never addressed this matter. Nisus obviously was surprised to learn that Perma-Chink decided to file the present Motion—and four additional motions to compel and for sanctions on August 20.

Here, Perma-Chink's first requested sanction is to "[c]ompel Nisus to provide information requested by Perma-Chink relevant to these newly produced documents." Perma-Chink's Motion, at 1. Nisus assumes that this requested sanction is based on Perma-Chink's "confusion" about the scope of Nisus' requested Motion for Protective Order Related to Matters Within Scope of Assignor Estoppel, Court File No. 144.

Perma-Chink's Motion, in fact, appears to be rehashing its same allegation from its opposition to the protective order, in which it alleged that Nisus supposedly seeks "to prevent Perma-Chink from following up on those documents with fact discovery." Court File No. 152, at 11. Perma-Chink made the same allegations before Judge Shirley on August 3 and, in response, Nisus' counsel Mr. Williams unequivocally then stated that Nisus' Motion for Protective Order was in no way seeking to prohibit Perma-Chink from asking about these documents. Yet, Perma-Chink has ignored this representation and the litigation regarding this issue continues.

Nisus also notes that it is unaware of any outstanding discovery that involves these documents to which it has not responded. Perma-Chink has not referenced any discovery requests in its Motion. Nisus further notes that Mr. Kirkland confirmed under oath that Mr. William's letter (Perma-Chink's Attachment A) describing the circumstances of the discovery of these materials was truthful and accurate. *See* Exhibit 2, ¶ 4.

**B.** ***Perma-Chink Wrongly Seeks to Have Nisus Pay for Perma-Chink's Discovery***

Next, Perma-Chink contends that the Court should:

> Sanction Nisus for its belated production by paying Perma-Chink's costs and expenses in re-deposing the three inventors and taking other discovery relating to the new documents.

Perma-Chink's Motion, at 1.

Starting with "re-deposing" Mr. Palmere, the Court will recall that Perma-Chink noticed his and Mr. Galyon's deposition without coordinating dates and it picked dates that Nisus' counsel was unable to attend. *See* Exhibit 8 (deposition notices).[6] Perma-Chink refused to reschedule and instituted a telephone conference on October 30 to compel these depositions to occur on its desired dates. Perma-Chink vehemently argued that it was "imperative" Mr. Palmere and Mr. Galyon be deposed in mid-November, and any delay whatsoever was unacceptable. After listening to the arguments, the Judge Shirley ruled:

> Perma-Chink noticed two depositions for November 13 and 14; Nisus Corporation is not available, but dfts are unwilling to change the dates; the Court scheduled the depositions of Mr. Galyon, Mr., Dietrich, and Mr. Palmere for December 2-5 because all parties will be in Knoxville; if there is a problem parties are to get together before the end of the week.

Court File No. 28.

Then, for some reason appreciated only by Perma-Chink, it decided that deposing Mr. Palmere was no longer "imperative"—or even necessary—and "struck" his deposition. Court File No. 45 (Exhibit 9), at 1. That is, after representing to the Court that Mr. Palmere absolutely had to be deposed in late November, Perma-Chink later decided that it was not even necessary to depose Mr. Palmere at all.[7] Given this background, there is no basis for Nisus to pay Perma-Chink's expenses to "re-depose" Mr. Palmere. Perma-Chink is simply looking for a windfall.

Perma-Chink further seeks to have the other inventors' depositions reopened and paid for by Nisus, even though there is no showing that Mr. Palmere's personal notebook has any

---

[6] As the Court will note, Perma-Chink noticed the depositions of Messrs. Palmere and Galyon on November 13 and 14 and it noticed the deposition of Mr. Dietrich on December 5.

[7] This conduct is extremely curious, as Nisus' counsel was available to attend the depositions on one of the two dates Perma-Chink unilaterally picked. If Perma-Chink had been able to determine that Mr. Palmere's deposition was going to be "struck" in mid-November instead of by November 26 (when Perma-Chink represented it had "struck" the deposition), then the entire telephone conference before Judge Shirley could have been avoided. Unfortunately, this was not the case.

9  Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS   Document 174   Filed 09/02/04   Page 9 of 13   PageID #: 1423

relevance to them. The other inventors are not the proper individuals to authenticate Mr. Palmere's notebook and, even if they were, this could be done by written discovery. Any other basis on which Perma-Chink believes the other inventors' depositions should be reopened is unclear because Perma-Chink has not cited any material in Mr. Palmere's notebook that justifies this sanction. Nisus also notes that Perma-Chink has had ample opportunity to pursue its "skunk-works" conspiracy theory with the inventors, so the finding of Mr. Palmere's notebook is not a basis to re-depose the other inventors.

Perma-Chink additionally seeks its "costs and expenses in . . . taking other discovery." This is an inappropriate sanction, as it has no bounds. That is, Nisus should not be subject to a sanction for which Perma-Chink cannot even articulate its scope.

In support of these sanctions, Perma-Chink contends that Nisus has engaged in "similar patterns of discovery abuse" (Perma-Chink's Motion, at 7), basing its charge on one ruling that issued five years ago. Contrary to Perma-Chink's contention, this does not establish a "pattern." Moreover, none of the attorneys currently representing Nisus—Messrs. Williams, Altera, or Hodge—were involved with the lawsuit then. Despite its attempts, Perma-Chink cannot establish that Nisus or its attorneys have an ongoing practice of improperly withholding discovery.

### C. *Perma-Chink's Requested Sanction of Dismissing Nisus' Summary Judgment Motion is Factually and Legally Unsupportable*

Perma-Chink's final request is that the Court "[s]anction Nisus by dismissing its pending motion for summary judgment as to assignor estoppel." Perma-Chink's Motion, at 1. There is no support for this contention. Perma-Chink, in fact, does not include a section in its Motion to discuss the appropriateness of this relief or cite a single supportive legal decision.

10
Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS   Document 174   Filed 09/02/04   Page 10 of 13   PageID #: 1424

Perma-Chink's proper recourse is to file a supplemental brief opposing summary judgment pursuant to Local Rule 7.1, a step that it had already taken before filing the present Motion. Perma-Chink even disclosed this fact:

> On August 19, 2004, Perma-Chink filed a supplemental brief in opposition to Nisus' motion for summary judgment on the issue of assignor estoppel to call the Court's attention to Nisus' belated production of relevant evidence. *Ct. Dkt.* #155.

Perma-Chink's Motion, at 1, n.1.

Given Perma-Chink has filed a supplemental brief, it is unclear why Perma-Chink later filed this Motion the very next day seeking to dismiss Nisus' summary judgment motion as a sanction. In other words, if Perma-Chink really believed that it a valid basis exists for the Court to dismiss Nisus' assignor estoppel summary judgment motion, then why file a supplemental brief beforehand arguing the merits? It appears that the true objective may have been to file as many discovery motions as possible with as many arguments that could be made, regardless of the existence of legal authority. This tactic seems to run afoul of the spirit, if not the letter, of the Federal Rules of Civil Procedure.

11
Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS   Document 174   Filed 09/02/04   Page 11 of 13   PageID #: 1425

## CONCLUSION

Nisus respectfully submits that Perma-Chink's Motion should be denied.

Dated this 2d day of September, 2004.

>Respectfully submitted,
>
>s/Bradley H. Hodge
>Bradley H. Hodge (BPR #13829)
>GENTRY, TIPTON & McLEMORE, P.C.
>P.O. Box 1990
>Knoxville, Tennessee 37901-1990
>(865) 525-5300
>
>Douglas Williams
>Allan G. Altera
>Admitted *pro hac vice*
>MERCHANT & GOULD
>Suite 4900, 133 Peachtree Street, N.E.
>Atlanta, Georgia 30303
>(404) 954-5100
>**Attorneys for Plaintiff Nisus Corporation**

12   Nisus' Opposition to Perma-Chink's
Motion for Sanctions for Late Production
Case 3:03-cv-00120-TAV-CCS   Document 174   Filed 09/02/04   Page 12 of 13   PageID #: 1426

## Certificate of Service

The undersigned hereby certifies that on September 2, 2004, a copy of the foregoing **"PLAINTIFF NISUS CORPORATION'S OPPOSITION TO PERMA-CHINK'S MOTION FOR SANCTIONS FOR LATE PRODUCTION OF 1989 DOCUMENTS"** was filed electronically. Notice of this filing will by sent by operation of the Court's electronic filing system to all counsel indicated on the electronic filing receipt. All other counsel, if any, will be served by regular U.S. Mail. Counsel may access this filing through the Court's electronic filing system.

       s/Bradley H. Hodge
       Bradley H. Hodge (BPR #13829)
       GENTRY, TIPTON & McLEMORE, P.C.
       P.O. Box 1990
       Knoxville, Tennessee 37901-1990
       (865) 525-5300