IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| **NISUS CORPORATION, a Tennessee Corporation,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | No. 3:03-CV-120 Varlan/Shirley |
| **PERMA-CHINK SYSTEMS, INC., a Washington Corporation,** | ) ) ) | |
| **Defendant.** | ) ) | |

**PLAINTIFF NISUS CORPORATION'S OPPOSITION TO PERMA-CHINK'S MOTION TO COMPEL PRODUCTION OF INTERROGATORY NO. 9**

Perma-Chink's Motion to Compel relies on an incorrect premise:

Nisus' supplement to Interrogatory No. 9 again contained no substantive disclosure whatever. Instead, Nisus' "supplementation" consisted of ten (10) additional pages of objections and legal arguments *asserting that assignor estoppel barred **all** Perma-Chink affirmative defenses*.

Motion, at 2 (emphasis added). Nisus can fathom no excuse for filing a discovery motion that is so mistaken when Nisus' responses at issue (included as Perma-Chink's Attachment A) belie its premise.

To allow the Court to evaluate the veracity of Perma-Chink's representations, Nisus attaches Exhibit 1, which is a marked-up version of Nisus' response to Interrogatory No. 9 showing two things. First, a word search was performed on the electronic version of this document for "assignor" and, at each occurrence, Nisus has underlined the phrase "assignor estoppel" everywhere it appears. The second markings that Nisus has added are boxes indicating

the beginning of its response to each of Perma-Chink's defense contentions, namely, the validity defenses and the inequitable conduct/fraud defenses.[1]

After reviewing this marked document, Nisus submits the Court will appreciate that:

- Nisus limits its reliance on assignor estoppel to patent invalidity defenses based on facts or conditions existing on or before September 13, 1990, the date on which Perma-Chink sold Nisus the patent rights at issue.
- Perma-Chink is wrong in its contention that Nisus "repeatedly assert[s] that 'assignor estoppel' justifies its non-response *to each and every affirmative defense raised by Perma-Chink*—whether the conduct alleged occurred before or after September 13, 1990." Perma-Chink's Motion, at 2 (emphasis added).

Nisus further believes that after considering the discussion below, the Court will also agree:

- Nisus' discovery responses relying on assignor estoppel correspond to the *Nisus I* rulings, and Nisus did not extend the scope.
- Nisus' discovery responses addressing the inequitable conduct and fraud defenses are more extensive than Perma-Chink's own answers.

**Perma-Chink's Contentions Regarding Nisus' Inequitable Conduct Responses are Wrong**

Nisus begins its discussion with the inequitable conduct and fraud defenses, as that is the most disputed issue. The Court is aware that Perma-Chink has pleaded four separate counts for inequitable conduct/fraud in its affirmative defenses and counterclaims. Nisus addresses each of these four pleaded counts in its response to Interrogatory No. 9.[2]

---

[1] As Perma-Chink noted, its

> affirmative defenses include: (a) lack of enforceability raised by Perma-Chink's allegations of inequitable conduct and fraud, and (b) lack of validity raised by Perma-Chink's allegations of statutory violations of 35 U.S.C. § 102 ("anticipation and on-sale bar"), 35 U.S.C. § 103 ("obviousness"), 35 U.S.C. § 112 ("lack of enablement" "lack of best modes" and "indefiniteness").

Perma-Chink's Motion, at 1.

[2] Nisus responded to Perma-Chink's pleadings that set forth these defenses, as Perma-Chink's earlier discovery responses were not enlightening. To that end, Perma-Chink notes in its footnote 2 that Nisus' Interrogatory No. 5 requests "Perma-Chink's contentions on unenforceability arising from inequitable conduct and/or fraud." Perma-Chink's initial response to this discovery request provided little information about Perma-Chink's causes of actions or theories. *See* Exhibit 2, at 9-10. Nisus thus responded to the inequitable conduct/fraud contentions as set forth in Perma-Chink's pleadings, which must be made with specificity pursuant to Rule 9(b).

The table below lists the number designation of each of Perma-Chink's inequitable conduct/fraud counterclaims, the general subject matter of the respective counts, and the pages in Exhibit 1 where Nisus began to address the counterclaims in its discovery response:

| Page of Response | Counterclaim At Issue | General Subject of the Counterclaim |
|---|---|---|
| 9 | 9th | During the patent prosecution in 1991, Mr. Stanley Galyon allegedly made misrepresentations about the Bora-Care formulation related to the "environmentally safe" and "improved depth of penetration" claim limitations. |
| 12 | 1st | Nisus' counsel made misrepresentations about the 1988 sales of Bora-Care to the Patent Examiner while prosecuting the patent-in-suit. |
| 13 | 17th | Nisus improperly claimed a formulation including propylene glycol when it filed the application in 2001. |
| 15 | 11th | Nisus failed to disclose the 1988 sales of Bora-Care when prosecuting the '664 and '828 patents, both of which were at issue in *Nisus I*. |

This table and the associated annotated discovery response will allow the Court to determine more quickly the veracity of Perma-Chink's allegations.

**A.** ***Nisus Addresses Perma-Chink's Inequitable Conduct Counts that Allegedly Occurred in 2001 and 2002 without Objection or without <u>Any</u> Reference to Assignor Estoppel***

The inequitable conduct/fraud counts that Perma-Chink contends involve events supposedly occurring in 2001 and 2002 are the second and third claims in the table above.[3] The two charges, in general terms, are that (1) Nisus and its counsel supposedly made misrepresentations to the examiner during patent prosecution and (2) Nisus improperly filed claims for a propylene glycol formulation. Nisus' discovery responses to these two defenses start at the top of page 12 and continue to the top of page 15. *See* Exhibit 1.

As the Court will note, nowhere in those pages addressing these two pleaded inequitable conduct/fraud counts does the phrase "assignor estoppel" appear. *See* Exhibit 1. Nor is there a

---

[3] The first allegation in the table involves actions that allegedly occurred in 1991 and the last entry involves events that concluded in 1997 when the '828 patent issued. A portion of the '828 patent is attached as Exhibit 3.

3     Nisus' Opposition to Perma-Chink's Motion to
Compel Production of Interrogatory No. 9
Case 3:03-cv-00120-TAV-CCS   Document 175   Filed 09/02/04   Page 3 of 16   PageID #: 1497

single objection to addressing Perma-Chink's two inequitable conduct/fraud contentions in these pages. *See* Exhibit 1. Nisus, in other words, provides substantive responses to Perma-Chink's inequitable conduct defenses that it alleges arose or occurred in 2001 and 2002.

Against this backdrop, it is inexplicable how Perma-Chink can in good faith represent to this Court that:

> *Its most egregious refusal to provide discovery relates to Perma-Chink's unenforceability defenses.* Perma-Chink's affirmative defenses of inequitable conduct and fraud allege that Nisus breached its duty of candor and good faith by non-disclosure and misrepresentation of material information to the PTO. All of the relevant acts occurred during 2001 and 2002, during prosecution of the '095 patent, which was not even filed until June 25, 2001. Again, ignoring its own admission that even the broadest reading of the Nisus I orders is limited to conduct occurring prior to September 1990, *Nisus refuses to provide any substantive response as to these affirmative defenses* either.

Perma-Chink's Motion, at 1-2 (emphasis added). Perma-Chink's representation is irreconcilable with the actual content of Nisus' discovery responses, as Exhibit 1 highlights.

Another example of Perma-Chink's ubiquitous, but wrong, representations on this issue is:

> Perma-Chink's unenforceability and fraud defenses are predicated on actions taken by Nisus and its counsel in the years 2001 and 2002, during the prosecution of the patent-in-suit. All of Nisus' repetitive assignor estoppel objections and arguments thus have no bearing on these defenses.

Perma-Chink's Motion, at 5. Contrary to this assertion, Exhibit 1 documents that assignor estoppel objections do not appear anywhere in Nisus' responses addressing the pleaded defenses that Perma-Chink contends arose or occurred in 2001 and 2002.

Even more perplexing, Nisus provides a more lengthy response addressing these two inequitable conduct/fraud defenses than Perma-Chink provides in response to Nisus' corresponding interrogatory seeking information about all four of its counts. That is, Nisus' response spans three pages from the top of page 12 to the top of page 15. The substance of

4   Nisus' Opposition to Perma-Chink's Motion to
    Compel Production of Interrogatory No. 9
Case 3:03-cv-00120-TAV-CCS   Document 175   Filed 09/02/04   Page 4 of 16   PageID #: 1498

Perma-Chink's "supplemented" response to Interrogatory No. 5, in which Perma-Chink addressed all of its inequitable conduct defenses, is less than two pages long. *See* Exhibit 4, at 15-16. Specifically, Perma-Chink sets forth a litany of objections on page 14, begins its response on page 15, and ends close to the bottom of page 16, so it is not a full two pages of substantive response. Thus, Perma-Chink's discovery answer, which is supposed to address *all* of its inequitable conduct defenses, is shorter than Nisus' response addressing just two of the four pleaded allegations.

Additionally, Perma-Chink's discovery response seems to be deficient for incorporating its pleadings to be part of the interrogatory answer, but Nisus assumes that this disclosure forms no part of Perma-Chink's "real" answer. Perma-Chink states:

> Subject to and without waiver of these objections, Perma-Chink responds that it has already provided Nisus with detailed allegations of various acts of inequitable conduct and/or fraud in Perma-Chink's Proposed Amended Answer (Court File No. 70, the briefing seeking to amend and depose counsel (Court File Nos. 64, 68, 70, 76, 77, 80, 96, 122, 123, l26), and the hearing before Magistrate Judge Shirley on June 16, 2004 and Exhibits (Court File Nos. 129, 130).

*Id.* at 15. But, Perma-Chink itself has repeatedly argued that a response including a reference to pleadings is highly improper under the Federal Rules. For example, Perma-Chink told Nisus:

> The Rules do not permit Nisus to answer an interrogatory by citing to documents and depositions. Rule 33(d) requires substantive narrative responses.

Exhibit 5, at 1, ¶ "2." In another letter, Perma-Chink wrote:

> As you also well know, it is not an adequate response to cite to general depositions or blocks of documents.

Exhibit 6, at 1. Perma-Chink later briefed this issue to the Court in detail

> Perma-Chink maintains that discovery responses of this nature are wholly inadequate and comprise an abuse of the "document option" provision of Fed. R. Civ. P. 33(d), as well as an improper citation to deposition testimony in place of providing substantive factual responses.

> *See* Advisory Committee Notes To Rule 33(c) [subsection (c) was renumbered to (d) by 1993 amendment] ("a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived");
>
> *See also* 4A J. Moore, J. Lucas, *Moore's Federal Practice* ¶ 33.25[1] (2d ed. 1991) ("It is well-established that an answer to an interrogatory 'must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers.");
>
> *See also In re G-I Holdings, Inc.* 21 8 F.R.D. 428,438 (D.N.J. 2003) ("The option afforded by Rule 33(d) is not a procedural device for avoiding the duty to give information."); and *US. SEC v. Elfindepen, S.A.,* 206 F.R.D. 574 (M.D.N.C. 2002) ("Document dumps or vague references to documents do not suffice.").

Court File No. 103 (Exhibit 7), at 2.[4] After Perma-Chink has conducted all of this research and made all of these arguments, and if the same standard is to be applied to Perma-Chink, then Perma-Chink's citation to pleadings cannot form any part of its answer. (Also, if reference to pleadings did form part of Perma-Chink's discovery response, then Nisus could correspondingly amend its answer to reference its pleadings—which do not discuss assignor estoppel—and Perma-Chink would certainly have to agree that this matter is concluded).

**B.**   *Unlike Perma-Chink, Nisus Addresses the Pleaded Count Alleging Mr. Galyon Committed Fraud and Inequitable Conduct*

As the table above indicates, Nisus addresses Perma-Chink's next pleaded defense that Mr. Galyon supposedly committed inequitable conduct during the prosecution of the '664 patent in 1991. Nisus' response on just this defense is slightly over three pages long. As will be noted from Exhibit 1, there is absolutely no reference to assignor estoppel in Nisus' answer addressing

---

[4] *See also Securities and Exchange Comm'n v. Elfindepan*, 206 F.R.D. 574, 577-78 (M.D.N.C. 2002):

> Next, the documents plaintiff intends to use are not business records as required by Rule 33(d). *Pleadings*, depositions, exhibits, and affidavits which plaintiff intends to use *are not Rule 33(d) business records*. Without passing on whether answering interrogatories by "incorporation by reference" to other documents is ever permissible outside of Rule 33(d), suffice it to say the Court would not permit this tactic to be used to make an end run around the other restrictions imposed by Rule 33(d). For this reason, the Court also finds plaintiff is not permitted to use Rule 33(d) as has been attempted in this case.

(Emphasis added) (Citations and footnotes omitted).

6   Nisus' Opposition to Perma-Chink's Motion to
Compel Production of Interrogatory No. 9
Case 3:03-cv-00120-TAV-CCS   Document 175   Filed 09/02/04   Page 6 of 16   PageID #: 1500

this matter. Thus, Nisus is not "asserting assignor estoppel as a shield to Perma-Chink's discovery efforts," as Perma-Chink wrongly charges. Perma-Chink's Motion, at 5.

Perma-Chink's conduct is also perplexing because its response to Nisus' Interrogatory No. 5 does not even mention this defense, let alone Perma-Chink's contentions. *See* Exhibit 4, at 14-16. **Why?** Perma-Chink has the burden of proof and pleaded the count, so its refusal to address its own contention in discovery is wrong and should not be countenanced here. Nisus believes that Perma-Chink should provide an explanation for its conduct in its Reply Brief.

**C.**     ***Unlike Perma-Chink, Nisus Addresses the Allegations That Inequitable Conduct Allegedly Occurred During the Prosecution of the* Nisus I *Patents***

Perma-Chink's fourth pleaded inequitable conduct/fraud defense is its allegation that misrepresentations occurred during the prosecution of the '664 and '828 patents, neither of which are in suit here. Nisus cites to the Court's *Nisus I* order barring prosecution of these counts in *Nisus I*, which is based on assignor estoppel. Nisus then notes that Perma-Chink is improperly attempting to circumvent that ruling in this lawsuit. *See* Exhibit 1, at 15.

Again, Perma-Chink's conduct is disingenuous because its response to Nisus' Interrogatory No. 5 does not even mention this defense, let alone Perma-Chink's contentions on this matter. *See* Exhibit 4, at 14-16. **Why?** Perma-Chink should provide an explanation in its Reply Brief for its decision not to address its own pleaded count for which it has the burden of proof.

Perma-Chink's conduct in litigating Nisus' response to its inequitable conduct/fraud contentions is highly abusive, particularly when Nisus is required to expend its resources demonstrating that Perma-Chink has incorrectly represented the content of Nisus' responses. Perma-Chink then compounds the problem by not even addressing some of its own pleaded inequitable conduct counts. And, the problems with Perma-Chink's answer could be even more

7     Nisus' Opposition to Perma-Chink's Motion to
Compel Production of Interrogatory No. 9
Case 3:03-cv-00120-TAV-CCS   Document 175   Filed 09/02/04   Page 7 of 16   PageID #: 1501

extensive, but Nisus assumes that Perma-Chink's incorporation of its pleadings into its response does not form any part of its "real" answer, as Perma-Chink has argued so many times would be highly inappropriate.

### Perma-Chink Incorrectly Represents Nisus is Applying Assignor Estoppel in its Discovery Responses More Broadly than the Court

Perma-Chink's decision to litigate Nisus' reliance on assignor estoppel in its response to the invalidity contentions arising before September 13, 1990 was likewise imprudent. As the Court knows, the appropriateness of Nisus relying on assignor estoppel to address invalidity theories arising under 35 U.S.C. §§ 102, 103, and 112 were already briefed in Nisus' pending Motion for Protective Order Related to Matters Within Scope of Assignor Estoppel, Court File No. 144, before Perma-Chink filed the present Motion. The results of that ruling will be dispositive on whether Nisus' responses to the invalidity contentions here are appropriate, so Perma-Chink's rationale is unclear for filing the present Motion now. It appears Perma-Chink is imprudently expending the Court's and Nisus' resources.

Nisus, however, addresses a few of Perma-Chink's errant representations that may not be resolved by Nisus' Motion for Protective Order. First, Perma-Chink has mischaracterized the invalidity defenses, which are based on facts or conditions existing on or before September 13, 1990, to somehow be based on events arising after this date. Nisus relies on the Court's prior rulings to establish this point. This exercise also demonstrates that Nisus is not seeking to extend the scope of assignor estoppel in its sought protective order to anything broader than this Court has already ruled is appropriate in *Nisus I*.

The other point that Nisus addresses is Perma-Chink wants the Court to believe it is surprised Nisus is relying on assignor estoppel in response to Perma-Chink's Interrogatory No. 9.

8 Nisus' Opposition to Perma-Chink's Motion to
Compel Production of Interrogatory No. 9
Case 3:03-cv-00120-TAV-CCS   Document 175   Filed 09/02/04   Page 8 of 16   PageID #: 1502

In reality, Nisus expressly relied on this same defense on March 15 for the very same contentions, and Perma-Chink made no objection whatsoever. Mysteriously, this same reliance on assignor estoppel four months later has suddenly become a crisis and has resulted in extensive litigation, such as this briefing.

**A.** *Nisus' Reliance on Assignor Estoppel in its Discovery Responses is No Broader than this Court's Application*

Nisus has not sought to expand the scope of assignor estoppel in its discovery process any broader than this Court's application in *Nisus I*. Nonetheless, Perma-Chink argues:

> Perma-Chink's affirmative defenses of "anticipation," "lack of enablement," and "failure to disclose best modes" all allege that Nisus improperly expanded the claimed invention <u>in 2001 and 2002</u> and that no lab records support any new invention.

Perma-Chink's Motion, at 2 (emphasis in original). This contention is not supportable.

### 1. The '828 Patent Has a Claim of the Same Scope as Those at Issue Here

The Court has previously applied the doctrine of assignor estoppel to Nisus' '828 patent in the earlier litigation, and that patent has a claim with equivalent limitations to some of the claims in the patent-in-suit. Thus, the Court's application of invalidity defenses to the claims of the '828 patent apply equally to those claims at issue here.

Nisus explained this matter in its response to Interrogatory No. 9:

> The Court has already found that assignor estoppel applies to invalidity defenses asserted against U.S. Patent No. 5,645,828, and that patent specifically claims a propylene glycol formulation. *See* '828 patent, col. 32, line 25. It is axiomatic that if Perma-Chink cannot challenge the '828 patent claiming a propylene glycol formulation, Perma-Chink likewise is barred from contending the patent-in-suit is invalid for setting forth the identical propylene glycol claim limitation.

Exhibit 1, at 8-9.

To develop this point further, Nisus notes exemplary Claim 22 of the patent-in-suit, the '095 patent, sets forth three chemical limitations:

9 Nisus' Opposition to Perma-Chink's Motion to
Compel Production of Interrogatory No. 9
Case 3:03-cv-00120-TAV-CCS  Document 175  Filed 09/02/04  Page 9 of 16  PageID #: 1503

A composition for treating tree derived products resulting from a mixture comprising:
<u>polyethylene glycol</u> having an average molecular weight between about 200 and about 400;
<u>propylene glycol</u>; and
<u>a glycol soluble boron containing compound</u> in an amount effective to prevent or eradicate infestation and wherein said glycol soluble boron containing compound is selected from the group consisting of borax, boric acid, potassium, ammonium and sodium salt of boric acid, boric oxide and disodium octaborate tetrahydrate and is present in the amount of between about 20% and about 50% by weight, and wherein said composition is capable of dilution with water in the amount between about 0.5 and about five times the combined volume of said polyethylene glycol, propylene glycol and said soluble boron containing compound. (Emphasis added.)

In comparison, Claim 12 of the '828 patent reads:

The method of claim 11 wherein said short chain polyalkylene glycol having an average molecular weight of between about 200 and about 400 is <u>polyethylene glycol</u> having an average molecular weight of about 200, said alkylene glycol is ethylene glycol or <u>propylene glycol</u> and said boron provided as <u>a glycol soluble boron containing compound</u> is selected from the group consisting of disodium octaborate tetrahydrate, borax, boric acid, potassium, ammonium, and sodium salts of boric acid and boric oxide

Exhibit 3, at col. 32, lines 21-29. This claim from the '828 patent sets forth the identical three chemical limitations as appear in the supposedly fraudulently filed '095 patent, namely, (1) propylene glycol, (2) polyethylene glycol, and (3) a glycol soluble boron containing compound.

It necessarily follows that, assuming the Court does not reverse itself on its assignor estoppel ruling from *Nisus I* (given the underlying facts from 15 years ago cannot change), the same defenses that apply to the '828 patent will also apply to the '095 patent.

### 2. The Defense of Anticipation Was Subject to Assignor Estoppel in *Nisus I*

As quoted above, the first defense that Perma-Chink lists as not potentially being subject to assignor estoppel is "anticipation," which falls under 35 U.S.C. § 102. Perma-Chink's argument fails.

First, the Federal Circuit has explained:

> Invalidity based upon lack of novelty (often called "anticipation") requires that the same invention, including each element and limitation of the claims, was known or used by others before it was invented by the patentee.

*Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 302 (Fed. Cir. 1995). Anticipation, therefore, is a function of the prior art, which existed before Perma-Chink filed the original patent application at issue. That is why the Court ruled that assignor estoppel applies to this defense.

Specifically, this Court found that assignor estoppel barred Perma-Chink from contenting that the claims of the '828 patent—including Claim 12 quoted above—were anticipated. *See* Exhibit 1, at 6-7 (quoting Court's order in *Nisus I* denying summary judgment of anticipation under 35 U.S.C. § 102(b)). Assuming that assignor estoppel is found to apply in this lawsuit, it makes no sense that the Court would find Perma-Chink could prosecute the anticipation defense when it was barred from doing so in *Nisus I* for claims having the same limitations.

### 3. Assignor Estoppel Also Barred Perma-Chink's Section 112 Defenses in *Nisus I*

The Court has also found in *Nisus I* that assignor estoppel bars patent defenses arising under Section 112. Nisus discusses one ruling in its discovery response. *See* Exhibit 1, at 7-8 (quoting Court's order addressing indefiniteness under 35 U.S.C. § 112). Again, it is illogical to contend that Perma-Chink was barred from asserting that the '828 patent was invalid for lack of enablement and failures to disclose best mode for claims including the propylene glycol limitation, but Perma-Chink will be allowed to pursue those defenses in this action even if assignor estoppel is found to apply.

Another way to consider this issue is that Perma-Chink contends that the patent specification that Perma-Chink itself filed with the Patent Office and later sold to Nisus is inadequate and invalidates the claims. This position contravenes the precept of assignor

11
Nisus' Opposition to Perma-Chink's Motion to
Compel Production of Interrogatory No. 9
Case 3:03-cv-00120-TAV-CCS   Document 175   Filed 09/02/04   Page 11 of 16   PageID #: 1505

estoppel. Under the doctrine, Perma-Chink is barred from taking valuable consideration from Nisus for the patent rights and then defending its infringing activities by arguing it sold Nisus a defective patent application.

The result is that Nisus is relying only on the defenses that this Court found were barred in *Nisus I*. All of these defenses rely on facts or conditions existing on or before September 13, 1990. Perma-Chink's counterargument falls apart when considering that some claims of the '828 and '095 patents have identical limitations.

**B.** *Nisus Raised Its Intent to Rely on Assignor Estoppel Months Ago, and Perma-Chink Did Not Object Until Recently*

Perma-Chink would also have the Court believe that assignor estoppel has never previously been at issue and, out of nowhere in mid-July, Nisus suddenly raised this defense. Pleadings in this case show Perma-Chink's contention to be wrong.

In its discovery responses served *four months earlier* on March 15, Nisus cited assignor estoppel as barring Perma-Chink's patent invalidity based on 35 U.S. C. §§ 102, 103, and 112:

> Subject to these and the general objections, Nisus notes that the doctrine of assignor estoppel bars Perma-Chink from contending that any events occurring before September 13, 1990—the date that Perma-Chink assigned Nisus the rights to the patent-in-suit for valuable consideration—cannot be a basis for invalidity and unenforceability. Such defenses include invalidity based on 35 U.S. C. §§ 102, 103, and 112. The Court has already ruled that the doctrine of assignor estoppel is applicable for the patent rights that Perma-Chink assigned to Nisus, and those patent rights matured into the patent-in-suit. As such, Perma-Chink is barred from accepting consideration for the patent rights and then claiming that those rights are worthless as a defense to its willful infringement.

Exhibit 8, at 23.[5] Thus, Nisus has been consistent on this point.

Perma-Chink's reaction to these discovery responses was a letter setting forth what it contended constituted the deficiencies in Nisus' original responses; significantly, however, it made no objection to or mention of assignor estoppel. *See* Exhibit 5.

---

[5] This is almost identical to the language that Nisus used in its supplemental responses, which has resulted in Perma-Chink's plethora of discovery motions. *See* Exhibit 1, at 6.

Because Perma-Chink acquiesced (that is, did not object) to Nisus' responses that rely on assignor estoppel, it was unnecessary for Nisus to file a motion for protective order. There must be a dispute first, and none existed until July 29, when Perma-Chink first raised the issue. *See* Exhibit 9, ¶ 2. In fact, Perma-Chink waited seven (7) days after receiving Nisus' discovery responses even to mention it objected to Nisus' reliance on this defense. *See* Exhibit 10 (documenting delivery of discovery responses at 9:25 am on July 19).

Nonetheless, despite Nisus having no notification or even a hint that Perma-Chink objected to Nisus' reliance on assignor estoppel, Perma-Chink vilifies Nisus for not acting earlier:

> Five months after first receiving Perma-Chink's discovery requests, Nisus belatedly filed a Motion For Protective Order on July 30, 2004 . . . .

Perma-Chink's Motion, at 3. Perma-Chink's attempt to foist the blame on Nisus for supposedly failing to seek a protective order sooner is, once again, disingenuous.

### **Perma-Chink Incorrectly Represents the Timing of Nisus' Production**

Perma-Chink even inaccurately states how the parties exchanged their supplemental interrogatory responses, apparently to mitigate its one-week delay in objecting to the assignor estoppel defense. Specifically, Perma-Chink asserts:

> After Perma-Chink delivered its supplemental responses on July 16, 2004, it received Nisus' supplemental responses by U.S. mail during the week of July 19.

Perma-Chink's Motion, at 2 (footnote omitted). This representation is wrong.

The parties agreed to mutually exchange their responses by overnight courier, and that is what happened. Perma-Chink's representation that delivered its responses to Nisus on July 16 is

errant. Perma-Chink's representation that Nisus, in contrast, sent its responses "by U.S. Mail" to arrive sometime during the week of July 19 is also wrong, which Exhibit 10 documents.[6]

### Perma-Chink's Request for Attorney's Fees and Costs Lacks Merit

Perma-Chink moves for "an award of its attorney's fees and costs associated with this motion and the preceding discovery conference in an amount of not less than $5,000.00." Perma-Chink's Motion, at 7. This request is unwarranted and should fail.

There was no reason for Perma-Chink to file this Motion when it did—other than to further its unmitigated quest to file as many discovery motions as possible. The Court's ruling on Nisus' Motion for Protective Order Related to Matters Within Scope of Assignor Estoppel will be dispositive to the appropriateness of Nisus' discovery responses addressing patent invalidity.

The other issues that Perma-Chink argued regarding the inequitable conduct/fraud defenses inaccurately portray the content of Nisus' answers, and never should have been briefed. Moreover, Perma-Chink's corresponding discovery responses are less comprehensive than Nisus', as Perma-Chink failed to provide discovery on its own pleaded counts. Furthermore, Perma-Chink's own discovery responses contravene the Federal Rules based on Perma-Chink's own briefing to this Court a little over two months earlier. *See* Exhibit 7, at 2.

Perma-Chink should not be rewarded for this conduct.

---

[6] *See id.* (documenting Nisus' responses were shipped on July 16 to D. William Toone by Federal Express and delivered on July 19 at 9:25 am).

14  Nisus' Opposition to Perma-Chink's Motion to
Compel Production of Interrogatory No. 9
Case 3:03-cv-00120-TAV-CCS   Document 175   Filed 09/02/04   Page 14 of 16   PageID #: 1508

## **CONCLUSION**

Perma-Chink's Motion should be denied in all respects.

Dated this 2d day of September, 2004.

        Respectfully submitted,

        s/Bradley H. Hodge
        Bradley H. Hodge (BPR #13829)
        GENTRY, TIPTON & McLEMORE, P.C.
        P.O. Box 1990
        Knoxville, Tennessee 37901-1990
        (865) 525-5300

        Douglas Williams
        Allan G. Altera
        Admitted *pro hac vice*
        MERCHANT & GOULD
        Suite 4900, 133 Peachtree Street, N.E.
        Atlanta, Georgia 30303
        (404) 954-5100
        **Attorneys for Plaintiff Nisus Corporation**

15    Nisus' Opposition to Perma-Chink's Motion to
Compel Production of Interrogatory No. 9
Case 3:03-cv-00120-TAV-CCS   Document 175   Filed 09/02/04   Page 15 of 16   PageID #: 1509

## Certificate of Service

The undersigned hereby certifies that on September 2, 2004, a copy of the foregoing **"PLAINTIFF NISUS CORPORATION'S OPPOSITION TO PERMA-CHINK'S MOTIONTO COMPEL PRODUCTION OF INTERROGATORY NO. 9"** was filed electronically. Notice of this filing will by sent by operation of the Court's electronic filing system to all counsel indicated on the electronic filing receipt. All other counsel, if any, will be served by regular U.S. Mail. Counsel may access this filing through the Court's electronic filing system.

s/Bradley H. Hodge_____
Bradley H. Hodge (BPR #13829)
GENTRY, TIPTON & McLEMORE, P.C.
P.O. Box 1990
Knoxville, Tennessee 37901-1990
(865) 525-5300

*BHH/dbt: \Nisus Corporation 3784\2003 II Case\P Opposition to Motion to Compel Production of Interrogatory No 9 (2) (9-2-04).doc*