UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| NISUS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:03-CV-120 |
| | ) | (VARLAN/SHIRLEY) |
| PERMA-CHINK SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by the Orders [Docs. 262, 270] of the Honorable Thomas A. Varlan, United States District Judge, for disposition of Perma-Chink's Motion for Sanctions [Doc. 254] and Second Motion for Sanctions [Doc. 263]. The undersigned conducted a hearing on these motions on April 14, 2005. The undersigned was further referred [Doc. 314] Nisus' Motion for Disqualification Based on Perma-Chink's Counsel's Ethical Violations [Doc. 306]. The undersigned conducted a hearing on this motion on May 18, 2005. Additionally, the undersigned was referred [Docs. 303, 362] Perma-Chink's Motion in Limine to Exclude Nisus' Expert Witness Ernest Lipscomb, III, Esq. [Doc. 298] and Perma-Chink's Motion in Limine to Disqualify and Shield Nisus Attorney Allen Altera [Doc. 341]. The undersigned conducted a hearing on these motions on May 25, 2005.

### I. Motion for Sanctions

In its first motion for sanctions [Doc. 254], Perma-Chink alleges that Nisus' attorneys filed improper pleadings with this Court, which pleadings were generated through intentional misrepresentation and misuse of Patent and Trademark Office ("PTO") proceedings, in an effort to preclude summary judgment. Perma-Chink's second motion for sanctions [Doc. 263] deals with developments arising from Patent and Trademark Office Examiner Azpuru's deposition on March 2, 2005. Perma-Chink alleges that Azpuru's deposition testimony impeaches various representations made and testimony previously given by Nisus' counsel.

Upon review of the motions for sanctions, the Court concludes that the subject matter of these motions is inter-related with Perma-Chink's allegations of fraud and inequitable conduct. Because the subject matter of these allegations is so intertwined with the underlying substantive claims and defenses in this case, the Court is concerned that any determination of sanctionable behavior would effectively usurp the duties of the finder of fact at trial. As such, the Court finds that it would not be appropriate to rule upon the sanctions motions until after Perma-Chink's fraud and inequitable conduct claims are resolved by the trier of fact. For these reasons, the Court will **DEFER** ruling on Perma-Chink's Motion for Sanctions [Doc. 254] and Second Motion for Sanctions [Doc. 263] until the conclusion of the trial of this matter.

### II. Motion to Exclude Nisus' Expert Witness

#### A. Positions of the Parties

Perma-Chink moves the Court to exclude Ernest Lipscomb, III, Esq. from testifying at trial and to strike his expert report as submitted in support of Nisus' opposition to Perma-Chink's Second Motion for Sanctions. For grounds, Perma-Chink argues that: (1) Nisus' belated disclosure

of Mr. Lipscomb as an expert witness merits his exclusion; (2) Mr. Lipscomb's testimony is improper and inadmissible under the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and this Court's prior ruling in Nisus I; and (3) Mr. Lipscomb's proposed testimony contains numerous legal and factual errors, which warrant the exclusion of his testimony. [Doc 298].

Nisus opposes Perma-Chink's motion, arguing that exclusion of Mr. Lipscomb would be unwarranted. First, Nisus argues that its late disclosure of Mr. Lipscomb was justified and created no prejudice to Perma-Chink. Further, Nisus contends, Mr. Lipscomb's proposed testimony is proper in that (1) a large portion of his testimony is regarding Patent Office practices and procedures, which is a permissible subject of expert testimony and (2) it is appropriate for the Court to consider expert testimony on the issue of materiality when inequitable conduct has been alleged. Finally, Nisus argues that if Perma-Chink disagrees with any aspect of Mr. Lipscomb's testimony, the appropriate recourse for Perma-Chink is to cross-examine him, not to seek complete prohibition of his testimony. [Doc. 318].

In its reply brief [Doc. 328], Perma-Chink additionally argues that Nisus' reliance on Mr. Lipscomb is barred by the doctrines of issue preclusion and res judicata in that the Court has already decided the issue of the admissibility of patent lawyer opinions in Nisus I. Further, Perma-Chink contends that Mr. Lipscomb's opinions regarding PTO practice and procedure are unnecessary because the PTO has already provided its position, by way of a third-party statement of interest, on whether its procedures were followed and whether Nisus' practice before it was proper. Finally, Perma-Chink argues that Mr. Lipscomb is not qualified to render an opinion about the materiality of prior art references pertaining to the subject matter of wood preservatives.

**B. Factual Background**

Pursuant to the Amended Scheduling Order [Doc. 109], the parties' initial expert reports were due June 8, 2004[1], and rebuttal expert reports were due July 30, 2004. On September 17, 2004, the Court entered an Order [Doc. 197] granting Perma-Chink's motion to assert additional counterclaims and defenses, including allegations of inequitable conduct, fraud, and patent misuse. Perma-Chink's Amended Answer and Counterclaims was filed on September 30, 2004 [Doc. 202].

On March 9, 2005, Nisus served Perma-Chink with its pretrial witness disclosures, which, for the first time, lists Mr. Lipscomb as a trial witness. Thereafter, on March 11, 2005, Nisus served Perma-Chink with a supplemental Rule 26(a)(1) disclosure, which identifies Mr. Lipscomb as a witness with "expertise in patent law, patent prosecution practice, inequitable conduct and fraud, and sanctions charges." Mr. Lipscomb's report was provided to Perma-Chink on March 24, 2005.

> Nisus seeks to have Mr. Lipscomb testify regarding the following subject matters:
>
> (1) The nature and purpose of patents, how they are obtained and how they are to be interpreted;
>
> (2) Practice and procedures in the United States PTO, both in general and as they apply to this case;
>
> (3) The parts of a patent in general and of United States Patent No. 6,426,095 ("the '095 patent") specifically, *i.e.*, its specification, drawings, claims and the function or functions of each part;
>
> (4) The subject matter and prosecution history of the '095 patent;
>
> (5) The duty and candor that a reasonable patent attorney following standard practice would use to determine whether prior art was material to the PTO and thus whether the '095 patent is

---

[1] By agreement of the parties, this deadline was extended to June 14, 2004.

unenforceable due to inequitable conduct during its prosecution before the PTO; and

(6) The actions of Nisus' counsel in prosecuting patent application Serial No. 10/674,698, a later filed patent application, and the actions of Nisus' counsel before this Court.

**C.     Analysis**

  *1.     Timeliness of Disclosure*

Perma-Chink first argues that Nisus' belated disclosure of Mr. Lipscomb as an expert witness alone justifies his exclusion from this case. "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). While Nisus' disclosure was admittedly late, the failure of Nisus to meet the deadline for disclosure of expert witnesses was substantially justified in this case. Perma-Chink was permitted to amend its answer and assert claims of fraud and inequitable conduct – the purported subject matter of Mr. Lipscomb's expert opinions – after the deadline for the disclosure of expert witnesses had passed. While the Court questions Nisus' failure to seek an extension of this deadline and further why Nisus waited several months to supplement its disclosures, the Court cannot say that Nisus' actions were in bad faith. Moreover, the untimely disclosure is harmless in that Perma-Chink has had ample opportunity to depose Mr. Lipscomb prior to trial. Thus, the Court will not exclude Mr. Lipscomb's testimony on the grounds that he was not timely disclosed as an expert.

  *2.     PTO Practice and Procedure*

Mr. Lipscomb's report includes an overview of the practices and procedures of the PTO, including a discussion of the rules governing the practices and procedures of the PTO; a

5

general description of the parts of a patent application; a description of a general nature of how claims are read; general principles of claim construction and interpretation; prosecution history estoppel; conditions for patentability, including novelty, utility and obviousness; the requirements for and purposes of patent specifications and claims; and the general procedure of patent prosecution.

> Rule 702 of the Federal Rules of Evidence provides as follows:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion of otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Court, in its role as gatekeeper, must exclude expert testimony that is not reliable and not specialized and which invades the province of the jury. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999). This gatekeeping function applies to all expert testimony, including "non-scientific" testimony. Id.

Expert testimony regarding general procedures of the patent application process may be helpful to a jury and is therefore admissible. See Bausch & Lomb, Inc. v. Alcon Laboratories, Inc., 79 F. Supp. 2d 252, 256 (W.D.N.Y. 2000) ("Obviously PTO procedures are foreign to the average person, and it may be helpful to the jury to hear someone experienced in those procedures explain how they operate in terms that a layperson can understand."). However, "[t]estimony . . ., which attempts to tell the jury what result to reach and which runs the risk of interfering with a district court's jury instructions, hardly can be viewed as being helpful to the jury." Woods v. Lecureux, 110 F.3d 1215, 1221 (6th Cir. 1997). "Witnesses are not supposed to compete with the

court in instructing the jury." Clintec Nutrition Co. v. Baxa Corp., No. 94-C-7050, 1998 WL 560284, at *9 (N.D. Ill. Aug. 26, 1998). Thus, testimony offering nothing more than a legal conclusion or which seeks to instruct the jury as to the applicable law is improper and should be excluded. See Woods, 110 F.3d at 1220; Bausch & Lomb, 79 F. Supp. 2d at 258. Even if this matter is tried non-jury, any testimony which purports to instruct the judge, as the trier of fact, as to what result to reach or which otherwise offers mere legal conclusions, is no less improper.

Based upon these authorities, the Court finds that Mr. Lipscomb may provide general background about PTO practices and procedures; however, he may not offer legal conclusions as to whether such practices and procedures were followed in this case. The Court notes that Magistrate Judge Murrian addressed a similar motion in limine in Nisus I. In that motion, it was Nisus who sought to exclude the testimony of Talivaldis Cepuritis, an expert witness for Perma-Chink. Mr. Cepuritis proposed to testify on various matters, including PTO practice and procedure; the significance of various terms used in the patent at issue; the inventorship of the claimed subject matter; the scope of the teachings set forth in the specification; whether the claims of the patent encompassed the accused product; and whether the patent was enforceable. Magistrate Judge Murrian found that "Mr. Cepuritis' proposed testimony on all of the topics listed in his expert report, except arguably topic (f) [the practices and procedures of the PTO], would consist of interpretation of the patent claims and of providing legal conclusions, which are excludable under Rule 704." Nisus Corp. v. Perma-Chink Systems, Inc., No. 3:98-cv-433 (July 9, 2001).

Perma-Chink argues in its reply brief that this prior ruling of the Court effectively precludes Nisus from seeking to use any of Mr. Lipscomb's proposed testimony, with the exception of testimony regarding the practices and procedures of the PTO. To the extent that Perma-Chink

7

is arguing issue preclusion or res judicata, the Court disagrees. This prior ruling dealt with a different expert, a different patent, and different areas of expert testimony. Accordingly, the Court will not exclude Mr. Lipscomb's testimony on the grounds of issue preclusion or res judicata. However, to the extent that Perma-Chink is arguing that Judge Murrian's reasoning was correct, the Court agrees. Accordingly, Mr. Lipscomb's testimony regarding PTO practice and procedures will be limited to the extent noted in this Order.

### 3. *Materiality and Inequitable Conduct*

Perma-Chink objects to Mr. Lipscomb testifying regarding the issue of inequitable conduct and, in particular, the issue of materiality. Perma-Chink argues that Mr. Lipscomb's opinions on these issues are nothing more than legal conclusions and impermissible instructions to the jury on the law. Further, Perma-Chink contends that Mr. Lipscomb is unqualified to render an opinion regarding the materiality of prior art references pertaining to wood preservatives.

> Nisus counters as follows:
>
> Perma-Chink misrepresents that Mr. Lipscomb opines on all aspects of inequitable conduct. To the contrary, Mr. Lipscomb addresses *only* materiality, which is allowable expert testimony. Indeed, Mr. Lipscomb's report explicitly noted "I believe that it is improper for a patent law expert to give an opinion on intent." Mr. Lipscomb, accordingly, addresses only the materiality prong of inequitable conduct.

[Doc. 318] (citation omitted; emphasis in original).

It appears to the Court, however, that it is *Nisus* that is misrepresenting the nature of Mr. Lipscomb's opinions. Mr. Lipscomb states in his report that he intends to testify to, among other things, "whether the '095 patent is unenforceable due to inequitable conduct during its prosecution before the PTO." [Declaration and Report of Ernest B. Lipscomb, III ("Lipscomb

8

Report") at 3]. Further, Nisus' quote from Mr. Lipscomb's report is somewhat disingenuous, in that it is an incomplete statement of Mr. Lipscomb's opinion. The sentence quoted by Nisus is only a partial sentence set forth in a paragraph in which Mr. Lipscomb opines as follows:

> In my opinion, Mr. Altera did not commit inequitable conduct because he did not withhold any information *material to patentability* from the examiner. While I believe that it is improper for a patent law expert to give an opinion on intent, I am of the view that the materiality portion of the test for inequitable conduct has not been met by clear and convincing evidence. **The conduct of Mr. Altera, viewed in light of all the evidence, including evidence of good faith, does not appear to indicate sufficient culpability to require a finding of intent to deceive.** Mr. Altera attested that there was no intent to deceive the examiner and Perma-Chink has shown no motivation that Mr. Altera had any reason to hide the fact of the litigation.

[Lipscomb Report at 21] (bold emphasis added). Clearly, Mr. Lipscomb does more than address "*only* . . . the materiality prong of inequitable conduct." (Emphasis added). He gives an opinion as to Mr. Altera's conduct and his culpability, as well as a legal conclusion as to whether inequitable conduct occurred. The Court further finds that Mr. Lipscomb's proposed testimony – despite his statement of the impropriety of opining on intent – does exactly that, as he seeks to opine as to Mr. Altera's intent to deceive and good faith. Thus, his proposed testimony, to the extent he seeks to offer legal conclusions regarding inequitable conduct, is impermissible and shall be excluded. However, the Court does find that Mr. Lipscomb may be qualified to testify, at least to some extent, on the issue of materiality. Information is deemed "material" if it is "information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent." <u>Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.</u>, 326 F.3d 1226, 1234 (Fed. Cir. 2003) (quoting <u>GFI, Inc. v. Franklin Corp.</u>, 265 F.3d 1268, 1274 (Fed. Cir.

9

2001)). "Because the test for materiality involves whether a <u>reasonable examiner</u> would consider the withheld information material," a former patent examiner may be qualified to render an opinion on the issue of materiality. <u>See</u> <u>Oasis Industries, Inc. v. G.K.L. Corp.</u>, No. 92-C-4814, 1996 U.S. Dist. LEXIS 1057, at *33 (N.D. Ill. Feb. 2, 1996) (finding three former PTO examiners with experience in examining design patents were qualified to testify regarding a reasonable examiner's opinion on materiality).

In <u>Cameco Industries, Inc. v. Louisiana Cane Manufacturing, Inc.</u>, Civ. A. No. 92-3158, 1995 WL 468234 (E.D. La. July 27, 1995), the defendant argued that the plaintiff's expert was not qualified to give an expert opinion on the issues of validity, infringement, and a reasonable royalty because he had no technical expertise in the relevant art (sugar cane harvesters), nor did he have any accounting or financial experience. The plaintiff argued that the expert was qualified to render an opinion based upon his extensive experience as a patent attorney with mechanical inventions. The expert had a B.S. in mathematics, a M.S. in nuclear energy, and a law degree. The expert testified that he also had a background in mechanical engineering through his education and his law practice.

The <u>Cameco</u> Court found that the expert's education and experience were "sufficiently related to the subject matter of plaintiff's patent to allow him to speak with authority on the issues of validity and infringement." <u>Id.</u> at *4. Further, the Court found that the expert's experience as a patent attorney gave him "sufficient familiarity with royalty agreements to be able to render an opinion on what a reasonable royalty would have been under the circumstances of this case." <u>Id.</u> While finding the expert generally qualified to render expert opinions in the case, the

Court noted that the defendant was "free . . . to inquire into his qualifications on cross-examination to support its argument that his opinion should be accorded little, if any, weight." Id.

In the present case, Mr. Lipscomb is a practicing attorney, specializing in intellectual property law. He is a partner with the firm of Alston & Bird, LLP, located in Charlotte, North Carolina, and is the author of Lipscomb's Walker on Patents, an eleven-volume patent law treatise. Lipscomb received a B.S. degree in chemical engineering from the University of Mississippi in 1963, a J.D. degree from the University of Mississippi in 1965, and a Masters of Laws degree in Patent and Trade Regulation Law from George Washington University in 1968. Mr. Lipscomb served as a Patent Examiner in the PTO and as head patent counsel for two major United States corporations. Based upon Mr. Lipscomb's educational background in chemical engineering and his experience as a former PTO examiner, it appears to the Court that he is generally qualified to offer an opinion regarding and limited to the issue of the materiality of prior art references in general, the materiality of such prior art references and/or litigation disclosures, and other information related to the subject matter of the patent-in-suit. The fact that Mr. Lipscomb may not have experience specifically with wood preservatives (a fact that is neither proven nor disproven on the record before the Court), is an appropriate subject for cross-examination, but would go more to the weight to be given to his testimony, and does not render his opinion wholly inadmissible. "Once it is established that a witness is generally qualified to render an expert opinion, the degree to which the witness is qualified goes to the weight of that witness's testimony, not its admissibility." Id. at *3. Accordingly, the Court will not exclude Mr. Lipscomb's testimony regarding the issue of materiality, but limits his testimony to that issue. Specifically, Mr. Lipscomb may not testify about Mr. Altera's intent, his good faith or lack thereof, or other matters concerning

11

why Mr. Altera did what he did or whether such actions evidence an intent to deceive or otherwise constitute inequitable conduct.

### 4. *Sanctions*

Mr. Lipscomb offers opinions as to the propriety of counsel's conduct before this Court and the PTO and as to whether sanctions for such conduct are appropriate. The decision whether to issue sanctions is a matter within the sound discretion of this Court, see <u>First Bank of Marietta v. Hartford Underwriters Ins. Co.</u>, 307 F.3d 501 (6th Cir. 2002), and the Court does not find Mr. Lipscomb's proposed expert testimony either necessary or helpful in determining whether sanctions are appropriate in this matter. Accordingly, to the extent that Perma-Chink's motion [Doc. 298] is a request that Mr. Lipscomb's Declaration and Report submitted in support of Nisus' Opposition to Perma-Chink's Motions for Sanctions be stricken, the motion [Doc. 298] is **GRANTED**.

### 5. *Legal and Factual Inaccuracies*

Perma-Chink argues that Mr. Lipscomb's report contains numerous legal and factual inaccuracies, which independently warrant his exclusion as a witness. While such arguments are proper subjects for cross-examination, the Court does not find that any of these alleged inaccuracies warrant the exclusion of Mr. Lipscomb's testimony as a whole, but rather go to the weight to be given to his testimony.

For these reasons, and to the extent set forth in this opinion, Perma-Chink's Motion in Limine to Exclude Nisus' Expert Witness Ernest Lipscomb, III, Esq. [Doc. 298] is **GRANTED IN PART** and **DENIED IN PART**.

### III. Motion for Disqualification

Nisus seeks the disqualification of attorney Bill Toone and his firm, Dorsey & Whitney, for what Nisus terms "an ongoing pattern of misconduct that has irreversibly tainted these proceedings." Specifically, Nisus alleges that: (1) Mr. Toone solicited and obtained privileged Nisus information from former Nisus employees Vincent Palmere and Deborah Caylor; (2) Mr. Toone violated the Court's Protective Order by disclosing documents that had been filed under seal to the PTO; (3) Mr. Toone filed false statements with the Court; and (4) Mr. Toone failed to procure and provide to Nisus the Guardian EPA documents as ordered by this Court. [Doc. 306].

After carefully considering the multitude of pleadings filed by the parties on this issue, as well as the arguments of counsel at the hearing on May 18, 2005, the Court finds Nisus' motion [Doc. 306], to the extent that it seeks disqualification of counsel, is not well-taken, and therefore, Nisus' Motion for Disqualification Based on Perma-Chink's Counsel's Ethical Violations [Doc. 306] shall be **DENIED**. However, this Court will consider the motion [Doc. 306] as one for sanctions. Therefore, the Court will **DEFER** ruling on the matter until the conclusion of the trial and will take it up for consideration along with, and at the time of, the other motions for sanctions [Docs. 254, 263].

### IV. Motion to Disqualify and Shield Attorney Altera

Perma-Chink moves to exclude attorney Allen Altera from further participation in this case as an advocate for Nisus and for an Order directing Mr. Altera's firm, Merchant & Gould, to shield Mr. Altera from further communications and substantive participation on behalf of Nisus. [Doc. 341]. In its motion, Perma-Chink argues that Mr. Altera's presence at trial as anything other than a mere fact witness would be prejudicial to Perma-Chink in front of a jury. Subsequent to the

13

filing of this motion, Nisus withdrew its jury demand, and the case will now proceed to a bench trial. Perma-Chink concedes that the risk of prejudice has been largely eliminated by Nisus' withdrawal of its jury demand. Nevertheless, Perma-Chink continues to argue for Mr. Altera's disqualification and shielding on ethical grounds.

Nisus opposes Perma-Chink's motion, arguing that there is no basis for Mr. Altera's disqualification, and further, that it is Nisus that would be prejudiced by the disqualification of Mr. Altera at this late date. [Doc. 368].

The Eastern District of Tennessee has adopted the Tennessee Rules of Professional Conduct as the rules of professional conduct of this Court. See E.D. TN. LR 83.6. Rule 3.7 of the Tennessee Rules of Professional Conduct state that, with certain numerated exceptions (none of which are applicable here), "[a] lawyer shall not act as an advocate at trial in which the lawyer is likely to be a necessary witness." Tenn. Sup. Ct. Rule 8, Canon 3.7(a). The purpose of Rule 3.7 is to prevent

> 1) the possibility that, in addressing the jury, the lawyer will appear to vouch for his own credibility; 2) the unfair and difficult situation which arises when an opposing counsel has to cross-examine a lawyer-adversary and seek to impeach his credibility; and 3) the appearance of impropriety created, *i.e.*, the likely implication that the testifying lawyer may well be distorting the truth for the sake of his client.

Culebras Enterprises Corp. v. Rivera-Rios, 846 F.2d 94, 100 (1st Cir. 1988) (construing Rule 3.7 of the Model Rules of Professional Conduct). These "concerns are absent or, at least, greatly reduced, when the lawyer-witness does not act as trial counsel, even if he performs behind-the-scenes work for the client in the same case." Id. Such concerns are also greatly alleviated when the

case is to be tried before a judge and not a jury.  See Crowe v. Smith, 151 F.3d 217, 234 (5th Cir. 1998).

The Court finds that Rule 3.7 requires Mr. Altera's disqualification as an advocate at trial for his client.  Accordingly, Mr. Altera will not be permitted to question witnesses, argue to the Court, or otherwise speak as an attorney during the trial proceedings.  However, the Court will not disqualify Mr. Altera from continuing to serve as counsel for Nisus or otherwise require his firm to shield him from this matter.  While Rule 3.7 disqualifies a lawyer-witness from acting as trial counsel, it does not necessarily require his complete disqualification from the case.  See Dalrymple v. National Bank and Trust Co., 615 F. Supp. 979, 990 (W.D. Mich. 1985).

For the foregoing reasons, Perma-Chink's Motion in Limine to Disqualify and Shield Nisus Attorney Allen Altera [Doc. 341] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

ENTER:

   s/ C. Clifford Shirley, Jr.   
United States Magistrate Judge

Case 3:03-cv-00120   Document 377   Filed 05/27/05   Page 15 of 15   PageID #: 2316