UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| NISUS CORPORATION, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 3:03-CV-120 |
| | ) | | (VARLAN/SHIRLEY) |
| PERMA-CHINK SYSTEMS, INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM & ORDER**

This patent infringement action is before the Court for consideration of Nisus's motion for reconsideration and amendment [Doc. 426] pursuant to Fed. R. Civ. P. 52(b) and 59(e). Specifically, Nisus seeks reconsideration and amendment of the Court's findings of fact and conclusions of law [Doc. 416] and judgment [Doc. 417] to "articulate the level of materiality and/or the level of intent for each of the categories of withheld information and . . . to balance the two in connection with [the Court's] decision that inequitable conduct occurred." Doc. 426 at 3. Perma-Chink responds in opposition to the motion, arguing that "Nisus merely repeats the same arguments, and presents the same excuses, that it did at trial." Doc. 435 at 3. Nisus replies that it seeks reconsideration and amendment to correct "the clear errors of law and manifest injustice" discussed in its motion. Doc. 444 at 1.

The Court has reviewed the briefs and legal authorities, and for the reasons discussed herein, it will deny Nisus's motion to reconsider and amend.

**I.     Relevant Facts**

United States Patent number 6,426,095 B2 ("'095 patent"), which is the patent-in-suit of the instant action, was issued on July 30, 2002, from U.S. Patent Application number 09/888,875 ("'875 patent application"), but it claims priority to U.S. Patent Application number 07/528,838 ("'838 patent application").

In an earlier litigation between these parties, known as Nisus I, patents numbered 5,104,664 ("'664 patent") and 5,645,828 ("'828 patent") were before the Court. *See Nisus Corp. v. Perma-Chink Sys., Inc.*, No. 3:98-CV-433 (E.D. Tenn.). Nisus I was pending while Nisus, represented first by Michael Teschner and later by Allan Altera, was prosecuting the '875 patent application before the U.S. Patent and Trademark Office ("PTO"). During Nisus I, the parties engaged in significant discovery regarding the '664 and '828 patents, as well as the '838 patent application and other matters.

In the instant action, known as Nisus II, following a bench trial, the Court entered findings of fact and conclusions of law regarding the enforceability of the '095 patent.[1] *See* Doc. 416. In short, the Court concluded that Messrs. Teschner and Altera had each engaged in acts that constituted inequitable conduct when they failed to disclose highly material information with an intent to deceive during the prosecution of the '875 patent application on behalf of Nisus. *See id.* at 43-44. Messrs. Teschner and Altera, each acting on behalf of

---

[1] Nisus and Perma-Chink advanced a number of claims and counterclaims related to the '095 patent that the Court addressed in its findings of fact and conclusions of law, but the enforceability of the '095 patent was the dispositive issue; therefore, that issue commanded most of the Court's attention. *See* Doc. 416 at 4 n.2.

Nisus, each failed to disclose, with the intent to deceive, Nisus I and Nisus I-related information that was highly material to the patentability of the eventual '095 patent. *See id.* at 44. Consequently, the Court concluded that all claims of the '095 patent are unenforceable. *Id.*

Consideration of the instant motion, however, requires a more specific review of the Court's findings of fact and conclusions of law, especially with regard to materiality, intent to deceive, and the weighing of inequitable conduct. *See* Doc. 426 at 3. Therefore, the Court will detail its findings of fact and conclusions of law as it analyzed those issues.

The Court began its analysis by considering whether Nisus had failed to disclose or had misrepresented information to the PTO. *See* Doc. 416 at 34-36. In a section of its findings of fact entitled "G. Nisus's Failures to Disclose," the Court made factual findings that discussed in some detail the information that Nisus failed to disclose to the PTO. *See id.* at 22-32. The Court also identified which of Nisus's representatives before the PTO was responsible for the specific failures to disclose when it sub-divided the failures into two sub-sections, entitled "i. Michael Teschner," "ii. Allan Altera."[2] *See id.* Based on those findings of fact, in which the Court separately considered the conduct of each attorney, the Court drew the legal conclusion that Messrs. Teschner and Altera each had each failed to disclose

---

[2] The Court included a third subsection, entitled "iii. Redacted Documents," which specifically addressed Mr. Altera's responsibility for redacted Nisus I-related documents that he submitted to the PTO on behalf of Nisus. *See* Doc. 416 at 31-32.

3

information to the PTO at times when they bore the duty of disclosure on behalf of Nisus. *See id*. at 34-36.

Building on earlier factual findings and the legal conclusion that information had not been disclosed, the Court explained why that information was highly material to the patentability of the eventual '095 patent. *See* Doc. 416 at 37-40. First, the Court explained the legal meaning and significance of materiality, discussed how related litigation is *per se* material, and noted that the PTO especially requires the disclosure of allegations of prior public use or sales that may have been made in a related litigation. *See id.* at 37-38. Next, the Court explained that Nisus I was related litigation and concluded that neither Mr. Teschner or Mr. Altera disclosed it to the PTO. *See id.* at 38-39. Then, the Court discussed the Nisus I-related information that neither Mr. Teschner or Mr. Altera disclosed to the PTO, and stated:

> Although not every Nisus I-related document was material to the '075 patent application, Messrs. Teschner and Altera, acting on behalf of Nisus, failed to disclose documents that the PTO has specifically required applicants to disclose – namely, evidence of prior public use or sale and evidence inconsistent with Nisus's assertions regarding patentability. *See* 37 C.F.R. § 1.56(b); MPEP § 2001.06(c). The fact that the PTO specifically requires applicants to disclose such information indicates its very high degree of materiality to the determination of patentability.

*Id*. at 39. Again building on previous factual findings and legal conclusions, the Court explained that Mr. Teschner had disclosed absolutely nothing regarding prior public use or sale, and that Mr. Altera had only disclosed some information about prior public use and sales after the documents were redacted to obscure their association to Nisus I. *Id*.

4

Furthermore, the Court explained that Mr. Altera also failed to disclose Nisus I-related information that contradicted his assertions before the PTO, which the Court had already explained was also highly material. *Id*. at 39-40.

In reaching its conclusion regarding materiality, the Court specifically considered and rejected Mr. Altera's assertions that he was not required to disclose the Nisus I-related information because it consisted of "uncorroborated legal interpretations, rather than corroborated facts." *Id*. at 40. Building on its previous factual findings and legal conclusions, the Court rejected Mr. Altera's claim that what he failed to disclose was legal interpretation by concluding that he failed to disclose "plainly factual information." *Id*. The Court also rejected Mr. Altera's contention that only corroborated facts are subject to the duty of disclosure by concluding that the PTO does not make such a distinction. *Id*.

Moving on to intent to deceive, the Court was equally clear in reaching its conclusion that Nisus, as represented before the PTO by Messrs. Teschner and Altera, possessed an intent to deceive when it failed to disclose the highly material information. *See* Doc. 416 at 42. The Court began by discussing the analysis of intent, explaining that the degree of intent necessary varies inversely with the degree of materiality of the withheld information. *Id*. at 41 (citing *Li Second Family Limited P'ship v. Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000) (citing *N.V. Akzo v. E.I. DuPont de Nemours*, 810 F.2d 1148, 1153 (Fed. Cir. 1987)); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997))).

5

Building on previous factual findings and legal conclusions, the Court then specifically, and individually, considered and rejected the explanations of intent offered by Messrs. Teschner and Altera. *See* Doc. 416 at 42. The Court had already concluded that Mr. Teschner's explanations, *see id.* at 22-24, were not credible because they were contradicted by his conduct. *See id.* at 42. With respect to Mr. Altera, the Court returned to his failures to disclose Nisus I and his responsibility for the redaction of the disclosed documents. *See id.* The Court then stated in no uncertain terms the basis for its conclusion that there was the intent to deceive:

> Given the totality of the circumstances, including the highly material nature of the information Nisus[3] failed to disclose, the lack of credible explanations for the failures, the acknowledgment that the failures were intentional, and the ongoing pattern of failures, the Court can only conclude that Nisus possessed an intent to deceive the PTO when it failed to disclose Nisus I and Nisus-I related [sic] information, including evidence of Nisus's sales prior to the on-sale bar date and contradictions of Nisus's assertions to the PTO.

---

[3] The Court referred to Nisus, rather than Messrs. Teschner and Altera, because it was referring to the patent applicant, which is the party that bears the duty of disclosure. As the Court's earlier factual findings and legal conclusions made clear, Nisus was represented before the PTO at different times by Messrs. Teschner and Altera, who, during their separate representations, bore the duty of disclosure on Nisus's behalf.

As is clear in its findings of fact and conclusions of law, the Court does not read 37 C.F.R. § 1.56 and the other legal authorities cited in its findings of fact and conclusions of law as imposing a separate, independent duty of disclosure on each one of an applicant's representatives before the PTO. Instead, the duty of disclosure is a single, continuing duty on the applicant, whose representatives before the PTO are charged with carrying it out on the applicant's behalf during their representation. *See* Doc. 416 at 34 ("For a court to conclude inequitable conduct occurred in a particular case, clear and convincing evidence must establish that 'the alleged nondisclosure or misrepresentation occurred, that the nondisclosure or misrepresentation was material, and that *the patent applicant* acted with the intent to deceive the PTO.'"(citations omitted) (emphasis added)).

6

*Id.* at 42 (citing *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1330 (Fed. Cir. 1998); *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elect. Co., Ltd.*, 4 F. Supp. 2d 477, 498 (E.D. Va. 1998), *aff'd*, 204 F.3d 1368 (Fed. Cir. 2000)).

Finally, having concluded that threshold levels of materiality and intent had been met, the Court turned to whether the conduct it had discussed constituted inequitable conduct. *See* Doc. 416 at 43-44. The Court reviewed the relevant legal authorities requiring the Court to "'weigh materiality and intent to determine whether the equities warrant a conclusion that inequitable conduct occurred.'" *Id.* (quoting *Li Second*, 213 F.3d at 1378 (citation omitted)) (other citation omitted). Next, the Court weighed materiality and intent in light of its previous factual findings and legal conclusions. *See id.* at 43-44. Ultimately, the Court made clear its basis for concluding that inequitable conduct had occurred:

> Accordingly, in light of all the findings of fact and conclusions of law drawn herein, the Court finds that the equities warrant the conclusion that Nisus[4] engaged in inequitable conduct. As demonstrated by a pattern of intentional failures to disclose highly material information to the PTO over a long period of time, clear and convincing evidence establishes that Nisus possessed an intent to deceive the PTO that resulted in a breach of its duty of candor, good faith, and honesty to the PTO. *Li Second*, 213 F.3d at 1378 (citing *Molins PLC*, 48 F.3d at 1178; *Glaxo, Inc.*, 52 F.3d at 1048). Accordingly, all claims in Nisus's '095 patent are unenforceable.

*Id.* at 44.

---

[4] Again, the Court referred to Nisus, rather than Messrs. Teschner and Altera, because it was referring to the patent applicant, which is the party that bears the duty of disclosure to the PTO. *See supra*, note 3. It should be especially clear that the Court was not suggesting the Nisus Corporation, as an entity, or Messrs. Teschner and Altera jointly, carried out the specific acts that constituted inequitable conduct since the Court went into such detail in explaining the specific acts – and *who* committed each act – that led the Court to its ultimate conclusion. *See* Doc. 416 at 6-32.

7

Having reviewed its findings of fact and conclusions of law regarding materiality, intent to deceive, and inequitable conduct, the Court now turns to consideration of the instant motion.

## II.   Discussion

"Motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). Rule 59(e) was "adopted to 'mak[e] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982) (quoting *Notes of Advisory Comm. on 1946 Amendment to Rules*, 5 F.R.D. 433, 476 (1946)). It provides a means for the Court to reconsider "matters properly encompassed in a decision on the merits," which includes those issues previously before the Court, but does not permit an expansion of the judgment to encompass issues that were not previously raised by the parties. *See id.* at 451. *See also Matthews v. Beloit Corp.*, 807 F. Supp. 1289, 1291 (W.D. Mich. 1992) (citing *Ray E. Friedman & Co. v. Jenkins*, 824 F.2d 657 (8th Cir. 1987)). On the other hand, neither Rule 52(b) or Rule 59(e) permit the parties to merely "re-argue a case," *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (discussing Rule 59(e)), or "rehash old arguments already considered and rejected by the trial court," *National Metal Finishing Co., Inc. v. Barclay'sAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990) (discussing Rule 52(b)). *See also Ullmann v. Olwine,*

*Connelly, Chase, O'Donnell & Weyher*, 951 F.2d 350 (6th Cir. 1991) (unpublished op.) (explaining abuse of discretion standard applied to appeals of Rule 52(b) orders and noting *National Metal Finishing Co.*).

In the instant motion, Nisus argues that reconsideration and amendment are required to correct a clear error of law and to prevent a manifest injustice. *See* Doc. 444. The issues that are the subject of the motion are the Court's consideration of materiality and intent to deceive with respect to Mr. Altera's failure to disclose certain information to the PTO, and the Court's weighing of those issues in concluding that inequitable conduct occurred.[5] *See* Doc. 426 at 4-10. Those are "matters properly encompassed in" the Court's decision on the merits. *White*, 455 U.S. at 451. But they are also "old arguments already considered and rejected" by the Court. *National Metal Finishing Co., Inc.*, 899 F.2d at 123.

Nisus argues that it is presenting "clear legal errors in the Court's decision" and argues that because they are "legal errors," they are not "old arguments as Perma-Chink contends." Doc. 444 at 4. While in form Nisus casts its arguments as corrections to alleged legal errors, in substance Nisus repeats arguments it has already presented to the Court. It asks the Court to re-evaluate materiality, intent to deceive, and inequitable conduct with respect to Mr. Altera's failures to disclose highly material information to the PTO. *See* Doc.

---

[5] In its motion, Nisus explains that its motion concerns only Mr. Altera's conduct since Mr. Teschner has retained his own counsel and filed his own motion to amend pursuant to Fed. R. Civ. P. 52(b) and 59(e). *See* Doc. 426 at 2 n.2. Mr. Teschner, who is not a party to this action, has filed a motion to intervene [Doc. 420] as well as a motion to amend [Doc. 425]. Those motions are not considered herein.

9

426 at 3 ("Nisus respectfully submits that this Court failed to articulate the level of materiality and/or the level of intent for each of the categories of withheld information and failed to balance the two in connection with its decision that inequitable conduct occurred."). As the Court's findings of fact and conclusions of law made clear, the Court has already evaluated materiality, intent to deceive, and inequitable conduct. *See* Doc. 416 at 34-44.

More specifically, Nisus suggests that the Court committed legal error by "fail[ing] to articulate the level of materiality and/or the level of intent *for each of the categories of withheld information . . . .*" Doc. 426 at 3 (emphasis added). Nisus previously suggested that the Court was required to determine the materiality and intent in this fashion when it filed its proposed findings of fact and conclusions of law. *See* Doc. 406 at 44-84. The Court, in entering its findings of fact and conclusions of law as it did, rejected Nisus's analytical framework whereby each individual failure to disclose must be analyzed for materiality and intent independent of all other failures to disclose. *See* Doc. 416 at 34-44 (identifying specific information that was undisclosed, evaluating materiality of that undisclosed information and corresponding intent to deceive, and balancing materiality and intent to determine whether equities warrant inequitable conduct conclusion). Nisus has never presented any authority for its proposition that the Court must wear blinders and analyze each individual failure to disclose – without reference to other failures to disclose – to determine whether each instance of a failure to disclose alone constitutes inequitable conduct. Similarly, in the instant motion, Nisus again fails to present authority demonstrating that the

10

Court's analysis of the "pattern of intentional failures to disclose highly material information to the PTO," *id.* at 44, was clearly erroneous.

For the reasons already discussed, the Court is satisfied that it properly addressed materiality, intent to deceive, and weighed whether Mr. Altera's conduct on behalf of Nisus constituted inequitable conduct.

### III. Conclusion

Accordingly, the Court hereby **DENIES** Nisus's motion for reconsideration and amendment pursuant to Fed. R.Civ. P. 52(b) and 59(e) [Doc. 426].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE
