UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| NISUS CORPORATION, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 3:03-CV-120 |
| | ) | | (VARLAN/SHIRLEY) |
| PERMA-CHINK SYSTEMS, INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

## **MEMORANDUM & ORDER**

This patent infringement action is before the Court for consideration of a motion to intervene [Doc. 420] filed by Michael Teschner, an attorney who formerly represented Nisus and who testified on behalf of Nisus during trial of this action. Mr. Teschner seeks to intervene as of right, pursuant to Fed. R. Civ. P. 24(a), or alternatively, by permission of the Court, pursuant to Fed. R. Civ. P. 24(b), and he seeks intervention "to personally defend his professional reputation and to address the grave and reversible errors in the Court's [j]udgment regarding his actions." Doc. 420 at 4. Perma-Chink responds in opposition to the motion contending that Mr. Teschner fails to satisfy any of the factors for intervention under either Rule 24(a) or 24(b). Nisus has failed to respond to or otherwise address the instant motion, and the time for doing so has passed. *See* E.D.TN. LR 7.1(a), 7.2.

The Court has reviewed the briefs and legal authorities, and for the reasons discussed herein, it will deny Mr. Teschner's motion to intervene.

**I.     Relevant Facts**

This action has been ongoing for some time, and it has a lengthy procedural history and factual background. While the Court will not endeavor to retrace every aspect of this case, in light of the issues raised by the instant motion, it will go into some detail about the relevant facts and procedural history.

United States Patent number 6,426,095 B2 ("'095 patent"), which is the patent-in-suit of the instant action, was issued on July 30, 2002, from U.S. Patent Application number 09/888,875 ("'875 patent application"), but it claims priority to U.S. Patent Application number 07/528,838 ("'838 patent application").

In an earlier litigation between these parties, known as Nisus I, patents numbered 5,104,664 ("'664 patent") and 5,645,828 ("'828 patent") were before the Court. *See Nisus Corp. v. Perma-Chink Sys., Inc.*, No. 3:98-CV-433 (E.D. Tenn.). Nisus I was pending while Nisus, represented first by Michael Teschner and later by Allan Altera, was prosecuting the '875 patent application before the U.S. Patent and Trademark Office ("PTO"). During Nisus I, the parties engaged in significant discovery regarding the '664 and '828 patents, as well as the '838 patent application and other matters. The information produced during discovery in Nisus I, as well as the conduct of Messrs. Teschner and Altera in representing Nisus before the PTO, would form the basis for Perma-Chink's inequitable conduct claims in the instant action.

This action, known as Nisus II, was filed February 19, 2003. *See* Doc. 1. On April 2, 2004, during discovery in Nisus II, Nisus's attorneys, representing Mr. Teschner, filed a

motion to quash a document request and deposition subpoena Perma-Chink had issued to Mr. Teschner. *See* Docs. 93; 436-2 at 4. The Magistrate Judge denied the motion to quash, stating, "Accordingly, the Court finds that Teschner's and Altera's knowledge of facts and their mental impressions during the prosecution of the '095 patent are relevant in this matter due to the inequitable conduct claims raised by Perma-Chink, and that their depositions should proceed." Doc. 198 at 6. Mr. Teschner was eventually deposed by Perma-Chink. *See* Doc. 230 (minute entry for January 1, 2005, stating "Depositions are to be taken for Mr. Teschner this Friday and for Mr. Altera on January 21, 2005."). *See also* Doc. 372 at 2 (designating portions of Mr. Teschner's deposition for trial).

Perma-Chink first asserted a counterclaim that the '095 patent-in-suit is unenforceable based on inequitable conduct by "the applicant and/or its attorneys" in its amended answer, which was filed September 30, 2004. *See* Doc. 202 at 6. In that amended answer, Perma-Chink specifically identified Mr. Teschner in connection with its inequitable conduct allegations. *See id.* at 7-8, 14, 20.

On December 16, 2004, Perma-Chink filed a motion for summary judgment based on inequitable conduct. *See* Doc. 228. Nisus filed two responses, the first of which was withdrawn, in which it denied Perma-Chink's allegations, stating, "No material information was withheld from the Patent Examiner during the patent prosecution, nor has Nisus or its counsel acted with deceptive intent." Doc. 304 at 1. *See also* Doc. 232 (withdrawn by order). Perma-Chink, in replying to Nisus, specifically reviewed Mr. Teschner's deposition testimony, and asserted:

> Michael Teschner was Nisus' [sic] former patent prosecution counsel and the individual responsible for filing the application that issued as the '095 patent. Mr. Teschner was also Nisus' [sic] original litigation counsel in the Nisus-I lawsuit. Consistent with Perma-Chink's allegations of inequitable conduct, Mr. Teschner actually admitted at his deposition that Nisus abandoned the patent application immediately before the '095 was filed for the very purpose of withholding disclosure of the litigation, and the material information arising therefrom, from the Examiner.

Doc. 264 at 8-9. On May 11, 2005, the Court denied Perma-Chink's motion for summary judgment because Nisus had raised genuine issues of disputed material facts with respect to materiality and intent to deceive. *See* Docs. 332, 333.

On March 9, 2005, Nisus and Perma-Chink filed initial witness lists, and Mr. Teschner appeared on both lists. *See* Docs. 268, 269. Later, both parties also designated portions of Mr. Teschner's deposition to be presented at trial. *See* Docs. 365, 371, 372.

On May 20, 2005, Perma-Chink submitted a trial brief in which it asserted, "Nisus was represented by two attorneys during the course of prosecuting the '095 patent, Mr. Teschner and Mr. Altera. Nisus is bound by the actions of each individual on its behalf before the PTO." Doc. 366 at 5.

On June 2, 2005, the Court entered a final agreed pretrial order. Doc. 388. That document contains repeated references to alleged conduct by "Nisus and its lawyers" during various time periods, and states as issues, "Whether Nisus and its lawyers committed inequitable conduct on the [PTO] . . . ." *Id*. at 4, 5, 7.

Between June 1 and June 13, 2005, the Court conducted a seven-day bench trial. *See* Docs. 387, 390, 392, 393, 394, 396, 397. Mr. Teschner gave live testimony on June 3, 2005.

4

*See* Doc. 400. During cross examination, Mr. Teschner was specifically challenged about his conduct on behalf of Nisus before the PTO. *See id.* at 157-181. Following trial, the parties submitted proposed findings of fact and conclusions of law. *See* Docs. 406, 409. Perma-Chink again alleged that Mr. Teschner's conduct on behalf of Nisus before the PTO constituted inequitable conduct. *See* Doc. 409 at 32-33, 41-50.

On March 16, 2006, the Court entered findings of fact and conclusions of law regarding the enforceability of the '095 patent. *See* Doc. 416. In short, the Court concluded that Messrs. Teschner and Altera had each engaged in acts that constituted inequitable conduct when they failed to disclose highly material information with an intent to deceive during the prosecution of the '875 patent application on behalf of Nisus. *See id.* at 43-44. The Court found that Messrs. Teschner and Altera, each acting on behalf of Nisus, each failed to disclose, with an intent to deceive, Nisus I and Nisus I-related information that was highly material to the patentability of the eventual '095 patent. *See id.* at 44. Consequently, the Court concluded that all claims of the '095 patent are unenforceable. *Id*.

The Court began its analysis by considering whether Nisus had failed to disclose or had misrepresented information to the PTO. *See* Doc. 416 at 34-36. In a section of its findings of fact entitled "G. Nisus's Failures to Disclose," the Court made factual findings that discussed in some detail the information that Nisus failed to disclose to the PTO. *See id.* at 22-32. The Court also identified which of Nisus's representatives before the PTO was responsible for the specific failures to disclose when it sub-divided the failures into two sub-

5

sections, entitled "i. Michael Teschner," "ii. Allan Altera."[1] *See id.* at 22, 24. Based on those findings of fact, in which the Court separately considered the conduct of each attorney, the Court drew the legal conclusion that Messrs. Teschner and Altera each had failed to disclose information to the PTO at times when they bore the duty of disclosure on behalf of Nisus. *See id.* at 34-36.

Building on its earlier factual findings and legal conclusion that information had not been disclosed, the Court explained why that information was highly material to the patentability of the eventual '095 patent. *See* Doc. 416 at 37-40. First, the Court explained the legal meaning and significance of materiality, discussed how related litigation is *per se* material, and noted that the PTO especially requires the disclosure of allegations of prior public use or sales that may have been made in a related litigation. *See id.* at 37-38. Next, the Court explained that Nisus I was related litigation and concluded that neither Mr. Teschner or Mr. Altera disclosed it to the PTO. *See id.* at 38-39. Then, the Court discussed the Nisus I-related information that neither Mr. Teschner or Mr. Altera disclosed to the PTO:

> Although not every Nisus I-related document was material to the '075 patent application, Messrs. Teschner and Altera, acting on behalf of Nisus, failed to disclose documents that the PTO has specifically required applicants to disclose – namely, evidence of prior public use or sale and evidence inconsistent with Nisus's assertions regarding patentability. *See* 37 C.F.R. § 1.56(b); MPEP § 2001.06(c). The fact that the PTO specifically requires applicants to disclose such information indicates its very high degree of materiality to the determination of patentability.

---

[1] The Court included a third subsection, entitled "iii. Redacted Documents," which specifically addressed Mr. Altera's responsibility for redacted Nisus I-related documents that he submitted to the PTO on behalf of Nisus. *See* Doc. 416 at 31-32.

6

*Id.* at 39. Again building on its previous factual findings and legal conclusions, the Court explained that Mr. Teschner had disclosed absolutely nothing regarding prior public use or sale, and that Mr. Altera had only disclosed some information about prior public use and sales after the documents were redacted to conceal their association to Nisus I. *Id.* Furthermore, the Court explained that Mr. Altera also failed to disclose Nisus I-related information that contradicted his assertions before the PTO, information which the Court had already explained was also highly material. *Id.* at 39-40.

In reaching its conclusion regarding materiality, the Court also specifically considered and rejected Mr. Altera's assertions that he was not required to disclose the Nisus I-related information because it consisted of "uncorroborated legal interpretations, rather than corroborated facts." *Id.* at 40. Building on its previous factual findings and legal conclusions, the Court rejected Mr. Altera's claim that what he failed to disclose was legal interpretation by concluding that he failed to disclose "plainly factual information." *Id.* The Court also rejected Mr. Altera's contention that only corroborated facts are subject to the duty of disclosure by concluding that the PTO does not make such a distinction. *Id.*

Moving on to intent to deceive, the Court was equally clear in reaching its conclusion that Nisus, as represented before the PTO at different times by Messrs. Teschner and Altera, possessed an intent to deceive when it failed to disclose the highly material information. *See* Doc. 416 at 42. The Court began by discussing the analysis of intent, explaining that the degree of intent necessary varies inversely with the degree of materiality of the withheld information. *Id.* at 41 (citing *Li Second Family Limited P'ship v. Toshiba Corp.*, 231 F.3d

7

1373, 1378 (Fed. Cir. 2000) (citing *N.V. Akzo v. E.I. DuPont de Nemours*, 810 F.2d 1148, 1153 (Fed. Cir. 1987)); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997)).

Building on its previous factual findings and legal conclusions, the Court then specifically, and separately, considered and rejected the explanations of intent offered by Messrs. Teschner and Altera. *See id.* at 42. The Court had already concluded that Mr. Teschner's explanations, which boiled down to his view that he was not required to disclose anything, *see id.* at 22-24, were not credible. *See id.* at 42. With respect to Mr. Altera, the Court returned to his failures to disclose Nisus I and his responsibility for the redaction of the disclosed documents. *See id.* The Court then stated in no uncertain terms the basis for its conclusion that there was intent to deceive:

> Given the totality of the circumstances, including the highly material nature of the information Nisus[2] failed to disclose, the lack of credible explanations for the failures, the acknowledgment that the failures were intentional, and the

---

[2] The Court referred to Nisus, rather than Messrs. Teschner and Altera, because it was referring to the patent applicant, which is the party that bears the duty of disclosure. As the Court's earlier factual findings and legal conclusions made clear, Nisus was represented before the PTO at different times by Messrs. Teschner and Altera, who, during their separate representations, each bore the duty of disclosure on Nisus's behalf.

As is clear in its findings of fact and conclusions of law, the Court does not read 37 C.F.R. § 1.56 and the other legal authorities cited in its findings of fact and conclusions of law as imposing a separate, independent duty of disclosure on each one of an applicant's representatives before the PTO. Instead, the duty of disclosure is a single, continuing duty on the applicant, whose representatives before the PTO are charged with carrying it out on the applicant's behalf during their representation. *See* Doc. 416 at 34 ("For a court to conclude inequitable conduct occurred in a particular case, clear and convincing evidence must establish that 'the alleged nondisclosure or misrepresentation occurred, that the nondisclosure or misrepresentation was material, and that *the patent applicant* acted with the intent to deceive the PTO.'"(citations omitted) (emphasis added)).

8

ongoing pattern of failures, the Court can only conclude that Nisus possessed an intent to deceive the PTO when it failed to disclose Nisus I and Nisus-I related [sic] information, including evidence of Nisus's sales prior to the on-sale bar date and contradictions of Nisus's assertions to the PTO.

*Id.* at 42 (citing *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1330 (Fed. Cir. 1998); *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elect. Co., Ltd.*, 4 F. Supp. 2d 477, 498 (E.D. Va. 1998), *aff'd*, 204 F.3d 1368 (Fed. Cir. 2000)).

Finally, having concluded that threshold levels of materiality and intent had been met, the Court turned to the whether the conduct it had discussed constituted inequitable conduct. *See* Doc. 416 at 43-44. The Court reviewed the relevant legal authorities requiring the Court to "'weigh materiality and intent to determine whether the equities warrant a conclusion that inequitable conduct occurred.'" *Id.* (quoting *Li Second*, 213 F.3d at 1378 (citation omitted)) (other citation omitted). Next, the Court weighed materiality and intent in light of its previous factual findings and legal conclusions. *See id.* at 43-44. Ultimately, the Court made clear its basis for concluding that inequitable conduct had occurred:

> Accordingly, in light of all the findings of fact and conclusions of law drawn herein, the Court finds that the equities warrant the conclusion that Nisus[3] engaged in inequitable conduct. As demonstrated by a pattern of intentional failures to disclose highly material information to the PTO over a long period of time, clear and convincing evidence establishes that Nisus possessed an intent to deceive the PTO that resulted in a breach of its duty of candor, good faith, and honesty to the PTO. *Li Second*, 213 F.3d at 1378 (citing *Molins*

---

[3] Again, the Court referred to Nisus, rather than Messrs. Teschner and Altera, because it was referring to the patent applicant, which is the party that bears the duty of disclosure to the PTO. *See supra*, note 3. It should be especially clear that the Court was not suggesting the Nisus Corporation, as an entity, carried out the specific acts that constituted inequitable conduct since the Court went into such detail in explaining the specific acts, and who committed each act, that led the Court to its ultimate conclusion. *See* Doc. 416 at 6-32.

9

> *PLC*, 48 F.3d at 1178; *Glaxo, Inc.*, 52 F.3d at 1048). Accordingly, all claims in Nisus's '095 patent are unenforceable.

*Id.* at 44.

In light of the Court's findings of fact and conclusions of law regarding his conduct and its implications for Nisus's '095 patent, Mr. Teschner has filed the instant motion seeking to intervene for the purpose of participating in post-judgment proceedings to "personally defend his professional reputation" and correct alleged errors.[4] As grounds, Mr. Teschner argues that he has a substantial legal interest in this case that is not adequately represented by either of the parties, that his ability to protect that interest is impaired absent his intervention, and that his motion is timely filed. *See* Doc. 420 at 9. In the alternative, Mr. Teschner argues that his claim, which is embodied in a contemporaneously filed motion to amend, raises a common question of fact or law with the primary action, his motion to intervene is timely, and intervention will not result in any undue delay or excessive prejudice to either existing party. *See id.* at 11.

## II. Discussion

Mr. Teschner seeks to intervene under both of the alternative methods permitted by Fed. R. Civ. P. 24. *See* Doc. 420 at 8. Rule 24 provides in pertinent part:

> **(a) Intervention of Right**. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest

---

[4] Mr. Teschner contemporaneously filed the motion to amend [Doc. 425], alleging certain errors of law and fact in the Court's findings of fact and conclusions of law. *See* Doc. 420 at 7. That motion to amend is not considered herein.

10

relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

**(b) Permissive Intervention**. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed R. Civ. P. 24. Based on Rule 24(a), it is well-settled that in the Sixth Circuit:

[P]roposed intervenors must establish four elements in order to be entitled to intervene as a matter of right: (1) that the motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the case; (3) that their ability to protect that interest may be impaired in the absence of intervention; and (4) that the parties already before the court may not adequately represent their interest.

*Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (citing *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).

To intervene under Rule 24(b), proposed intervenors "must establish that the motion for intervention is timely and alleges at least one common question of law or fact." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005) (citing *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997)). If both of those requirements are satisfied, the Court must turn to a balancing of "undue delay and prejudice to the original parties, if any,

11

and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Id*.

Under either avenue of intervention, timeliness is a requirement. A determination of timeliness should be made in light of "all relevant circumstances," *Jansen*, 904 F.2d at 340, and the Sixth Circuit has identified five factors to be considered when considering whether the request for intervention is timely:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir.1989), *quoted in United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001).

Although Mr. Teschner contends that he satisfies the requirements under either avenue of intervention, the Court will not grant his request under either Rule 24(a) or 24(b) because his motion does not satisfy the timeliness element for intervention. A review of the timeliness factors weighs against allowing Mr. Teschner's proposed post-judgment intervention.

A. Stage of the Proceeding

First, this patent infringement action has reached the post-trial stage. "[T]he time of intervention is not the determining factor but rather that 'all circumstances' must be

12

examined to determine the substantive progress that has occurred in the litigation." *Tennessee*, 260 F.3d at 592 (quoting *Stupak-Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir. 2000)). "If the litigation has 'made extensive progress in the district court before the appellants moved to intervene' then this factor weighs against intervention." *Id.* (quoting *Stupak-Thrall*, 226 F.3d at 475). In *United States v. Tennessee*, where the stage of the proceeding factor weighed "strongly against allowing intervention," the district courts had resolved "all substantive issues." *Id.* at 593 ("[A]ll that was required was final approval [of settlement and remedial orders] by the judges."). Similarly, in the instant action, the Court has already entered its findings of fact and conclusions of law, which address the dispositive issue in this action. The only remaining issue before the Court is amendment or reconsideration of its findings of fact and conclusions of law.[5] Accordingly, this "factor weighs strongly against" allowing Mr. Teschner's intervention. *Tennessee*, 260 F.3d at 592.

B. <u>Purpose for Intervention</u>

Mr. Teschner states that his purpose for intervention is "to personally defend his professional reputation and to address the grave and reversible errors in the Court's

---

[5] In addition to Mr. Teschner's contemporaneously filed motion to amend and reconsider, both Nisus and Perma-Chink have filed motions to amend or reconsider the Court's findings of fact and conclusions of law. *See* Docs. 424, 425, 426, 427. In addition, the Court did bifurcate the instant action to delay consideration of Perma-Chink's antitrust counterclaim until after disposition of the other claims and counterclaims. *See* Doc. 416 at 5, n.4. While the antitrust counterclaim awaits disposition, all other claims and counterclaims have been addressed. As Mr. Teschner's motion makes clear, he seeks intervention only to challenge the Court's disposition of the inequitable conduct issue. Thus, for the purpose of considering Mr. Teschner's motion to intervene, the antitrust counterclaim is not relevant and is not considered for purposes of assessing the purpose for intervention factor. The pending renewed motions for sanctions, *see* Docs. 438, 439, 459, are not relevant and are not considered for the same reasons.

13

[j]udgment regarding his actions." Doc. 420 at 4. Perma-Chink contends that Mr. Teschner's purpose is improper because he merely seeks to reargue issues already resolved by the Court.[6] *See* Doc. 436 at 18. Mr. Teschner replies that he seeks to correct errors that harm his interest, not repeat prior arguments. *See* Doc. 442 at 15. Specifically, the errors of which Mr. Teschner complains are that the Court evaluated the conduct of Messrs. Teschner and Altera "collectively" and that there are no facts to support the Court's conclusion that he committed acts on behalf of Nisus that constituted inequitable conduct. *See* Doc. 420 at 4-5.

Mr. Teschner's purpose for intervention is not sufficient at this stage of the proceeding. "Where intervention would result only in the reconsideration of claims or objections previously presented to and rejected by the district court, the purpose of the intervention is not compelling." *United States v. BASF-Inmont Corp.*, 52 F.3d 326 (6th Cir. 1995) (unpublished op.) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994). Mr. Teschner had the opportunity to "personally defend his professional reputation" as a witness during trial. In fact, throughout this litigation, Nisus has consistently denied that the actions taken by either Mr. Teschner or Mr. Altera could constitute inequitable conduct. *See, e.g.*, Doc. 406 44-46 (proposing findings of fact regarding propriety of Mr. Teschner's conduct).

---

[6] Perma-Chink bases this contention on a review of Mr. Teschner's motion to amend [Doc. 425]. This same argument is also one of Perma-Chink's grounds for opposing that motion. *See* Doc. 437 at 3.

14

While Mr. Teschner attempts to recast his arguments as alleged errors by the Court, it is clear that in substance those arguments merely restate Mr. Teschner's view that he did not take actions on behalf of Nisus that constituted inequitable conduct. The Court specifically rejected this view in its findings of fact and conclusions of law. Thus, this factor also weighs against allowing Mr. Teschner to intervene.

        C.      <u>Length of Time Proposed Intervenor Knew of His Interest</u>

Turning to the third factor, Mr. Teschner contends that his interest only ripened after the Court entered its findings of fact and conclusions of law. *See* Doc. 420 at 11. For support, Mr. Teschner looks to *Linton v. Commissioner of Health & Env't*, 973 F.2d 1311 (6th Cir. 1992), and *Triax Co. v. TRW, Inc.*, 724 F.2d 1224 (6th Cir. 1984), two cases in which parties seeking only to participate in post-trial proceedings were allowed to intervene. *See* Doc. 442 at 13.

In both *Linton* and *Triax*, the Sixth Circuit was particularly interested in when the intervenor could have "reasonably known" that its interests were implicated. In concluding that post-judgment intervention was timely, the *Linton* court stated:

> Because they were not privy to the terms and conditions of the proposed 1990 State plan "lock-in" provision until after the plan had been filed in the district court, the movants could not have reasonably known prior thereto that this provision would require them to participate indefinitely in the Medicaid program.

973 F.2d at 1318. Similarly, in *Triax*, the court concluded that post-judgment intervention was timely because, although "[the proposed intervenor] knew of his interest in the litigation

15

for some time, he had no reason to seek intervention prior to the decision of Triax not to appeal." 724 F.2d at 1228.

The circumstances present in *Linton* and *Triax* are not present in this case. Unlike *Linton*, beginning as early as April 2004, when Nisus's attorneys, representing Mr. Teschner, sought to quash subpoenas issued to him by Perma-Chink, Mr. Teschner has been, or reasonably should have been, aware that his actions on behalf of Nisus before the PTO were at issue in determining whether there was inequitable conduct in the prosecution of the '095 patent. Even after the deposition, there were any number of signs that Mr. Teschner's "professional reputation" could be affected by this litigation, to the extent that his reputation would be harmed by a legal finding that his actions on behalf of Nisus before the PTO form the basis for inequitable conduct.

In short, Mr. Teschner knew, or should have known, that his conduct and professional reputation, to the extent his reputation is affected by an assessment of the propriety of his conduct, were in issue in this case long before the Court's findings of fact and conclusions of law. The following examples illustrate the clarity of this conclusion:

- In addition to the motion to quash filed on his behalf in April 2004, the Court's order denying that motion specifically indicated that Mr. Teschner's knowledge and conduct were at issue. *See* Doc. 198 at 6 (finding Mr. Teschner's "knowledge of facts and [] mental impressions . . . are relevant . . . due to the inequitable conduct claims . . . .").

16

- At Mr. Teschner's actual deposition, his actions before the PTO were specifically questioned. *See* Doc. 264 at 8-9 (quoting Mr. Teschner's deposition testimony).

- Perma-Chink's reply in support of its motions for summary judgment specifically referred to Mr. Teschner and his deposition testimony as supporting inequitable conduct. *See* Doc. 264.

- Perma-Chink's trial brief implicated Mr. Teschner in inequitable conduct by Nisus. *See* Doc. 366.

- The Court's final pretrial order identified inequitable conduct as an issue for trial. *See* Doc. 388.

- At Mr. Teschner's cross examination at trial, Perma-Chink directly challenged his conduct before the PTO. *See* Doc. 400 at 157-181.

- Finally, both parties' proposed findings of fact and conclusions of law presented opposing pictures of Mr. Teschner's conduct before the PTO. *See* Docs. 406, 409.

Similarly, the circumstances that were so unusual in *Triax* are inapposite here. Unlike the party in *Triax*, Nisus, which shares to some degree Mr. Teschner's interest in the Court's assessment of his conduct,[7] has not declined to participate in post-trial proceedings. *See* Doc.

---

[7] Nisus shares Mr. Teschner's interest in his professional reputation to the extent the Court's assessment of his conduct before the PTO on behalf of Nisus is the basis for concluding that the '095 patent is unenforceable. That is not to say, however, that Mr. Teschner's interest is adequately represented by Nisus. Because the Court bases its denial of intervention on untimeliness, it does not reach the adequacy of representation element under Rule 24(a).

17

426. Furthermore, Nisus has not stated an intent to discontinue efforts to obtain post-judgment relief. Therefore, although "[Mr. Teschner] knew of his interest in the litigation for some time, he ha[s] no reason to seek intervention prior to the decision of [Nisus] not to appeal." *Triax*, 724 F.2d at 1228.

Because Mr. Teschner knew or reasonably should have known of his interest in this case for such a long period of time given the early and consistent allegations about his conduct on behalf of Nisus before the PTO, the third factor in determining the timeliness of the proposed intervention weighs very strongly against allowing the intervention.

D.      Prejudice to the Original Parties

Regarding the fourth factor, Mr. Teschner contends that there is no prejudice to the parties resulting from his failure to more promptly seek intervention. *See* Docs. 420 at 13; 442 at 14. Perma-Chink argues that it would be greatly prejudiced by allowing Mr. Teschner's intervention because of the expense it "is incurring, even now, to deal with his efforts to join this litigation as a party." Doc. 436 at 21.

"[W]hen it appears that the proposed intervenors may attempt to have the court reconsider its prior rulings, as in the instant case, concern over delay and prejudice to the parties is particularly apparent." *Bradley v. Milliken*, 828 F.2d 1186, 1194 (6th Cir. 1987) (citation omitted). As has already been discussed, although Mr. Teschner casts his purpose for intervention an attempt to correct alleged errors, in substance he is asking the Court to reconsider its prior rulings, which would result in added expense to the other parties and further delay the final resolution of this case. This case has a long history, and the added

18

expense or delay associated with allowing Mr. Teschner's intervention would be prejudicial to the original parties. Accordingly, this factor weighs against permitting the intervention.

E. Unusual Circumstances

Finally, as should be evident from a review of the record, this case is unusual. As the Court noted in its findings of fact and conclusions of law:

> This case, like Nisus I, has been fiercely litigated by both parties. As a review of the pleadings illustrates, the parties have traded barbs and accusations that evidence an unusual level of bitterness reminiscent of the fictional Montagues and Capulets or the real-life Hatfields and McCoys. *See* William Shakespeare, *Romeo & Juliet*; Normal Lugar, *Hatfield-McCoy Feud – Roseanna: Juliet of the Mountains*, Blue Ridge Country (Mar./Apr. 1996). In light of the parties' fierce defense of their respective interests, however, the Court cannot conclude that one party or another has suffered gross injustice. *See Arbrook, Inc.*, 645 F.2d at 279 (citations omitted) ("The purpose of § 285 is to prevent gross injustice, and an award under that statute requires an unambiguous showing of extraordinary misconduct."). Instead, the parties' long and bitter feud appears to have been a fulfillment of Mercutio's curse of the rival families in Shakespeare's *Romeo & Juliet*. *See Romeo & Juliet*, act. 3, sc. 1 (Oxford ed. 1914).

Doc. 416 at 46, n.15 (explaining inappropriateness of awarding attorneys' fees and costs to prevailing party).

Those same circumstances militate against intervention herein. This case has been a protracted and thoroughly litigated legal battle that was finally brought to some conclusion with the Court's findings of fact and conclusions of law. Allowing Mr. Teschner to intervene at this late date, after judgment has been entered, would only lengthen this "long and bitter feud" between the existing parties. Accordingly, this factor also weighs against allowing intervention.

19

## III. Conclusion

Because the requested intervention is not timely, the Court hereby **DENIES** Mr. Teschner's motion to intervene [Doc. 420] pursuant to Fed. R. Civ. P. 24(a) and 24(b).

IT IS SO ORDERED.

                                               s/ Thomas A. Varlan
                                               UNITED STATES DISTRICT JUDGE