UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| NISUS CORPORATION, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 3:03-CV-120 |
| | ) | | (VARLAN/SHIRLEY) |
| PERMA-CHINK SYSTEMS, INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

### MEMORANDUM & ORDER

This patent infringement action is before the Court for consideration of Michael H. Teschner's motion to amend and reconsider [Doc. 425] pursuant to Fed. R. Civ. P. 52(b) and 59(e). Specifically, Mr. Teschner, an attorney who formerly represented Nisus before the U.S. Patent and Trademark Office ("PTO") and who testified on behalf of Nisus during trial of this action,[1] seeks amendment and reconsideration of the Court's findings of fact and conclusions of law [Doc. 416] and judgment [Doc. 417] "to reflect that Mr. Teschner did not commit inequitable conduct." Doc. 425 at 5 (footnote omitted). Perma-Chink responds in opposition to the motion, arguing that "the Teschner motion makes certain inaccurate and misleading assertions regarding the Findings of Fact and Conclusions of Law that should be corrected in the record." Doc. 437 at 3 (citation and footnote omitted). Mr. Teschner replies that Perma-Chink's brief "lacks any meaningful discussion or analysis of the main legal

---

[1] Mr. Teschner has filed a motion to intervene [Doc. 420], which the Court has denied for lack of timeliness in a memorandum and order entered contemporaneously herewith.

arguments and authorities discussed in Mr. Teschner's opening brief." Doc. 443 at 4. Meanwhile, Nisus has failed to respond to or otherwise address the instant motion, and the time for doing so has passed. *See* E.D.TN. LR 7.1(a), 7.2.

The Court has reviewed the briefs and legal authorities, and for the reasons discussed herein, it will deny Mr. Teschner's motion to reconsider and amend. The Court *sua sponte* will make two amendments to its findings of fact, but in all other respects the findings of fact and conclusions of law and judgment will be affirmed.

**I.     Relevant Facts**

United States Patent number 6,426,095 B2 ("'095 patent"), which is the patent-in-suit of the instant action, was issued on July 30, 2002, from U.S. Patent Application number 09/888,875 ("'875 patent application"), but it claims priority to U.S. Patent Application number 07/528,838 ("'838 patent application").

In an earlier litigation between these parties, known as Nisus I, patents numbered 5,104,664 ("'664 patent") and 5,645,828 ("'828 patent") were before the Court. *See Nisus Corp. v. Perma-Chink Sys., Inc.*, No. 3:98-CV-433 (E.D. Tenn.). Nisus I was pending while Nisus, represented first by Michael Teschner and later by Allan Altera, was prosecuting the '875 patent application before the PTO. During Nisus I, the parties engaged in significant discovery regarding the '664 and '828 patents, as well as the '838 patent application and other matters.

In the instant action, known as Nisus II, following a bench trial, the Court entered findings of fact and conclusions of law regarding the enforceability of the '095 patent.[2] *See* Doc. 416. In short, the Court concluded that Messrs. Teschner and Altera had each engaged in acts that constituted inequitable conduct when they failed to disclose highly material information with an intent to deceive during the prosecution of the '875 patent application on behalf of Nisus. *See id.* at 43-44. Messrs. Teschner and Altera, each acting on behalf of Nisus, each failed to disclose, with the intent to deceive, Nisus I and Nisus I-related information that was highly material to the patentability of the eventual '095 patent. *See id.* at 44. Consequently, the Court concluded that all claims of the '095 patent are unenforceable. *Id.*

Consideration of the instant motion, however, requires a more specific review of the Court's findings of fact and conclusions of law, especially with regard to Mr. Teschner's conduct and the Court's evaluation of that conduct as a basis for concluding that inequitable conduct had occurred. *See* Doc. 425 at 5-7. Therefore, the Court will detail its findings of fact and conclusions of law as it analyzed those issues.

The Court began its analysis by considering whether Nisus had failed to disclose or had misrepresented information to the PTO. *See* Doc. 416 at 34-36. In a section of its findings of fact entitled "G. Nisus's Failures to Disclose," the Court made factual findings

---

[2] Nisus and Perma-Chink advanced a number of claims and counterclaims related to the '095 patent that the Court addressed in its findings of fact and conclusions of law, but the enforceability of the '095 patent was the dispositive issue; therefore, it commanded most of the Court's attention. *See* Doc. 416 at 4 n.2.

3

that discussed in some detail the information that Nisus failed to disclose to the PTO. *See id.* at 22-32. The Court also identified which of Nisus's representatives before the PTO was responsible for the specific failures to disclose when it sub-divided the failures into two sub-sections, entitled "i. Michael Teschner," "ii. Allan Altera."[3] *See id.* at 22, 24. Based on those findings of fact, in which the Court separately considered the conduct of each attorney, the Court drew the legal conclusion that Messrs. Teschner and Altera each had failed to disclose information to the PTO at times when they bore the duty of disclosure on behalf of Nisus. *See id.* at 34-36.

Building on earlier factual findings and the legal conclusion that information had not been disclosed, the Court explained why that information was highly material to the patentability of the eventual '095 patent. *See* Doc. 416 at 37-40. First, the Court explained the legal meaning and significance of materiality, discussed how related litigation is *per se* material, and noted that the PTO especially requires the disclosure of allegations of prior public use or sales that may have been made in a related litigation. *See id.* at 37-38. Next, the Court explained that Nisus I was related litigation and concluded that neither Mr. Teschner or Mr. Altera disclosed it to the PTO. *See id.* at 38-39. Then, the Court discussed the Nisus I-related information that neither Mr. Teschner or Mr. Altera disclosed to the PTO, and stated:

---

[3] The Court included a third subsection, entitled "iii. Redacted Documents," which specifically addressed Mr. Altera's responsibility for redacted Nisus I-related documents that he submitted to the PTO on behalf of Nisus. *See* Doc. 416 at 31-32.

4

> Although not every Nisus I-related document was material to the '075 patent application, Messrs. Teschner and Altera, acting on behalf of Nisus, failed to disclose documents that the PTO has specifically required applicants to disclose – namely, evidence of prior public use or sale and evidence inconsistent with Nisus's assertions regarding patentability. *See* 37 C.F.R. § 1.56(b); MPEP § 2001.06(c). The fact that the PTO specifically requires applicants to disclose such information indicates its very high degree of materiality to the determination of patentability.

*Id.* at 39. Again building on previous factual findings and legal conclusions, the Court explained that Mr. Teschner had disclosed absolutely nothing regarding prior public use or sale, and that Mr. Altera had only disclosed some information about prior public use and sales after the documents were redacted to obscure their association to Nisus I. *Id.* Furthermore, the Court explained that Mr. Altera also failed to disclose Nisus I-related information that contradicted his assertions before the PTO, which the Court had already explained was also highly material. *Id.* at 39-40.

Moving on to intent to deceive, the Court was equally clear in reaching its conclusion that Nisus, as represented before the PTO by Messrs. Teschner and Altera, possessed an intent to deceive when it failed to disclose the highly material information. *See* Doc. 416 at 42. The Court began by discussing the analysis of intent, explaining that the degree of intent necessary varies inversely with the degree of materiality of the withheld information. *Id.* at 41 (citing *Li Second Family Limited P'ship v. Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000) (citing *N.V. Akzo v. E.I. DuPont de Nemours*, 810 F.2d 1148, 1153 (Fed. Cir. 1987)); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997)).

5

Building on previous factual findings and legal conclusions, the Court then specifically, and individually, considered and rejected the explanations of intent offered by Messrs. Teschner and Altera. *See id.* at 42. The Court had already concluded that Mr. Teschner's explanations, *see id.* at 22-24, were not credible because they were contradicted by his conduct. *See id.* at 42. With respect to Mr. Altera, the Court returned to his failures to disclose Nisus I and his responsibility for the redaction of the disclosed documents. *See id.* The Court then stated in no uncertain terms the basis for its conclusion that there was the intent to deceive:

> Given the totality of the circumstances, including the highly material nature of the information Nisus failed to disclose, the lack of credible explanations for the failures, the acknowledgment that the failures were intentional, and the ongoing pattern of failures, the Court can only conclude that Nisus possessed an intent to deceive the PTO when it failed to disclose Nisus I and Nisus-I related [sic] information, including evidence of Nisus's sales prior to the on-sale bar date and contradictions of Nisus's assertions to the PTO.

*Id.* at 42 (citing *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1330 (Fed. Cir. 1998); *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elect. Co., Ltd.*, 4 F. Supp. 2d 477, 498 (E.D. Va. 1998), *aff'd*, 204 F.3d 1368 (Fed. Cir. 2000)).

Finally, having concluded that threshold levels of materiality and intent had been met, the Court turned to whether the conduct it had discussed constituted inequitable conduct. *See* Doc. 416 at 43-44. The Court reviewed the relevant legal authorities requiring the Court to "weigh materiality and intent to determine whether the equities warrant a conclusion that inequitable conduct occurred." *Id.* (quoting *Li Second*, 213 F.3d at 1378 (citation omitted)) (other citation omitted). Next, the Court weighed materiality and intent in light of its

6

previous factual findings and legal conclusions. *See id.* at 43-44. Ultimately, the Court made clear its basis for concluding that inequitable conduct had occurred:

> Accordingly, in light of all the findings of fact and conclusions of law drawn herein, the Court finds that the equities warrant the conclusion that Nisus engaged in inequitable conduct. As demonstrated by a pattern of intentional failures to disclose highly material information to the PTO over a long period of time, clear and convincing evidence establishes that Nisus possessed an intent to deceive the PTO that resulted in a breach of its duty of candor, good faith, and honesty to the PTO. *Li Second*, 213 F.3d at 1378 (citing *Molins PLC*, 48 F.3d at 1178; *Glaxo, Inc.*, 52 F.3d at 1048). Accordingly, all claims in Nisus's '095 patent are unenforceable.

*Id.* at 44.

Having reviewed its findings of fact and conclusions of law, especially as it related to Mr. Teschner's conduct, the Court now turns to consideration of the instant motion.

## II. Discussion

"Motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). Rule 59(e) was "adopted to 'mak[e] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982) (quoting *Notes of Advisory Comm. on 1946 Amendment to Rules*, 5 F.R.D. 433, 476 (1946)). It provides a means for the Court to reconsider "matters properly encompassed in a decision on the merits," which includes those issues previously before the Court, but does not permit an expansion of the judgment to encompass issues that were not previously raised

7

by the parties. *See id.* at 451. *See also Matthews v. Beloit Corp.*, 807 F. Supp. 1289, 1291 (W.D. Mich. 1992) (citing *Ray E. Friedman & Co. v. Jenkins*, 824 F.2d 657 (8th Cir. 1987)). On the other hand, neither Rule 52(b) or Rule 59(e) permit the parties to merely "re-argue a case," *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (discussing Rule 59(e)), or "rehash old arguments already considered and rejected by the trial court," *National Metal Finishing Co., Inc. v. Barclay's American/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990) (discussing Rule 52(b)). *See also Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher*, 951 F.2d 350 (6th Cir. 1991) (unpublished op.) (explaining abuse of discretion standard applied to appeals of Rule 52(b) orders and noting *National Metal Finishing Co.*).

In the instant motion, Mr. Teschner argues that the Court made legal and factual errors in concluding that his actions on behalf of Nisus before the PTO constituted inequitable conduct. First, Mr. Teschner alleges that the Court erroneously analyzed the conduct of Messrs. Teschner and Altera "collectively" to support its conclusion that inequitable conduct had occurred. Doc. 425 at 18-20. Second, Mr. Teschner argues that "there is no basis for any conclusion that Mr. Teschner's actions, standing alone, constitute inequitable conduct." *Id*. at 17. In support of his second argument, Mr. Teschner contends that his delayed disclosure cannot constitute a failure to disclose and that he lacked an intent to deceive. *See id.* at 20-27.

The Court will address these arguments in turn, but as an initial matter, as Mr. Teschner himself notes, he is not a party to this action, and at the time he filed the instant

8

motion, he also filed a motion to intervene [Doc. 420]. *See* Doc. 425 at 1 n.1. In a memorandum and order entered contemporaneously herewith, the Court explained that Mr. Teschner's motion to intervene would be denied because it is not timely. In anticipation of such an outcome, Mr. Teschner alternatively requests that the Court *sua sponte* grant the requested relief.

Because the Court has denied Mr. Teschner's motion to intervene, the instant motion is not properly before the Court, and for that reason it will be denied. Instead, the Court *sua sponte* will consider whether to amend its findings of fact and conclusions of law.

### A. The Court's Analysis of Conduct

As is evident from the organization and substance of the Court's findings of fact and conclusions of law, the Court did not consider the conduct of Messrs. Teschner and Altera collectively in concluding that Nisus had committed inequitable conduct. Several times the Court referred to Nisus, rather than Messrs. Teschner and Altera, because it was referring to the patent applicant, which is the party that bears the duty of disclosure. As the Court's earlier factual findings and legal conclusions had already made clear, Nisus was represented before the PTO at different times by Messrs. Teschner and Altera, who, during those representations, were charged with fulfilling the duty of disclosure on Nisus's behalf. *See* Doc. 416 at 22-30, 34-36.

The Court's findings of fact and conclusions of law indicate that the Court does not read 37 C.F.R. § 1.56 and the other legal authorities as imposing a separate, independent duty of disclosure on each one of an applicant's representatives before the PTO. *See id.* at 33-34

9

(discussing duty of disclosure), 37 (quoting 37 C.F.R. § 1.56), 41 (quoting *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997), 43-44 (weighing inequitable conduct). Instead, the duty of disclosure is a single, continuing duty on the applicant, whose representatives before the PTO are charged with carrying it out on the applicant's behalf during their representation. *See id.* at 34 ("For a court to conclude inequitable conduct occurred in a particular case, clear and convincing evidence must establish that 'the alleged nondisclosure or misrepresentation occurred, that the nondisclosure or misrepresentation was material, and that *the patent applicant* acted with the intent to deceive the PTO.'" (citations omitted) (emphasis added)).

It should be especially clear that the Court was not suggesting the Nisus Corporation, as an entity, or Messrs. Teschner and Altera jointly, carried out the specific acts that constituted inequitable conduct since the Court went into such detail in explaining the specific acts – and *who* committed each act – that led the Court to its ultimate conclusion. *See id.* at 6-32. Accordingly, the Court is satisfied that it properly analyzed the individual conduct of Nisus's representatives before the PTO and that it properly relied on that individual conduct in concluding that the patent applicant in this case had committed inequitable conduct. *See id.* at 43-44.

  B. <u>The Court's Consideration of Mr. Teschner's Conduct</u>

The Court now turns more specifically to the findings of fact and conclusions of law regarding Mr. Teschner's conduct on behalf of Nisus before the PTO. Mr. Teschner argues that "there is no basis for any conclusion that Mr. Teschner's actions, standing alone,

constitute inequitable conduct." *Id.* at 17. In support of this argument, Mr. Teschner contends that his delayed disclosure cannot constitute a failure to disclose and that he lacked an intent to deceive. *See id.* at 20-27.

1. *Failure to Disclose*

As the Court made clear, "the duty to disclose may be breached by affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information." *Id.* at 33 (quoting *Li Second Family Limited P'ship v. Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000)). The Court did not conclude, or even suggest, that delaying disclosure constitutes a breach of the duty of disclosure. With that in mind, the Court found as facts: (a) that Mr. Teschner intentionally delayed disclosure; (b) that Mr. Teschner said he planned to disclose; (c) that Mr. Teschner never disclosed Nisus I and Nisus I-related information; and (d) Mr. Teschner attempted to excuse his failure to disclose. *See* Doc. 416 at 22-24. In its conclusions of law, the Court concluded that, "Mr. Teschner, while offering explanations for his conduct, acknowledges that he intentionally did not disclose Nisus I or any Nisus I-related documents to the PTO." *See id.* at 35. Thus, the Court did not base its eventual inequitable conduct conclusion on Mr. Teschner's conduct in delaying disclosure, but relied upon its findings of fact and Mr. Teschner's *own acknowledgment*, albeit with excuses, that he intentionally did not disclose the information to the PTO on behalf of Nisus.

As mentioned above, Mr. Teschner offered excuses for his conduct. He argues that the Court made erroneous findings of fact in rejecting his excuses. *See* Doc. 425 at 21-22.

11

Specifically, Mr. Teschner contends the Court misread his testimony when it used the word "before" – and not "after" – in finding of fact paragraph 76, and that error impacts the Court's adverse credibility finding. The error does not affect the Court's credibility finding because the same seven-month discrepancy exists between the time Mr. Teschner claimed he was relieved of his responsibilities on behalf of Nisus before the PTO, "just after" the closure of Nisus I discovery, and the time he was actually relieved, seven months after the closure of Nisus I discovery. Nevertheless, having reviewed the trial transcript, the Court *sua sponte* will amend its finding of fact at paragraph 76 to strike the phrase "just before" and replace it with the phrase "just after" in the first sentence.

2.  *Intent to Deceive*

Mr. Teschner also claims he did not have an intent to deceive. *See* Doc. 425 at 22. Based on the findings of fact, however, the Court found his explanations of intent were not credible. *See* Doc. 416 at 24. Mr. Teschner asserted that he never disclosed the information to the PTO because "his intention was to provide the PTO with all of the information that it needed to determine whether the '095 patent should issue." *Id*. It should go without saying that Mr. Teschner's assertion was contradicted by his conduct. Nevertheless, the Court *sua sponte* will amend its finding of fact at paragraph 78 to add the following clause at the end of the sentence:

> because Mr. Teschner's explanation of his intent, which is that he intended to provide the PTO with all of the information, is incompatible with his actual conduct, which was that he intentionally failed to disclose Nisus I or any litigation documents to the Patent Examiner.

In drawing conclusions about whether Mr. Teschner's conduct evidenced an intent to deceive, the Court was without any credible explanation from Mr. Teschner. *Id*. at 42. In the absence of a credible explanation, the Court noted that Mr. Teschner "was 'hoping' to file a second lawsuit against Perma-Chink." *Id*. Mr. Teschner argues that the Court erred in relying on this fact to find an intent to deceive because such a purpose is not improper. *See* Doc. 425 at 19-20. The Court never suggested that targeting a competitor or a product was improper.[4] Instead, it noted that such a purpose could be "undermined" if the disclosure of related litigation resulted in the rejection of the patent application. *See* Doc. 416 at 42.

Finally, Mr. Teschner argues that the Court erroneously attributed Mr. Altera's conduct to Mr. Teschner to support its conclusion that Nisus had an intent to deceive. *See* Doc. 425 at 20-27. In support of his argument, Mr. Teschner points to the Court's use of the words "totality of the circumstances" and "ongoing pattern of failures" as the basis for concluding "Nisus possessed an intent to deceive the PTO when it failed to disclose Nisus I and Nisus-I [sic] related information . . . ." Doc. 416 at 42. As has already been discussed, the Court did not suggest that Nisus, as an entity, "possessed an intent to deceive." Instead, the Court imputed the conduct of Nisus's representatives, Messrs. Teschner and Altera, to the patent applicant they represented before the PTO. Thus, the Court did not attribute Mr. Altera's conduct to Mr. Teschner; it attributed Mr. Teschner's conduct – as well as Mr.

---

[4] Similarly, the Court never suggested such a purpose was proper. It did not pass on the propriety of such maneuvering as a means to target competitors for infringement actions.

13

Altera's – to Nisus, the patent applicant, to conclude that the patent applicant had an intent to deceive.

## III. Conclusion

For the reasons already discussed, the Court hereby **DENIES** Mr. Teschner's motion to amend [Doc. 425], because it is not properly before the Court.

The Court *sua sponte* hereby **AMENDS** its findings of fact and conclusions of law [Doc. 416] as follows:

1. Finding of fact paragraph 76 is amended to strike the phrase "just before" and replace it with the phrase "just after" in the first sentence.

2. Finding of fact paragraph 78 is amended to insert the following clause at the end of the sentence:

> because Mr. Teschner's explanation of his intent, which is that he intended to provide the PTO with all of the information, is incompatible with his actual conduct, which was that he intentionally failed to disclose Nisus I or any litigation documents to the Patent Examiner.

In all other respects, the Court hereby **AFFIRMS** the findings of fact and conclusions of law [Doc. 416] and judgment [Doc. 417].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE