UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

NISUS CORPORATION,                    )
                                      )
              Plaintiff,              )
                                      )
v.                                    )        No. 3:03-CV-120
                                      )        (VARLAN/SHIRLEY)
PERMA-CHINK SYSTEMS, INC.,            )
                                      )
              Defendant.              )

## REPORT AND RECOMMENDATION

This matter is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of

this Court, and by the Order [Docs. 449, 460] of the Honorable Thomas A. Varlan, United States

District Judge, for a report and recommendation on the following motions: Perma-Chink's Renewed

First Motion for Sanctions as to the Pauly Declaration & '698 IDS [Doc. 438]; Perma-Chink's

Renewed Second Motion for Sanctions Regarding Mr. Altera's Sworn Testimony [Doc. 439]; and

the Motion to Dismiss Perma-Chink's Motion for Rule 11 Sanctions [Doc. 459] filed by the law firm

of Merchant & Gould and attorneys Allan Altera and Douglas Williams.  Consideration of these

motions also requires the undersigned to recommend disposition concerning Perma-Chink's Cross-

Motion to Modify Perma-Chink's Renewed First Motion for Sanctions [Doc. 469], which was filed

in response to the Motion to Dismiss [Doc. 459].  The undersigned held a hearing on these motions

on August 7, 2006.

# I.     BACKGROUND

To fully understand the basis for the motions for sanctions presently pending before the Court, a brief examination of the procedural history of these motions is in order.

## A.     Perma-Chink's Original Motions for Sanctions

The defendant Perma-Chink Systems, Inc. ("Perma-Chink") originally filed its first motion for sanctions [Doc. 254] in February, 2005, alleging that attorneys on behalf of the plaintiff Nisus Corporation ("Nisus") had filed improper pleadings with the Court in an effort to preclude summary judgment. Perma-Chink alleges that these pleadings were generated through intentional misrepresentations and misuse of Patent and Trademark Office ("PTO") proceedings during the prosecution of U.S. Patent No. 6,426,095 ("'095 patent") and U.S. Patent Application No. 10/674,698 ("'698 application"). Perma-Chink's second motion for sanctions, which was filed in March, 2005, alleges that the testimony of PTO Examiner Carlos Azpuru impeaches various in-court representations made and testimony given by Nisus's counsel. [Doc. 263].

These motions were referred to the undersigned. [Docs. 262, 270]. In an Order entered May 27, 2005, the undersigned initially deferred ruling on these motions for sanctions until after the trial of this matter, noting that "[b]ecause the subject matter of these allegations is so intertwined with the underlying substantive claims and defenses in this case, the Court is concerned that any determination of sanctionable behavior would effectively usurp the duties of the finder of fact at trial." [Doc. 377]. Following the conclusion of the bench trial and while the District Court had the findings of fact and conclusions of law under advisement, the undersigned entered another Order [Doc. 412], finding that "the District Court's ultimate ruling may resolve and/or render moot some of the matters raised in these motions or otherwise affect the parties' positions concerning the

pursuit or defense of these motions." Accordingly, the undersigned denied the motions without prejudice and with leave to re-file the same within thirty (30) days of the filing of the findings of fact and conclusions of law by the District Court. [Id.].

**B.    The District Court's Findings**

The District Court entered its Findings of Fact and Conclusions of Law [Doc. 416] on March 16, 2006. Specifically, with respect to the attorneys representing Nisus, the District Court made the following findings:

> 85.  On January 3, 2002, Mr. Altera met with Patent Examiner Carlos Azpuru at the PTO to discuss the '875 patent application. Mr. Altera testifies that he disclosed the existence of the ongoing Nisus I litigation to Patent Examiner Azpuru during this meeting. Patent Examiner Azpuru testifies [footnote omitted] that Mr. Altera did not make any disclosure of Nisus I during the January 3, 2002 interview, and the written Interview Summary of that meeting makes no mention of the Nisus I litigation.

> 86.  Mr. Altera testifies that he did not supplement the January 3, 2002 written Interview Summary, because Patent Examiner Azpuru had checked a box indicating that the applicant need not provide a separate record of the substance of the interview, which Mr. Altera construed as indicating that Patent Examiner Azpuru was satisfied with his own summation of the interview. Patent Examiner Azpuru, however, testifies that he never instructed Mr. Altera "to not supplement the oral interview . . . if he found anything missing" from the Interview Summary.

> 87.  On January 11, 2002, Nisus submitted its IDS [Information Disclosure Statement] and the Form 1449 that included copies of batch tickets, eight selected invoices, and the "Rest Assured" advertisement from the *Muir Log Home Guide for Builders and Buyers*. Although the invoices and advertisement were obtained from the exhibits to Perma-Chink's motion for summary judgment in Nisus I, neither the IDS or Form 1449 mentions Nisus I or the source of the documents. Mr. Altera testifies that he told Patent Examiner Azpuru that the invoices and advertisement Nisus presented to the PTO on January 11, 2002, had originated from discovery in Nisus I, but

Patent Examiner Azpuru's testimony directly contradicts Mr. Altera's claim.

88.  On February 20, 2002, the PTO issued an Office Action with a Final Rejection of all claims pending in the '875 patent application pursuant to 35 U.S.C. § 102(b), the on-sale bar.  Patent Examiner Azpuru listed the eight invoices from 1988 as the basis for the on-sale bar date final rejection.  Nisus I was not mentioned.

89.  On March 6, 2002, Mr. Altera again met with Patent Examiner Azpuru to discuss the '875 patent application.  The primary topic for the interview was the on-sale bar rejection in the Office Action dated February 20, 2002.  Mr. Altera testifies that he disclosed the existence of the ongoing Nisus I litigation to Patent Examiner Azpuru during this meeting.  Patent Examiner testifies that Mr. Altera did not make any disclosure of Nisus I during the March 6, 2002 interview, and the written Interview Summary of that meeting makes no mention of Nisus I.

90.  Following the March 6, 2002 interview, Nisus submitted a written Amendment After Final to the PTO dated March 6, 2002.  Nisus included one additional sales invoice that was denominated Exhibit D.  Neither Nisus I or the source of the invoice were disclosed.

91. Patent Examiner Azpuru testifies that Nisus I was never disclosed to him at any time during the prosecution of the '875 patent application.  During cross-examination by Nisus, Patent Examiner Azpuru reiterates and clarifies that Nisus I was not disclosed to him at any time prior to issuance of the '095 patent.

92. Mr. Altera acknowledges that Nisus I was "related litigation" as defined by the PTO, and ultimately, Nisus had a duty to disclose it to the PTO, because Nisus I was material *per se* to the PTO's consideration of the '875 patent application.

*     *     *

94.  Sometime after the '095 patent issued, Patent Examiner Azpuru testifies that Mr. Altera contacted him by telephone to inform him that there was litigation between Nisus and Perma-Chink.  Patent Examiner Azpuru does not recall how long after the Notice of Allowance the litigation was disclosed.  Further, he does not recall whether the litigation that was disclosed to him involved Nisus I or

the instant action. Patent Examiner Azpuru also testifies that during this telephone call, Mr. Altera did not disclose that the previously submitted batch tickets, invoices, and advertisements dealing with the § 102(b) issue had been redacted [footnote omitted] or produced in litigation. Mr. Altera denies that this telephone call occurred and, in explaining the obvious contradiction, suggests that Patent Examiner Azpuru has a different recollection of events.

95. In his testimony, Mr. Altera asserts alternatively that the PTO was put on notice of Nisus I by a notice sent by the Court to the PTO pursuant to 35 U.S.C. § 290. Mr. Altera contends that such notice substituted for Nisus's duty to disclose the litigation. Patent Examiner Azpuru testifies that he never saw a § 290 notice regarding Nisus I, and there is no such notice in the '095 file history. Even if such a notice was received by the PTO, Mr. Altera admits that he still had an obligation to disclose Nisus I to the PTO regardless of whether a § 290 notice was delivered.

**96. Regarding every key event, Mr. Altera's testimony, in which he claims he disclosed the existence of Nisus I to the PTO, is either uncorroborated or contradicted by Patent Examiner Azpuru. After a thorough review of all the testimony, the Court finds that Patent Examiner Azpuru's testimony is corroborated and credible. Accordingly, the Court finds that Nisus I was not disclosed to the PTO during pendency of the '875 patent application.**

[Doc. 416, Findings of Fact and Conclusions of Law ¶¶ 85-96] (emphasis added). The District Court found by clear and convincing evidence "that Nisus failed to disclose Nisus I and Nisus I-related litigation documents to the PTO"; that the information that was not disclosed was "highly material to the patentability of the '875 patent application"; and that "Nisus possessed an intent to deceive when it failed to disclose the highly material information to the PTO." [Id. at 48]. Accordingly, the District Court concluded that Nisus had committed inequitable conduct during its prosecution of the '875 patent application which thereby rendered the '095 patent-in-suit unenforceable.

### C. Perma-Chink's Renewed Motions for Sanctions

Following the District Court's entry of its Findings of Fact and Conclusions of Law, on April 17, 2006, Perma-Chink filed two renewed motions for sanctions. Both motions seek the imposition of sanctions against Nisus, its former counsel, the law firm of Merchant & Gould, and particularly attorneys Allan G. Altera and Douglas J. Williams.

In its first renewed motion [Doc. 438], Perma-Chink seeks the imposition of sanctions for what Perma-Chink characterizes as Nisus's attempts to manufacture evidence in the form of the Pauly Declaration and a related Information Disclosure Statement ("IDS") filed in the '698 application and submitted as evidence to this Court. In this first renewed motion, Perma-Chink seeks the imposition of sanctions on the following grounds: (1) pursuant to the Court's inherent powers for Nisus's commission of a fraud upon the Court; (2) pursuant to Rule 56(g) of the Federal Rules of Civil Procedure; (3) pursuant to 28 U.S.C. § 1927; and (4) pursuant to Rule 11 of the Federal Rules of Civil Procedure.

In its second renewed motion for sanctions [Doc. 439], Perma-Chink seeks an award of attorney's fees and costs associated with Nisus's allegations that Altera made an oral disclosure of the related patent litigation to Patent Examiner Azpuru on January 3, 2002. In this second renewed motion, Perma-Chink seeks the imposition of sanctions pursuant to the Court's inherent powers, as well as 28 U.S.C. § 1927.

On May 4, 2006, Nisus filed responses to both of Perma-Chink's motions. [Docs. 447, 448]. In its responses, Nisus argues that the motions were improperly and untimely filed; that the requested sanctions are not warranted; and that Perma-Chink's own misconduct precludes an award of sanctions against Nisus. These responses were filed on behalf of Nisus by its local counsel

Bradley H. Hodge of the firm Gentry, Tipton & McLemore, P.C., and by attorneys Douglas J. Williams, Mark D. Schuman, George W. Jordan III, and Kirstin L. Stoll-DeBell of the law firm of Merchant & Gould. On June 5, 2006, attorneys Thomas S. Scott, Jr. and Christopher T. Cain of the law firm of Ball & Scott entered an appearance as additional counsel on behalf of Nisus Corporation. [Doc. 454].

On June 20, 2006, the law firm of Hunton & Williams LLP filed a motion, seeking to withdraw as counsel for Nisus Corporation. [Doc. 456].[1] In its motion, Hunton & Williams argues that the District Court's findings that Mr. Altera had failed to disclose certain matters, which constituted inequitable conduct, resulting in the unenforceability of the '095 patent raised a potential conflict of interest between Merchant & Gould and Nisus. Hunton & Williams indicates in its motion that Merchant & Gould and Mr. Altera desire to retain Hunton & Williams as counsel to represent them in connection with the renewed Sanctions Motions. The District Court granted Hunton & Williams's motion on June 22, 2006 [Doc. 458].

On June 28, 2006, the firm of Merchant & Gould filed a motion [Doc. 459], seeking to dismiss Perma-Chink's Motion for Rule 11 Sanctions. Thereafter, on June 30, 2006, Nisus moved for an Order substituting attorneys from the law firm of Jones Day as counsel for Nisus in place of the attorneys of Merchant & Gould, including Mr. Williams and Mr. Altera. [Doc. 461]. The District Court granted the motion to substitute counsel on July 7, 2006 [Doc. 466].

The undersigned conducted a hearing on Perma-Chink's renewed sanctions motions and Merchant & Gould's Motion to Dismiss on August 7, 2006. Present on behalf of Nisus was

---

[1]Hunton & Williams previously made a limited appearance as counsel for Nisus but did not participate in the trial of this case.

attorney Thomas Scott. Present on behalf of Altera, Williams, and Merchant & Gould was attorney John Lucas. Present on behalf of Perma-Chink were attorneys William Toone, Douglas Stewart, and Denise Moretz. At the hearing, Nisus and Perma-Chink announced to the Court that they had reached a settlement agreement the previous evening with respect to all of the claims and counterclaims between Nisus and Perma-Chink. The parties advised that the only issue remaining was the collateral litigation over the present renewed sanctions motions. Counsel for Perma-Chink announced that it is no longer seeking sanctions against Nisus as an entity due to the settlement reached between the parties. Accordingly, only Perma-Chink's request for sanctions against attorneys Allan Altera and Douglas Williams and the law firm of Merchant & Gould remain at issue before the Court. [Doc. 487, Transcript of Aug. 7, 2006 Hearing at 2, 4].

## II.    MOTION TO DISMISS PERMA-CHINK'S MOTION FOR RULE 11 SANCTIONS

Nisus's former attorneys, Allan Altera and Douglas Williams, and the law firm of Merchant & Gould (collectively "Merchant & Gould") move the Court to dismiss Perma-Chink's First Renewed Motion for Sanctions to the extent that sanctions are sought under Rule 11 of the Federal Rules of Civil Procedure. [Doc. 459]. For grounds, Merchant & Gould argues that Perma-Chink failed to comply with the mandatory "safe harbor" provisions of Rule 11(c)(1)(A). Moreover, it contends that Perma-Chink's request for sanctions pursuant to Rule 11(c)(1)(B) is contrary to the plain language of the rule and is itself sanctionable. Furthermore, Merchant & Gould argues that the Renewed First Motion for Sanctions should be struck or dismissed because it seeks to sanction Altera and Williams for making an oral offer of proof when Rule 11 governs only written papers.

Perma-Chink opposes Merchant & Gould's motion, arguing that Rule 11 sanctions were properly sought in this case. Specifically, Perma-Chink contends that it did not have to comply with the "safe harbor" provisions of Rule 11(c)(1)(A) because Perma-Chink seeks Rule 11 sanctions against Merchant & Gould solely pursuant to Rule 11(c)(1)(B). Perma-Chink also argues that Merchant & Gould's contention that Rule 11 governs only written papers is erroneous. Perma-Chink further objects to Merchant & Gould's motion, arguing that the motion was untimely filed and therefore should be denied on that basis alone. Finally, Perma-Chink moves to modify its request for Rule 11 sanctions to seek a monetary penalty against Merchant & Gould that is payable to the Court and, if deemed appropriate, in excess of the fees and costs incurred by Perma-Chink in litigating the issues resulting from the alleged misconduct of Merchant & Gould. [Doc. 469].

Rule 11 "affords the district court the discretion to award sanctions when a party submits to the court pleadings, motions or papers that are presented for an improper purpose, are not warranted by existing law or a nonfrivolous extension of the law, or if the allegations and factual contentions do not have evidentiary support." First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 510 (6th Cir. 2002) (citing Fed. R. Civ. P. 11(b)(1)-(3)). An imposition of sanctions pursuant to Rule 11 may be initiated in one of two ways. First, sanctions may be sought upon motion of a party. Fed. R. Civ. P. 11(c)(1)(A). The "safe harbor" provision of Rule 11(c)(1)(A) provides, however, that such a motion shall not be filed unless the motion was served at least 21 days previously upon the offending party. Id. "The plain language of Rule 11 specifies that unless a movant has complied with the twenty-one day 'safe harbor' service, the motion for sanctions 'shall not be filed with or presented to the court.'" Ridder v. City of Springfield, 109 F.3d 288, 296 (6th Cir. 1997) (quoting Fed. R. Civ. P. 11(c)(1)(A)).

Second, Rule 11 sanctions may be initiated on the Court's own initiative. Fed. R. Civ. P. 11(c)(1)(B). Under this provision, "the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto." Id.

Perma-Chink admittedly did not comply with the safe harbor provision of Rule 11(c)(1)(A). Rather, Perma-Chink contends that it did not file its motion under Rule 11(c)(1)(A), and therefore, the safe harbor provision is not applicable. Perma-Chink argues that it is requesting that the Court, on its own initiative, enter an Order requiring Merchant & Gould to show cause under Rule 11(c)(1)(B).

The Court finds Perma-Chink's interpretation of Rule 11(c)(1)(B) to be strained at best. The plain language of Rule 11 requires compliance with the safe harbor provision prior to a party filing a motion seeking Rule 11 sanctions. While Perma-Chink argues that it is properly proceeding under Rule 11(c)(1)(B), Perma-Chink has not cited any authority for such a motion. Indeed, the Court fails to see how a party can file a motion requesting the Court to consider something on its own initiative. To the contrary, the Court interprets Rule 11(c)(1)(A) and (B) to differentiate between who initiates the process for imposition of sanctions. If a party seeks to initiate the sanctions process through a motion, then Rule 11(c)(1)(A) governs the procedure. If the Court initiates the process *sua sponte*, then Rule 11(c)(1)(B) governs the procedure. Therefore, to seek sanctions under Rule 11, Perma-Chink was required to comply with the Rule's safe harbor provision, which it admittedly failed to do in this case. Accordingly, it is **RECOMMENDED** that Merchant & Gould's Motion to Dismiss Perma-Chink's Motion for Rule 11 Sanctions [Doc. 459] be granted; that Perma-Chink's Renewed First Motion for Sanctions [Doc. 438] be denied to the

extent that it seeks the imposition of Rule 11 sanctions; and that Perma-Chink's "Cross-Motion" to Modify Perma-Chink's Renewed First Motion for Sanctions [Doc. 469] be denied as moot.

## III. PERMA-CHINK'S RENEWED MOTIONS FOR SANCTIONS

### A. Factual Background and Procedural History

In order to determine whether an imposition of sanctions is warranted in this case, the Court must examine the events leading up to the filing of these motions.

#### 1. Attorney Williams's Offer of Proof of Oral Disclosure

On December 16, 2003, Perma-Chink filed a motion [Doc. 54], seeking to amend its answer to assert additional affirmative defenses and counterclaims, including a counterclaim alleging that Nisus engaged in inequitable conduct in the prosecution of the '095 patent before the PTO. The undersigned held a hearing on Perma-Chink's motion to amend on June 16, 2004. At that hearing, attorney Douglas Williams, on behalf of Nisus, argued that Perma-Chink's inequitable conduct claim was futile and had no basis in fact. In so arguing, Mr. Williams stated that Mr. Altera had orally disclosed the underlying litigation during an interview with Examiner Azpuru. [Transcript of June 16, 2004 Hearing, Doc. 130 at 120-21]. When asked by the Court whether that oral disclosure was corroborated, Mr. Williams offered to place Mr. Altera under oath and have him testify to that fact, which the Court declined to do. [Id. at 121].

The undersigned granted in part Perma-Chink's motion to amend by an Order entered September 17, 2004 [Doc. 197]. In light of the newly pled allegations, the undersigned further permitted Perma-Chink to depose Altera regarding these events. [Doc. 198].

### 2. The Pauly Declaration

In December, 2004, Perma-Chink filed a motion for summary judgment on the issue of inequitable conduct. [Doc. 228]. Nisus opposed that motion. [Doc. 232]. In support of its opposition to Perma-Chink's motion, Nisus submitted a declaration [Doc. 438 Ex. 2] prepared by Daniel Pauly, a partner of Merchant & Gould, who previously had not appeared in any capacity in this litigation. In his declaration, Pauly describes his meeting with Examiner Azpuru on December 17, 2004. Examiner Azpuru is the examiner in charge of prosecuting the '698 application, which is currently pending. Examiner Azpuru was also the examiner in charge of prosecuting the '095 patent-in-suit. The '095 patent and the '698 application are in the same priority chain.

Pauly states in his declaration [Doc. 438 Ex. 2] that the purpose of his face-to-face meeting with Examiner Azpuru was to disclose the inequitable conduct allegations raised in the present litigation. Pauly states that he discussed the contentions asserted, showed Examiner Azpuru associated documents, and sought guidance on the best way to formally submit the materials for further consideration with respect to the '698 application. Pauly states that Examiner Azpuru suggested that Pauly submit an IDS, which Pauly did on January 12, 2005.

Pauly further asserts that he and Examiner Azpuru discussed the prosecution of the '095 patent. Pauly asserts that Examiner Azpuru said that he had met with Allan Altera during the prosecution of the '095 patent. Pauly recounts that conversation as follows:

> The first part of my interview with Examiner Azpuru involved discussing the prosecution of the '095 patent. Examiner Azpuru advised me that he had previously met face-to-face with Mr. Allan Altera during the prosecution of the '095 patent and advised me of disclosures that Mr. Altera had made to him.

> Based solely on my interview with Examiner Azpuru, it is my understanding that the Examiner does not believe inequitable conduct occurred during the prosecution of the '095 patent.
>
> Also based solely on my meeting with Examiner Azpuru, I understand that Mr. Altera had disclosed to the Examiner the litigation between Nisus and Perma-Chink.

[Doc. 438 Ex. 2, Pauly Declaration at ¶¶ 5-7].

The Examiner's Interview Summary [Doc. 438 Ex. 5] from this meeting on December 17, 2004 states that the substance of the interview consisted of the following: (1) it was agreed that a terminal disclaimer had been filed in the '664 patent file and (2) that an additional IDS and declaration would be filed related to the litigation currently pending in the parent file. The Examiner's Interview Summary does not reference any discussion regarding the '095 patent or the disclosure of litigation during the prosecution of that patent.

In its opposition to Perma-Chink's motion for summary judgment, Nisus relied upon the Pauly Declaration as further evidence that an oral disclosure of the Nisus I litigation had occurred during the prosecution of the '095 patent. Based upon Pauly's declaration, Nisus further argued that "[s]ignificantly, the very person Perma-Chink contends was deceived [Examiner Azpuru] felt no inequitable conduct had occurred" in that case. [Doc. 232 at 2].

### 3. The '698 IDS

On the same day that it filed its opposition to Perma-Chink's motion for summary judgment, Nisus filed an IDS with the PTO in the '698 application ("698 IDS"). The '698 IDS states, in pertinent part, as follows:

> The undersigned appreciates the Examiner conducting a face-to-face interview meeting with him on December 17, 2004. During the interview, the undersigned discussed with the Examiner developments in litigation involving the predecessor patents to the

above-referenced application pursuant to M.P.E.P. § 2001.06(c). **The Examiner had previously been advised of this litigation by Applicants' counsel, Mr. Allan Altera.**

['698 IDS, Doc. 438 Ex. 4 at 2] (emphasis added). The '698 IDS also was submitted in support of Nisus's opposition to Perma-Chink's motion for summary judgment as evidence that the underlying litigation had been disclosed during the prosecution of the '095 patent.

### 4. The Withdrawal of the Pauly Declaration & '698 IDS

Upon receipt of Nisus's response, Perma-Chink submitted a formal petition under 37 C.F.R. § 104 and MPEP § 1701 to the PTO, requesting the deposition of Examiner Azpuru.[2] [Letter to PTO dated Jan. 21, 2005, Doc. 438 Ex. 6]. In so doing, Perma-Chink advised the PTO of the filing of the Pauly Declaration in this litigation, as well as the filing of the IDS in the '698 application. [Id.].

In response, the PTO issued a "Notice Regarding Information Disclosure Statement" on February 10, 2005. [Doc. 438 Ex. 1]. In that Notice, the PTO stated that it would not consider the statements in the IDS regarding events that allegedly took place during the prosecution of the '095 patent, and further that it "will not vouch for the accuracy of such statements." The PTO further states in the Notice as follows:

> Practitioners are not permitted to make inquiries of an examiner concerning prosecution of an application which matured into a patent, and the examiner is prohibited from discussing such matters with practitioners. MPEP § 1701. An applicant (or applicant's representative) cannot use any pending application to make inquiries (or a record of alleged events) concerning alleged events that

---

[2]The PTO granted Perma-Chink's request, and Examiner Azpuru was deposed on March 2, 2005. While Perma-Chink was not permitted to question the Examiner about his interactions with Daniel Pauly, Perma-Chink was permitted to ask about Altera's alleged oral disclosure of the underlying litigation during the '095 patent.

occurred during the examination of any application that matured into an issued patent because such discussions constitute a clear violation of the practitioner's duty to refrain from discussing such matters with Office personnel. Therefore, statements made in the IDS relating to any alleged event that occurred in the examination of the application that lead to the '095 patent (or any other application) will not be considered and the Office will not vouch for the accuracy of such statements.

Moreover, all official business with the Office involving an application must be reduced to writing. 37 C.F.R § 1.2; MPEP § 713.04. Therefore, an applicant (or applicant's representative) is reminded that it is the responsibility of both the applicant (or applicant's representative) and the examiner to record the substance of the interview. Thus, the Interview Summary form is considered a complete and proper recordation of the interview, unless it is supplemented by the applicant (or the applicant's representative) in the next response. MPEP § 713.04.

Finally, the Office does **not** consider issues of enforceability or validity of an issued patent and attorney argument concerning such issues will **not** be considered by the Office. Moreover, examiners are prohibited from making any statement concerning the enforceability or validity of any issued patent. MPEP § 1701 and 37 CFR Part 104.

[Doc. 438 Ex. 1].

On February 16, 2005, Nisus moved to withdraw its brief opposing Perma-Chink's motion for summary judgment on the issue of inequitable conduct. [Doc. 253]. In its motion to withdraw, Nisus states that it no longer intended to rely on either the Pauly Declaration or the '698 IDS, and that the brief and supporting exhibits would be withdrawn and substituted with a brief supported by the declaration of Allan Altera, neither of which would reference either the Pauly Declaration or the '698 IDS. Nisus states in its motion that it was withdrawing these papers at the request of the PTO. Nisus further states that it made an agreement with the PTO that neither the Pauly Declaration nor the '698 IDS would be referenced in Nisus's response to the summary judgment motion or relied upon at trial.

The District Court granted Nisus's motion to withdraw on April 7, 2005. [Doc. 302]. In so doing, the District Court noted that its decision would not restrict Perma-Chink's use of those materials in this case.

## 5. The Government's Statement of Interest

On April 6, 2005, prior to the District Court granting Nisus's request to withdraw its opposition brief, the United States, acting on behalf of the PTO, filed a Statement of Interest [Doc. 301]. In this Statement, the Government argued that the Pauly Declaration was inappropriately submitted in this litigation because (1) the Examiner's alleged testimony was obtained without the PTO's authorization and (2) the Declaration includes alleged testimony by the Examiner of a "type that is <u>never</u> allowed." [<u>Id.</u>]. The Government states that it submitted the Statement of Interest because of Nisus's continued reliance and citation to the Pauly Declaration at a March 9, 2005 hearing. Consequently, the Government filed this Statement to "ensure that the inappropriately obtained examiner testimony in the Pauly declaration (and any other unauthorized alleged examiner testimony) are <u>not</u> relied upon by the parties or this Court." [<u>Id.</u>].

The March 9, 2005 hearing was on Perma-Chink's Motion for Summary of Patent Unenforceability Due to Inequitable Conduct. In that hearing, attorney Mark Schuman, on behalf of Nisus, stated the following about the Pauly Declaration:

> I guess as long as I'm there, let's talk about Mr. Pauly who we heard about, the new attorney on the case who is looking at the patent application. What you heard was that Pauly filed this declaration that the Patent Office didn't like. Think about Mr. Pauly's dilemma as a patent attorney. We have charges in this case that things weren't disclosed to the Patent Office related to the litigation. What do you do as a patent attorney? Well, Mr. Pauly gathers up everything in the litigation, practically, and carts it in to the examiner and starts going through it with the examiner. Pauly's affidavit, if you read it, says yeah, the examiner looked at all this stuff and on his own said, you

know, I have seen all this stuff. I can just imagine the talk, although I wasn't there. Why are you doing this to me? Why are you showing me a room full of stuff? I have already seen this stuff. Now what does Pauly have to do? He is obligated to record everything that happens in the interview. He puts it in his summary. Well, it turns out the examiner is not supposed to comment on things like that. Now what does Pauly do? Does he ignore it? If he ignores what the examiner said, he is now going to be charged with not putting the full substance of the interview in . . . . If he puts it in, the Patent Office gets upset . . . . We have the obligation to put the full record in.

[Transcript of March 9, 2005 Hearing, Doc. 301 Ex. 2 at 62-63].

### 6.    Altera's Sworn Testimony

On June 6, 2005 during the trial of this matter, Allan Altera testified regarding his alleged disclosure of the Nisus I litigation to Examiner Azpuru. Specifically, Mr. Altera testified that he disclosed the details of the litigation to Examiner Azpuru, and that he discussed at length with the Examiner the related litigation documents. With respect to Altera's testimony, the District Court found specifically as follows:

85. On January 3, 2002, Mr. Altera met with Patent Examiner Carlos Azpuru at the PTO to discuss the '875 patent application. Mr. Altera testifies that he disclosed the existence of the ongoing Nisus I litigation to Patent Examiner Azpuru during this meeting. Patent Examiner Azpuru testifies [footnote omitted] that Mr. Altera did not make any disclosure of Nisus I during the January 3, 2002 interview, and the written Interview Summary of that meeting makes no mention of the Nisus I litigation.

\*       \*       \*

87. On January 11, 2002, Nisus submitted its IDS [Information Disclosure Statement] and the Form 1449 that included copies of batch tickets, eight selected invoices, and the "Rest Assured" advertisement from the *Muir Log Home Guide for Builders and Buyers*. Although the invoices and advertisement were obtained from the exhibits to Perma-Chink's motion for summary judgment in Nisus I, neither the IDS or Form 1449 mentions Nisus I or the source of the documents. Mr. Altera testifies that he told Patent Examiner Azpuru

that the invoices and advertisement Nisus presented to the PTO on January 11, 2002, had originated from discovery in Nisus I, but Patent Examiner Azpuru's testimony directly contradicts Mr. Altera's claim.

[Findings of Fact ¶¶ 85, 87].

### B.     Perma-Chink's Renewed First Motion for Sanctions

Perma-Chink renews its first motion for sanctions relating to the attempts of Nisus's attorneys to manufacture evidence in the form of the Pauly Declaration and the '698 IDS, which are both dated January 12, 2005.[3]  Essentially, Perma-Chink alleges that the Pauly Declaration and related IDS were filed with the Court as an attempt to retroactively corroborate Altera's alleged oral disclosure of the Nisus I litigation to Examiner Azpuru on January 3, 2002.  As indicated above, the District Court has now entered Findings of Fact and Conclusions of Law establishing that this oral disclosure never occurred.

In support of its request for the imposition of sanctions, Perma-Chink argues that Nisus engaged in a campaign to defeat summary judgment in this case through the commission of improper acts before both the PTO and this Court.  Specifically, Perma-Chink charges that Nisus generated false evidence that had no basis in fact or in law and submitted it to the Court by way of the Pauly Declaration and the '698 IDS.  Perma-Chink alleges that the creation of false evidence was done intentionally and in such a way that Perma-Chink could not directly challenge the veracity of such evidence before the PTO.  Perma-Chink argues that it was only because of its efforts and the PTO's decision to intervene in this case that Nisus did not succeed in deceiving the Court.

---

[3]Because of the parties' settlement agreement resolving all issues between Nisus and Perma-Chink, the Court will consider the motions for sanctions only insofar as they seek the imposition of sanctions against Nisus's former counsel.

Perma-Chink argues that the Court should impose sanctions (1) pursuant to its inherent powers for Nisus's attempt to commit a fraud on the court; (2) pursuant to Rule 56(g) of the Federal Rules of Civil Procedure; or (3) pursuant to 28 U.S.C. § 1927.[4]

Merchant & Gould opposes Perma-Chink's motion on several grounds.[5] First, it contends that the renewal of this motion is improper because the District Court dismissed the underlying case on March 16, 2006. Second, Merchant & Gould argues that Perma-Chink's motion is heavily based on pretenses and innuendo, as there has been no finding that Merchant & Gould acted in bad faith or that the evidence presented to establish the oral disclosure of the Nisus I litigation was objectively unreasonable. Finally, Merchant & Gould argues that Perma-Chink's own misconduct precludes an award of sanctions in this case.

The Court will first address Nisus's contention that Perma-Chink's renewed motions are not timely, as they were filed after the District Court dismissed the underlying litigation. The Court previously denied Perma-Chink's original motions for sanctions without prejudice and with leave to re-file the same within thirty (30) days of the filing of findings of fact and conclusions of law by the District Court. [Doc. 412]. Perma-Chink complied with this directive, and accordingly, the Court finds that the renewed motions were timely filed.

---

[4]As indicated earlier in this opinion, Perma-Chink also seeks the imposition of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Because the undersigned has recommended that Perma-Chink's request for Rule 11 sanctions be dismissed, the undersigned will not further address this basis of Perma-Chink's first renewed motion for sanctions.

[5]The opposition to both of the renewed sanctions motions was filed by attorneys Altera, Williams, and Merchant & Gould on behalf of Nisus. Although Perma-Chink's request for sanctions against Nisus is no longer an issue, the Court will deem Nisus's responses to represent the position of Nisus's former counsel, who had filed the responses.

To the extent that Nisus suggests that the renewed motions are improper as the underlying litigation has been dismissed, the Court finds Nisus's argument to be without merit. "[A] court's jurisdiction to issue sanctions . . . is ever present." Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, ___ F.3d ___, 2006 WL 2861803, at *3 (6th Cir. Oct. 10, 2006). Thus, even though the underlying action is no longer pending, the Court still has jurisdiction to consider collateral issues, such as costs, attorney's fees, and sanctions. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (1990); Red Carpet Studios, 2006 WL 2861803, at *3 (holding that district court retains jurisdiction to consider sanctions pursuant to 28 U.S.C. § 1927 or the court's inherent powers).

### 1.     Sanctions Pursuant to Court's Inherent Powers

It is well-established that the Court "has the power to control admission to its bar and to discipline attorneys who appear before it." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). This inherent power to sanction "extends to a full range of litigation abuses." Id. at 46. In Chambers, the Supreme Court defined the scope of this inherent power as follows:

> [A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. In this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order. The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.

Id. at 45-46 (footnote, citations, and internal quotation marks omitted).  As the Sixth Circuit has recognized, "Chambers does not explicitly require in every instance that a district court first determine whether the conduct could be sanctioned under the rules or relevant statutes before considering sanctions under its inherent authority."  First Bank of Marietta, 307 F.3d at 512.  Moreover, the Sixth Circuit has noted that the use of inherent authority to sanction is particularly appropriate where the "impermissible conduct . . . adversely impacts the entire litigation" or where "the offending party's conduct extends through the proceedings . . . ."  Id. at 516, 517.

The Sixth Circuit has described the concept of fraud upon the court as follows:

> Fraud upon the court should . . . embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.

Demjanjuk v. Petrovsky, 10 F.3d 338, 352 (6th Cir. 1993) (quoting 7 Moore's Federal Practice and Procedure, ¶ 60.33).  The Sixth Circuit, again quoting from Professor Moore, further stated as follows:

> While an attorney should represent his client with singular loyalty, that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court.  And when he departs from that standard in the conduct of a case he perpetrates fraud upon a court.

Id.

Based upon the facts as set forth herein, and in particular the findings of fact made by the District Court, the undersigned finds that the exercise of the court's inherent sanctions powers would be appropriate in this case.  These facts show that Nisus's counsel had a calculated scheme

to influence the District Court's decision on summary judgment by first making representations to the Court and second by presenting to the Court evidence, specifically the Pauly Declaration and the '698 IDS, to imply that the Nisus I litigation had been disclosed in the course of the '095 patent prosecution when in fact no such disclosure had occurred. The undersigned uses the term "imply" because an examination of the Pauly Declaration reveals that Pauly's testimony appears to be purposefully vague. For example, Pauly states in his Declaration that Examiner Azpuru "advised me of disclosures that Mr. Altera had made to him" during the '095 patent prosecution without specifically stating what those disclosures were. Indeed, this statement could be deemed true even if Examiner Azpuru had advised Pauly that no disclosure of the underlying litigation had been made but that only non-litigation related disclosures were made. What Pauly does not say in his declaration speaks volumes. He does not say that Examiner Azpuru advised him that Altera had disclosed the Nisus I litigation during the times alleged by Altera. Because of the significance of this issue, the Court deems this statement to be purposefully vague and designed to imply that which Pauly was unwilling to state under oath.

Pauly goes on to state that it is his "understanding" (1) that Examiner Azpuru did not believe that inequitable conduct occurred during the prosecution of the '095 patent and (2) that Altera had disclosed to Azpuru the litigation between Nisus and Perma-Chink. Again, however, there is no indication in these statements as to what disclosures were made or whether in fact Azpuru had said that the litigation was actually disclosed. The Declaration appears to be carefully worded so as to imply that Examiner Azpuru told Pauly that Altera had made full disclosure of the Nisus I litigation of the '095 patent without going so far as to actually state that such a conversation actually

occurred.  Not only did Examiner Azpuru deny under oath making such statements, the PTO rules make it clear that such statements from a Patent Examiner are forbidden:

> Public policy demands that every employee of the United States Patent and Trademark Office (USPTO) refuse to express to any person any opinion as to the validity or invalidity of, or the patentability or unpatentability of any claim in any U.S. patent, except to the extent necessary to carry out
>
> (A) an examination of a reissue application of the patent,
>
> (B) a reexamination proceeding to reexamine the patent, or
>
> (C) an interference involving the patent.

MPEP § 1701.  None of the enumerated exceptions apply here.  Moreover, practitioners are prohibited from making inquiries of a Patent Examiner regarding a prosecution of an application which matured into a patent, and the examiner is prohibited from discussing such matters with practitioners.  Id.  As the PTO itself noted in its official response to the '698 IDS:

> An applicant (or applicant's representative) cannot use any pending application to make inquiries (or a record of alleged events) concerning alleged events that occurred during the examination of any application that matured into an issued patent because such discussions constitute a clear violation of the practitioner's duty to refrain from discussing such matters with Office personnel.

[Doc. 438 Ex. 1].  Accordingly, if in fact this communication had occurred (and based upon the District Court's findings, the undersigned must conclude that it did not), such communication between Pauly and Azpuru was strictly prohibited by the PTO's own regulations and it was therefore improper for Nisus's counsel to attempt to use such communications as evidence in this litigation.

The statement in the '698 IDS that Altera had previously advised Azpuru of the Nisus I litigation is equally troubling.  This statement is an uncorroborated assertion by Nisus's counsel and its inclusion in the '698 IDS serves no purpose in the prosecution of the '698 application.

23

Indeed, reference to the prosecution of the '095 patent is clearly improper in this context. The inclusion of this statement appears to be gratuitous, its only function to serve as evidence in the present litigation. By inserting this statement in an IDS in a current pending application, Nisus's counsel not only violated PTO regulations, but did so in such a manner that such action could not be directly challenged by Perma-Chink. While Nisus's conduct before the PTO itself is not sanctionable *per se* by this Court, the Court does find that Nisus's submission of the '698 IDS to the Court as evidence in support of its opposition to Perma-Chink's motion for summary judgment does constitute sanctionable conduct, and is further evidence of Nisus's counsel's improper motives.

Even after Nisus's counsel was advised of the PTO's position on the Pauly Declaration and '698 IDS and was directed to withdraw these filings, counsel continued to refer to and rely upon such evidence in this litigation in an attempt to show that there was an oral disclosure of the Nisus I litigation during the prosecution of the '095 patent. The Court further finds this conduct to be sanctionable.

The findings of the District Court establish that no oral disclosure of the Nisus I litigation was made during the prosecution of the '095 patent. In so finding, the District Court cited the testimony of Examiner Azpuru, which the District Court found to be credible and corroborated by the '095 prosecution history. By so finding, the District Court made an implicit finding that Altera's uncorroborated testimony to the contrary was not credible. Based upon the facts of this case, the undersigned finds that the submission of the statements set forth in the Pauly Declaration and the '698 IDS, which statements were relied upon as evidence that the Nisus I litigation was disclosed to the PTO, constituted misrepresentations to this Court. The undersigned further finds

that these materials were submitted to the Court in bad faith. For these reasons, it is **RECOMMENDED** that sanctions be imposed pursuant to the Court's inherent powers.

### 2. Rule 56(g) Sanctions

Alternatively, Perma-Chink seeks the imposition of sanctions for the filing of an affidavit in bad faith. <u>See</u> Fed. R. Civ. P. 56(g). The undersigned finds that sanctions are technically unwarranted pursuant to this provision because the Pauly Declaration was ultimately withdrawn. The District Court did not rely upon it, and therefore, even if the Pauly Declaration was submitted in bad faith, it did not prejudice Perma-Chink. <u>See</u> <u>Sutton v. United States Small Bus. Admin.</u>, 92 Fed. Appx. 112, 117-18, 2003 WL 22976561 (6th Cir. Dec. 4, 2003). Accordingly, it is **RECOMMENDED** that Perma-Chink's alternative request for sanctions under Rule 56(g) be denied.

### 3. 28 U.S.C. § 1927 Sanctions

Section 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Section 1927 imposes an objective standard of conduct on attorneys, and courts need not make a finding of subjective bad faith before assessing monetary sanctions under § 1927." <u>Salkil v. Mt. Sterling Township Police Dep't</u>, 458 F.3d 520, 532 (6th Cir. 2006). Unlike sanctions imposed under a court's inherent authority, however, "§ 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence." <u>Red Carpet Studios</u>, 2006 WL 2861803, at *4. Thus, sanctions are appropriate where the attorney "intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply

proceedings." Id. "There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." In re Ruben, 825 F.2d 977, 984 (6th Cir. 1987).

In the present case, the Court finds that the imposition of sanctions under § 1927 is appropriate for the same reasons that sanctions are warranted pursuant to the Court's inherent powers. The Court finds that the law firm of Merchant & Gould and particularly attorney Altera intentionally abused the judicial process by submitting the Pauly Declaration and '698 IDS in support of Nisus's opposition to Perma-Chink's motion for summary judgment. Furthermore, these documents were submitted with knowing disregard that such conduct and actions would (and indeed did) needlessly multiply the proceedings by spawning a new round of discovery and motions related to the alleged statements of Examiner Azpuru alluded to in the Pauly Declaration. The submission of these documents, which contained untrue statements of fact and were designed to imply untrue facts and thus mislead the Court, was improper and objectively unreasonable. Further, the submission of these documents, in light of the PTO regulations prohibiting such communications, was improper and objectively unreasonable under the circumstances. Accordingly, based upon the findings of the District Court and the facts as set forth above, it is **RECOMMENDED** that sanctions also be imposed under 28 U.S.C. § 1927.

## C.    Perma-Chink's Renewed Second Motion for Sanctions

In its second renewed motion for sanctions, Perma-Chink seeks an imposition of sanctions against Nisus's former counsel, Merchant & Gould, and in particular attorneys Williams and Altera (collectively "Merchant & Gould") for making the June 16, 2004, allegation (which was

subsequently repeatedly represented to the Court) that Mr. Altera had made an oral disclosure of the related patent litigation to Examiner Azpuru on January 3, 2002, an allegation that became central to the underlying patent litigation. Perma-Chink seeks the imposition of sanctions pursuant to 28 U.S.C. § 1927, as well as pursuant to the Court's inherent powers. [Doc. 439].

Perma-Chink argues that Merchant & Gould engaged in a calculated strategy to mislead the Court regarding the alleged disclosure of the Nisus I litigation to the PTO. Perma-Chink contends that this deception began with the offer of proof by Mr. Williams at the June 16, 2004 hearing and was furthered by the subsequent actions of counsel, including the filing of the Pauly Declaration and Mr. Altera's sworn deposition and trial testimony. Perma-Chink argues that Nisus's counsel engaged in not only a reckless disregard for the truth, but a deliberate campaign of falsehoods, and that counsel's conduct constituted a "flagrant disregard for the rules of ethics."

Merchant & Gould opposes Perma-Chink's motion, arguing: (1) that Perma-Chink has not proved that the June 16, 2004 offer of proof was presented in bad faith; (2) that Perma-Chink has not proved that Mr. Altera's deposition testimony or trial testimony was in bad faith; (3) that Perma-Chink has not proved that the Pauly Declaration was a bad faith effort to corroborate the offer of proof; and (4) that Perma-Chink has not proved that Merchant & Gould violated any ethical standards. Again, Merchant & Gould argues that Perma-Chink's own misconduct precludes an award of sanctions in this case. [Doc. 448].

The District Court has found that Nisus intentionally deceived the PTO by failing to disclose the "highly material" information regarding the litigation during the '095 patent prosecution. The Court finds that Nisus's counsel perpetuated that deceit before this Court as well, by making repeated representations to the Court that an oral disclosure of the litigation had been

made when in fact it had not. Furthermore, based upon the District Court's findings, the Court finds that Mr. Altera gave false testimony to this Court regarding this disclosure. As noted by the District Court, Mr. Altera's testimony was not corroborated, and it was ultimately rejected in light of the credible and corroborated testimony of Examiner Azpuru.

The Court finds that counsel's conduct, as outlined herein, was in bad faith, was objectively unreasonable, and resulted in the needless multiplication of the proceedings. For these reasons, it is **RECOMMENDED** that Perma-Chink's Renewed Second Motion for Sanctions [Doc. 439] be granted and that sanctions be imposed against Merchant & Gould and Mr. Altera and Mr. Williams individually pursuant to the inherent powers of this Court, 29 U.S.C. § 1927, or both.

## IV.      AMOUNT OF SANCTIONS TO BE IMPOSED

Having determined that an imposition of sanctions is warranted pursuant to 28 U.S.C. § 1927, the Court's inherent powers, or both, the Court now turns to the issue of the amount of the sanctions to be imposed.

In its Renewed Motions for Sanctions [Docs. 438, 439], Perma-Chink requests that the Court award it the full attorney's fees and costs it incurred in responding to Nisus's attempts to mislead the Court. It therefore seeks an award of attorney's fees and costs incurred from Mr. Williams's offer of proof on June 16, 2004 to the conclusion of the trial. Perma-Chink further argues that counsel's conduct in making factually false allegations to the Court merits additional sanctions, and that the sanctions should therefore be calculated at some multiple of Perma-Chink's costs and fees.

Merchant & Gould counters that Perma-Chink's own misconduct precludes an award of sanctions in this case. In support of this argument, Merchant & Gould refers to its opposition to Perma-Chink's original sanctions motions. [Docs. 273, 285]. In a Post-Hearing Brief [Doc. 488], Merchant & Gould further argues that Perma-Chink has been fully compensated for its sanctions claims by virtue of the global settlement reached between Nisus and Perma-Chink on August 6, 2006, which resolved all claims between the parties, including Perma-Chink's request for sanctions against Nisus, but excluding Perma-Chink's request for sanctions against Nisus's counsel. Accordingly, Merchant & Gould argues that Perma-Chink has been adequately reimbursed and should not be awarded further fees.

Perma-Chink counters that Merchant & Gould overlooks the fact that the settlement reached was not just with respect to the sanctions motion but was also with respect to the antitrust charges still pending in Nisus I and Nisus II. [Doc. 496].

The Court rejects Merchant & Gould's contention that Perma-Chink's misconduct precludes any award of sanctions in this case. The Court does, however, find that any award of sanctions should be substantially less than the amount requested by Perma-Chink. First and foremost, the Court notes that the District Court has already issued the most severe sanction: Nisus's patent was found to be unenforceable as a result of its counsel's inequitable conduct. Second, the Court notes that Perma-Chink has already received substantial compensation from its global settlement with Nisus on August 6, 2006, which settlement included resolution of Perma-Chink's sanctions claims against Nisus. Finally, the Court notes that Mr. Altera has self-reported the District Court's Findings of Fact and Conclusions of Law to both the Office of Enrollment and Discipline and the State Bar of Georgia. [Doc. 482]. In light of these circumstances, it is **RECOMMENDED**

that sanctions be imposed in the total sum of fifty thousand dollars ($50,000.00), payable to Perma-Chink in the form of attorney's fees, and that this sanction be assessed joint and severally against Merchant & Gould, Douglas J. Williams, and Allan G. Altera.

## V.    CONCLUSION

For the foregoing reasons, it is **RECOMMENDED**[6] that Perma-Chink's Renewed First Motion for Sanctions as to the Pauly Declaration & '698 IDS [Doc. 438] be **GRANTED IN PART** to the extent that sanctions should be awarded under the Court's inherent powers and/or 28 U.S.C. § 1927 and **DENIED IN PART** to the extent that Perma-Chink requests sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and Rule 56(g) of the Federal Rules of Civil Procedure; that Perma-Chink's Renewed Second Motion for Sanctions Regarding Mr. Altera's Sworn Testimony [Doc. 439] be **GRANTED**; that the Motion to Dismiss Perma-Chink's Motion for Rule 11 Sanctions [Doc. 459] filed by the law firm of Merchant & Gould and attorneys Allan Altera and Douglas Williams be **GRANTED**; and that Perma-Chink's Cross-Motion to Modify Perma-Chink's Renewed First Motion for Sanctions [Doc. 469] be **DENIED AS MOOT**.

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[6] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).